# HEALTH SERVICES AGREEMENT

**THIS HEALTH SERVICES AGREEMENT** (the "Agreement"), is entered into as of the 1st day of October 2014 by and between the Sheriff of Leon County, Florida, a County Constitutional Officer of the State of Florida ("Sheriff") and Corizon Health, Inc., a Delaware corporation, ("Corizon"). Services under this Agreement shall commence on October 1, 2014 and shall continue in accordance with Section 8.1. The Sheriff and Corizon shall hereinafter be collectively referred to as the "Parties."

### WITNESSETH:

**WHEREAS**, in accordance with Chapter 951 of the Florida Statutes, the Sheriff has been designated by the Leon County Board of County Commissioners as the Chief Correctional Officer of the County Correctional System (hereinafter referred to as the "Jail"); and

**WHEREAS**, the Sheriff is charged by law with the responsibility for obtaining and providing reasonably necessary medical, psychiatric, dental, and/or other health care services for persons remanded to his care, custody, and control (hereinafter referred to as "inmates"), within the Jail; and

**WHEREAS**, the County Correctional System consists of the Jail located at 535 Appleyard Drive, Tallahassee, Florida 32304; and

**WHEREAS**, the Sheriff, which receives funding as approved by the Board of County Commissioners for the Jail, desires to enter into this Agreement with Corizon to promote this objective; and

**WHEREAS**, Corizon is in the business of providing correctional health care services and desires to provide such services for the Sheriff under the terms and conditions hereof,

**NOW, THEREFORE**, in consideration of the covenants and promises hereinafter made, the Parties hereto agree as follows:

### ARTICLE I:  HEALTH CARE SERVICES

1.1  <u>General Engagement</u>. The Sheriff hereby contracts with Corizon to provide for the delivery of reasonably necessary medical, dental, and mental health care to individuals under the custody and control of the Sheriff and physically incarcerated at the Jail. Individuals who, during the arresting process by any state, county, or municipal law enforcement officer, sustains an injury at the time of a lawful arrest, or is found to have a pre-existing illness and is immediately transported by the arresting agency to a designated hospital or medical facility prior to booking of such person into the Jail, shall also be the financial responsibility of Corizon, subject to the limitations set forth in Section 1.5 hereafter.

1.2  <u>Scope of General Services</u>. The responsibility of Corizon for medical care of an inmate commences under this Agreement after an inmate is taken into custody by any law enforcement

1

agency with the intention of transporting the inmate to the Jail for booking and Corizon is given reasonable opportunity to assume management of the medical care of that inmate. It is required that the Sheriff notifies the on-site Corizon staff of any bookings performed outside the Jail. Corizon shall provide health care services for all persons committed to the custody of the Jail, except individuals sentenced to and participating in the Sheriff's Work Camp Program and those identified in Section 1.7. Corizon shall provide on a regular basis, all professional medical, dental, mental health (excluding in-patient psychiatric hospitalization), related health care and administrative services for the inmates, a comprehensive health evaluation of each inmate following booking into the Jail in accordance with NCCHC and Florida Model Jail Standards, booking/intake health screenings, including medical evaluation for inmate work details, regularly scheduled sick call, nursing care, regular physician and dentist visits to the Jail, hospitalization, mental health services, medical specialty services, emergency medical care, emergency ambulance services when medically necessary, medical records management, pharmacy services management, health education and training services, a quality assurance program, administrative support services, and other services, all as more specifically described herein.

    1.3    Specialty Services. In addition to providing the general services described above, Corizon shall provide to inmates of the Jail and be responsible for the payment of special medical services including radiology services, laboratory services, and optometry services, including eyeglasses, to the extent such are determined to be medically necessary by Corizon. Corizon shall also be responsible for the disposal of all medically generated hazardous waste in accordance with applicable federal, state and/or local laws. Where non-emergency specialty care is required and not rendered at the Jail, Corizon will make appropriate off-site arrangements for the rendering of such care and shall make arrangements with the Sheriff for the transportation of the inmates in accordance with Section 1.9.

    1.4    Emergency Services. Corizon shall provide and be responsible for the payment of emergency medical care, as medically necessary, to inmates through arrangements to be determined by Corizon with local hospitals. Corizon shall provide qualified emergency ambulance transportation services when medically necessary in connection with off-site emergency medical treatment. Additionally, staff employed by the Sheriff and visitors to the Jail shall be treated within the Jail for injuries and/or illnesses only in an emergency and/or as mutually agreed to by the Parties. Corizon shall not be responsible for payment of emergency and follow-up services and transportation provided to Sheriff's staff or visitors within the Jail in the event of an emergency.

    1.5    Utilization Management and Claims Adjudication for Off-Site Services. The Sheriff is responsible for the cost of all Outside Medical Services (as defined below). Corizon shall serve as the disclosed administrative agent of the Sheriff and will review/authorize all off-site referrals, perform comprehensive utilization management, receive/process all invoices and adjudicate and pay all claims for Outside Medical Services on behalf of the Sheriff.

    The term "Outside Medical Services" refers to all healthcare services which are not provided on-site at the Jail, including inpatient hospitalization, emergency room visits, ambulance transportation, outpatient surgeries, outpatient physician consultations, offsite medical specialist, off-site diagnostic procedures, as well as all off-site and on-site ultrasounds, dialysis treatments and associated medications, costs associated with HIV medications, genotype testing and viral load and CD 4 testing, hospice care, and managed care network fees.

LCSO-Frederick 001976

On a monthly basis, the Sheriff shall reimburse Corizon for all Outside Medical Services claims paid by Corizon (collectively the "Monthly Reimbursements"). Within fifteen (15) days after the end of each month Corizon will submit an invoice for Monthly Reimbursement which shall be payable by the Sheriff within thirty (30) days of receipt. Each invoice shall be equal to the actual amount of the Outside Medical Services claims paid by Corizon, as accumulated on a contract year-to-date basis.

In addition to the Monthly Reimbursements, the Sheriff will make a year-end reimbursement (the "Year-End Reimbursement") of the Outside Medical Services claims paid by Corizon within one hundred and fifty (150) days after the end of each annual contract year. Year-End Reimbursements will be payable by Sheriff within thirty (30) days of receiving the invoice from Corizon. The Parties recognize that Corizon will make every reasonable effort to control the timeliness of the submission of claims from third party providers, but there may be instances in which claims are received by Corizon after the 150th day of the Year-End Reimbursement period. In such instances, notwithstanding anything in this paragraph to the contrary, Sheriff agrees that it will pay such claims to the extent the Sheriff is responsible under the provisions of this Section 1.5

Corizon shall provide a monthly report showing Outside Medical Services claims processed, adjudicated and paid to support the calculation of each Monthly and Year-End Reimbursement. Corizon's monthly documentation will be submitted in a format that provides both a cumulative contract year-to-date report and a quarterly report.

Notwithstanding the thirty (30) day payment obligation of the Sheriff as described above, the Sheriff may dispute any invoice or portion thereof by notifying Corizon in writing within thirty (30) days of receiving the invoice that the invoice is contested. The notice that an invoice is contested must identify by line item each portion of the invoice contested and the reasons therefore. All non-disputed items in the invoice will be paid within the thirty (30) day timeframe. The Sheriff shall bear the costs of any legal or collection fees and expenses incurred by Corizon in attempting to enforce the Sheriff's payment obligations hereunder.

Corizon shall respond to any disputed invoice matters within thirty (30) days of receiving written notice from the Sheriff. Corizon shall determine if the Sheriff was properly invoiced for the disputed items and either adjust the invoice or re-bill the Sheriff with an explanation. Upon receipt of Corizon's reply, the Sheriff will have thirty (30) days to (i) pay Corizon for any amounts Corizon determined were properly billed and which the Sheriff no longer disputes and (ii) notify Corizon in writing of any amounts still in dispute in accordance with the process described above. Either Party may request mediation in accordance with Section 11.7 of the Agreement for any amounts remaining in dispute.

Once an inmate has been taken into the custody of the Sheriff, Corizon will be financially responsible for the cost of all medical treatment for health care services (subject to the Outside Medical Services exception noted in this Section 1.5 and the exceptions described in Sections 1.6 through 1.8), regardless of the nature of the illness or injury or whether or not the illness or injury occurred prior or subsequent to the individual's incarceration at the Jail, once the inmate has been determined to be medically stabilized. An inmate shall be considered medically stabilized when the medical condition no longer requires immediate emergency medical care or outside hospitalization so that the inmate can be reasonably housed inside the Jail.

LCSO-Frederick 001977

1.6    Exceptions to Treatment. Corizon shall not be financially responsible for significant changes in treatment standards, which are either not FDA approved at the start date of this Agreement or are not part of Corizon's written protocols in use at the Jail at the time this Agreement is entered into. Should any new treatment, standard of care, drug classes, or diagnostic tests be mandated and approved in relation to community health care standards for treatment and/or required by the Corizon Medical Director as necessary for the treatment of inmates housed at the Jail, and the cost of such treatment, in aggregate would exceed 2% of the annual contract amount for any contract year, then the Sheriff and Corizon shall agree to negotiate for additional compensation due to Corizon.

Corizon shall not be responsible for medical costs associated with the medical care of any fetus or infants born to inmates. Corizon shall provide health care services to pregnant inmates, but health care services provided to an infant following birth will not be the responsibility of Corizon. Corizon shall not be responsible for the costs of and/or the furnishing of any abortions unless such procedure is declared medically necessary.

Corizon shall not be financially responsible for the costs of and/or associated with any of the following:
1. Transplants;
2. Smoking cessation treatment and/or classes;
3. Exceptional blood factor products for hemophiliacs (e.g. Factors 8 and 9);
4. Experimental procedures; and
5. Medication costs associated with the treatment of Hepatitis C.

Corizon will not be responsible for any medical testing and/or for obtaining samples which are forensic in nature, except as required by Florida Statutes 943.325. Revisions of the Florida statutes pertaining to medical testing or obtaining samples, which are forensic in nature, which occur during the term of this Agreement will be considered a further obligation of Corizon.

1.7    Inmates Outside the Jail. Health care services are intended only for those inmates who are in the custody of the Sheriff and have been lawfully arrested and physically booked into the Jail. This includes inmates booked into custody off-site and/or inmates under guard by Sheriff off-site. The Sheriff shall notify the on-site Corizon staff of all inmates booked off-site within 24 hours of said booking. Such inmates will be included in the average daily inmate population count.

Inmates on any sort of temporary release (authorized or unauthorized), including but not limited to, inmates temporarily released for the purpose of attending funerals or other family emergencies, inmates on escape status, inmates on pass, parole, or supervised custody who do not sleep in the Jail at night, will not be included in the daily population count, and will not be the responsibility of Corizon with respect to any claim, liability, cost, or expense for the payment and/or furnishing of health care services. The cost of medical services provided to inmates who become ill or injured while on temporary release will not be the financial responsibility of Corizon until their return to the Jail. This relates solely to the costs relating to the particular illness or injury incurred while on such temporary release. The cost of medical services for other illnesses and injuries will be the responsibility of Corizon, as limited herein.

LCSO-Frederick 001978

Inmates in the custody of other police agencies and/or other penal jurisdictions at the request of the Sheriff are likewise excluded from the population count and are not the responsibility of Corizon for the furnishing or payment of health care services.

1.8   Elective Medical Care. Corizon will not be responsible for providing elective medical care to inmates. For purposes of the Agreement, "elective medical care" means medical care which if not provided, would not in the opinion of Corizon's Medical Director cause the inmate's health to deteriorate or cause definite harm to the inmate's well-being. Such decisions concerning medical care shall be consistent with applicable laws and general medical standards. Corizon will give notice to the Sheriff of any referral of inmates for elective medical care prior to the provision of such services.

1.9   Transportation Services. To the extent any inmate requires off-site non-emergency health care treatment, including, but not limited to, hospitalization care and specialty services, for which care and services Corizon is obligated to pay for under this Agreement, the Sheriff will, upon the prior request by Corizon, its agents, employees and/or contractors, provide transportation as reasonably available, provided that such transportation is reasonably scheduled in advance. When medically necessary, Corizon shall provide all emergency ambulance transportation of inmates in accordance with Section 1.4 of this Agreement, subject to the limits set forth in Section 1.5.

1.10   Medical Services to Sheriff's Office Staff. Corizon will provide annual testing for tuberculosis (PPD test) for all Sheriff's newly sworn staff and correctional staff at the time of hire or exposure at no additional costs to the Sheriff. The Sheriff will be responsible for the cost of all testing supplies and materials. Corizon will provide a Hepatitis A, B and D inoculation program for the Sheriff staff at the Jail, including administration and record keeping. The costs of the vaccine will be the responsibility of the Sheriff. Corizon will bill the Sheriff monthly with appropriate documentation of services.

## ARTICLE II: PERSONNEL

2.1   Staffing. Corizon shall provide medical, mental health, dental, technical, and support personnel as necessary for the rendering of health care services to inmates at the Jail as described in and required by this Agreement. The Staffing Matrices attached hereto as Exhibits A and B include the agreed-upon staffing compliment necessary to provide the health care and support services required by the Jail for an average daily inmate population of up to 1,199.

2.2   Staffing Payback Schedule. For each of the positions included in the staffing matrix attached hereto as Exhibits A or B, Corizon will payback the Sheriff for any unfilled hours. For each unfilled hour of such staff time, the Sheriff will deduct from its monthly payment to Corizon at the average hourly salary rate for the position as set forth in Exhibit C. In all cases, employees not currently working required position hours may be used to cover like positions when their credentials are equal to or exceed the credentials required for such similar position. In the case where an LPN covers RN hours, only the difference of the payback rate will be paid back.

Unfilled hours include those hours which are not filled due to voluntary or involuntary termination or any other reason or incident resulting in the position being unfilled. Corizon will

LCSO-Frederick 001979

calculate, reconcile, and report any unfilled hours by position for each of the applicable bi-weekly pay periods in a monthly report to the Sheriff. However, unfilled hours will not include those hours not filled due to Corizon Paid Time Off (hereinafter "PTO"), for items such as illness, annual, or personal leave. If the position remains unfilled in excess of fifteen (15) days an amount will be payable to the Sheriff for each unfilled hour of such staff time at the average hourly rate plus benefits as set forth above.

In the event of staff shortages, the use of "agency" or "pool" nurses shall not exceed 15% of the total staffing compliment for any monthly period. In the event Corizon exceeds this limit, a charge back equal to one hundred percent (100%) of the average hourly salary rate for each of the positions shall be assessed for each hour Corizon exceeds the fifteen percent (15%) cap.

2.3    Licensure, Certification and Registration of Personnel. All Corizon personnel provided or made available to render services hereunder shall be licensed, certified or registered, as appropriate, in their respective areas of expertise as required by applicable Florida law. Each license or certification shall be on file at a mutually agreed upon central location. All prospective Corizon employees will be screened by the Sheriff and no employee will be allowed on duty until Corizon is notified of security clearance.

2.4    Sheriff's Satisfaction with Health Care Personnel. If the Sheriff becomes dissatisfied with any health care personnel provided by Corizon hereunder, or by any independent contractor, subcontractors or assignee, Corizon, in recognition of the sensitive nature of correctional services, shall, following receipt of written notice from the Sheriff outlining the grounds for such dissatisfaction and in consideration of the reasons therefore, shall exercise its best efforts to resolve the problem. If the problem is not resolved satisfactorily to the Sheriff, the Sheriff may revoke the employee's right to enter the Jail or Corizon shall remove or shall cause to be removed any employee, agent, independent contractor, subcontractor, or assignee about whom the Sheriff has expressed dissatisfaction. The Sheriff shall have the right of disapproval of any person hired or contracted by Corizon. Should removal of an individual become necessary, Corizon will be allowed thirty (30) days from the date of removal to find an acceptable replacement without penalty or prejudice to the interests of Corizon.

2.5    Use of Inmates in the Provision of Health Care Services. Inmates shall not be employed or otherwise engaged by either Corizon or the Sheriff in the direct rendering of any health care services. Upon prior written approval of the Sheriff, inmates may be used in positions not involving the rendering of health care services directly to inmates.

2.6    Subcontracting and Delegation. In order to discharge its obligations hereunder, Corizon will engage certain health care professionals as independent contractors and/or employees. The Sheriff may request to approve such professionals but approval will not be unreasonably withheld. Subject to the approval described above, the Sheriff consents to such subcontracting or delegation. As the relationship between Corizon and these health care professionals will be that of independent contractor, Corizon will not be considered or deemed to be engaged in the practice of medicine or other professions practiced by these professionals. Corizon will not exercise control over the manner or means by which these independent contractors perform their professional medical duties. However, Corizon shall exercise administrative supervision over such professionals necessary to ensure the strict fulfillment of the obligations contained in this Agreement. (Please see Section 10.1).

LCSO-Frederick 001980

2.7 <u>Discrimination</u>. During the performance of this Agreement, Corizon, their employees, agents, subcontractors, and assignees agree as follows:

(a) They will not discriminate against any employee or applicant for employment because of race, color, religion, sex, age, Vietnam Veteran status, disability as defined in the Americans with Disabilities Act or national origin, except where age, religion, sex, disability or lack thereof or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of the contractor. They will agree to post in conspicuous places, available to employees and applicants for employment, notices setting forth the provisions of this nondiscrimination clause.

(b) In all solicitations or advertisements for employees, they will state that it is an equal opportunity employer.

(c) Notices, advertisements and solicitations placed in accordance with federal law, rule, or regulation shall be deemed sufficient for the purpose of meeting the requirements of this section.

## ARTICLE III: ACCREDITATION

3.1 <u>Obligation of Corizon</u>. Corizon services shall be designed to meet or exceed the standards promulgated/developed by the National Commission on Correctional Health Care for Jails (NCCHC), Florida Correctional Accreditation Commission (FCAC) and the Florida Model Jail Standards. Corizon will cooperate fully with the Sheriff in all efforts to maintain formal accreditation of the Jail's health care program. Corizon will be responsible for the payment of the fees for attaining NCCHC accreditation as well as those associated with the medical portion of FCAC and Florida Model Jails. Corizon shall not be responsible for the standards of NCCHC, FCAC, and the Florida Model Jail Standards not under Corizon's direct control or within the scope of Corizon's services. In the event accreditation from the NCCHC is not maintained during the term of this contract for failure on the part of Corizon to comply with NCCHC standards, then Corizon will pay a penalty of Fifty Thousand and 00/100 Dollars ($50,000) to the Sheriff as liquidated damages.

This obligation shall include providing written reports, on-site reviews, preparation of forms and applications, and attendance at meetings as required by the Sheriff. Corizon shall not be responsible for the standards of NCCHS, FCAC, and the Florida Model Jail Standards not under Corizon's direct control or within the scope of Corizon's services.

## ARTICLE IV: EDUCATION

4.1 <u>Inmate and Staff Education</u>. Corizon shall conduct an ongoing health education program for inmates at the Jail with the objective of raising the level of inmate health and health

LCSO-Frederick 001981

care. If the Sheriff so desires, Corizon shall conduct the same program for correctional officers at the Jail.

At a minimum, Corizon staff will provide relevant training to the Sheriff's staff on a quarterly basis. The topics for training shall be mutually agreed upon by the Parties.

4.2   Medical Services Staff Education.   Corizon will require that its medical, professional and para-professional staff receive all necessary and requisite legal and statutorily mandated in-service, annual, or proficiency training and other such professional or para-professional education and training programs needed to provide current proficiency in the professional's or para-professional's particular medical discipline or specialty.

### ARTICLE V: REPORTS AND RECORDS

5.1   Medical Records.   Corizon shall cause and require to be maintained a complete and accurate medical record for each inmate who has received health care services from or at the direction of Corizon. Each medical record will be maintained in accordance with applicable laws, NCCHC standards, FCAC standards, and the Sheriff's policies and procedures. The medical records shall be kept separate from the inmate's confinement record. A complete legible copy of the applicable medical record shall be available, at all times, to the Sheriff and may be available to accompany each inmate who is transferred from the Jail to another location for off-site services or transferred to another institution. Medical records shall be kept confidential. Subject to applicable law regarding the confidentiality of such records, Corizon shall comply with Florida law and the Sheriff's policy with regard to access by inmates and Jail staff to medical records. No information contained in the medical records shall be released by Corizon except as provided by the Sheriff's policy, by a court order, or otherwise in accordance with applicable law. Corizon shall provide all medical records, forms, jackets, and other materials necessary to maintain the medical records. Upon the expiration or termination of this Agreement, all medical records shall be delivered to and remain with the Sheriff. However, the Sheriff shall, within the limits of applicable law, provide Corizon with reasonable ongoing access to all medical records even after the termination/expiration of this Agreement to enable Corizon to properly prepare for litigation or anticipated litigation or any other legal or regulatory action brought or threatened by third persons in connection with services rendered during the term hereof.

Corizon agrees to coordinate any and all public records requests received by Corizon requesting inmate medical records with the Sheriff.

5.2   HIPAA Compliance.   As a covered entity, Corizon shall comply with all applicable Health Insurance Portability and Accountability Act of 1996 (HIPAA) requirements.

5.3   Regular Reports by Corizon to the Sheriff.   Corizon shall provide to the Sheriff, on a date and in a form mutually acceptable to Corizon and the Sheriff, monthly and annual reports relating to services rendered under this Agreement. Corizon shall submit monthly and other periodic reports to the Director of the Jail or the Sheriff's Health Services Representative, concerning and reflecting the overall health of the inmates committed to the custody of the Sheriff. Such reports shall be submitted on a regular basis as agreed upon by mutual written agreement of the Parties. Corizon will fully cooperate with the Sheriff to respond to reporting requests to

LCSO-Frederick 001982

support any provision or section of this Agreement, without any additional charge, fee, or assessment to the Sheriff.

    5.4    <u>Third Party Reimbursement.</u>  Corizon will seek and obtain from any inmate documentation concerning any health insurance the inmate might have that would cover services rendered by Corizon hereunder, and the Sheriff will cooperate fully with Corizon in its efforts to secure this information.  Corizon shall make reasonable efforts to use any information obtained concerning any third party payor sources except for Medicaid and/or Medicare (for which Corizon will not seek, direct, bill, or assist in reimbursement), including commercial health care insurance, governmental health care benefits and/or programs (as permitted by law), and worker's compensation insurance, which might be available to an inmate to cover services rendered or arranged for by Corizon hereunder.  This shall include information concerning (a) payor sources from which an inmate may currently have coverage, and/or (b) payor sources for which an inmate may meet eligibility requirements necessary to apply for such coverage.  Corizon shall provide the third-party source information it has collected to all off-site providers at the time an inmate is sent for off-site health care services.  Corizon will require that anyone acting on its behalf or providing any medical service to an Inmate to seek reimbursement for any medical services, as allowed by federal and state law and in accordance with the provisions of F.S. 901.35 (except for F.S. 901.35(2)(a) and (b), as it may be applicable to the Board of County Commissions for Leon County and F.S. 951.032.

    In any event, should a change in law, policy, or regulation result in greater third-Party reimbursement for inmate medical costs, Corizon and the Sheriff hereby agree to work in collaboration with one another so as to diligently research this matter and/or amend this Agreement so as to maximize any potential benefits to the Sheriff as permitted by law.

    All third party remuneration that is recovered or credited by Corizon prior to submitting its final invoice to the County (including payments collected from any third party source or entity, including without limitation, workers compensation insurance, commercial medical insurance) will be returned as appropriate to the Sheriff, as directed by the Sheriff.  The Sheriff will receive a monthly report outlining third party reimbursement efforts made by Corizon.

    5.5    <u>Inmate Information</u>.  Subject to the applicable Florida law, in order to assist Corizon in providing the best possible health care services to inmates, the Sheriff will provide Corizon with information pertaining to inmates that Corizon and the Sheriff mutually identify as reasonable and necessary for Corizon to adequately perform its obligations hereunder.

    5.6    <u>Corizon Records Available to the Sheriff with Limitations on Disclosure.</u>  Corizon shall make available to the Sheriff, at the Sheriff's request, all records, documents and other papers relating to the direct delivery of health care services to inmates hereunder with the exception of those items Corizon deems proprietary in nature.  In the event Corizon decides (as it is within its sole discretion) to release proprietary material to the Sheriff, it is understood that such released items shall remain the property of Corizon and may not, at any time, be used, distributed, copied or otherwise utilized by the Sheriff, except in connection with the delivery of health care services hereunder, and as permitted or required by law, unless such disclosure is approved in advance in writing by Corizon.

LCSO-Frederick 001983

With regard to any and all contractual agreements Corizon maintains and/or has maintained in the past with off-site health care providers (hereinafter "Provider Agreements") relevant to its duties and obligations as outlined herein, the Sheriff hereby acknowledges that the Provider Agreements contain the business proprietary information of Corizon as defined by Florida law (Chapter 119 et. seq.) and therefore are confidential in nature and protected from disclosure under the Florida Open Records Act. Upon providing Corizon with a written request, Corizon shall allow the Sheriff to review its Provider Agreements which directly relate and/or facilitate the provision of health care services thereto. However, prior to receiving any access to Corizon's Provider Agreements, the Sheriff inclusive of his or her agents, consultants, assignees, designees, and/or subcontractors shall be required to execute and return a confidentiality agreement to Corizon.

5.7   Sheriff's Records Available to Corizon with Limitations on Disclosure. During the term of this Agreement and for a reasonable time thereafter, the Sheriff will provide Corizon, at Corizon's request, Sheriff's records relating to the provision of health care services to inmates as may be reasonably requested by Corizon or as are pertinent to the investigation or defense of any claim related to Corizon's conduct. Consistent with applicable law, the Sheriff will make available to Corizon such records as are maintained by the Sheriff, hospitals, and/or other outside health care providers involved in the care or treatment of inmates (to the extent the Sheriff has any control over those records) as Corizon may reasonably request. Any such information provided by the Sheriff to Corizon that the Sheriff considers confidential and clearly labeled confidential shall be kept confidential by Corizon and shall not, except as may be required by law, be distributed to any third party without the prior written approval of the Sheriff.

5.8   Florida Public Record Law. Corizon will be responsible for keeping, maintaining and retaining public records that ordinarily and necessarily would be required to be kept by the Sheriff in order to perform the services contracted for. In adherence to Chapter 119, Florida Statutes, Contractor will provide members of the public with access to said public records, as contemplated in Chapter 119, Florida Statutes, on the same terms and conditions that the Sheriff would provide the records and at a cost that does not exceed the cost provided in Chapter 119, Florida Statutes, or as otherwise provided by law. Contractor will ensure that public records which are exempt or, are confidential and exempt, are not disclosed except as authorized by law. In the event Corizon should assert any proprietary or confidential status to any of its systems, methods, procedures, and/or written materials and other controls employed by Corizon in the performance of its obligation pursuant to this Agreement, then Corizon shall assert such claim on its own, and shall defend and hold harmless the Sheriff, the Sheriff's employees, officers, appointees and agents against all liabilities for Corizon's failure to comply with the requirements of the law with regard to the release of records.

## ARTICLE VI:  SECURITY

6.1   General. Corizon and the Sheriff understand that adequate security services are necessary for the safety of the agents, employees, and subcontractors of Corizon as well as for the security of inmates and Sheriff's staff consistent with the correctional setting. The Sheriff will use reasonable efforts to provide sufficient security to enable Corizon, and its personnel, to safely and adequately provide the health care services described in this Agreement. Corizon, its staff and personnel, understand the Jail in which services will be rendered is a detention or Jail facility and that working in such a facility involves inherent dangers. Corizon, its staff and personnel further

LCSO-Frederick 001984

understand that the Sheriff cannot guarantee anyone's safety in such a facility and nothing herein shall be construed to make the Sheriff, his deputies or employees a guarantor of the safety of Corizon employees, agents, and/or subcontractors.

In the event that any recommendation by Corizon for particular health services for any inmate or transfers to a medical facility should not be implemented and carried out for security reasons, Corizon will be released from professional liability for any damages resulting from any such decision on the part of the Sheriff not to respond or to institute a requested transfer of any inmate.

6.2   Loss of Equipment and Supplies. The Sheriff shall not be liable for loss of or damage to equipment and supplies of Corizon, its agents, employees, or subcontractors unless such loss or damage was caused by the negligence of the Sheriff or his employees.

6.3   Security During Transportation Off-Site. The Sheriff will provide security as necessary and appropriate in connection with the transportation of any inmate between the Jail and any other location for off-site services as contemplated herein.

## ARTICLE VII: OFFICE SPACE, EQUIPMENT, INVENTORY AND SUPPLIES

7.1   General. The Sheriff agrees to provide Corizon with office space, facilities, equipment (including office furniture), and utilities sufficient to enable Corizon to perform its obligations hereunder. Corizon will supply and be responsible for payment of telephone carrier services and equipment within the Jail for local and long distance access for use by its personnel. Corizon shall provide all necessary office supplies, medical supplies, and additional equipment necessary to comply with the terms of this Agreement. The Sheriff will provide necessary maintenance and housekeeping of the office space and the medical facility. Corizon agrees it has inspected the Jail and medical office space and that such space and facilities are sufficient for its agents, employees, and/or subcontractors to perform all of the obligations required under this Agreement. Sheriff shall be responsible for providing substitute space should the designated medical facility become unsafe for any reason.

7.2   Delivery of Possession. The Sheriff will continue to provide Corizon with possession and control of all medical and office equipment and supplies, which are the Sheriff's property and in place at the Jail's health care unit throughout the term of this Agreement. At the termination of this or any subsequent Agreement, Corizon will return to the Sheriff possession and control of all medical and office equipment ( i.e., furniture, file cabinets, etc.), in working order, reasonable wear and tear excepted, which were in place at the Jail's health care unit prior to the commencement of services under this Agreement.

7.3   Maintenance and Replenishment of Medical Equipment. Corizon will maintain all Sheriff and Corizon medical equipment necessary for the performance of this contract in working order during the term of this Agreement. Based on input from the Corizon Medical Director and/or his/her designee and in consultation with the Sheriff, the Sheriff will consider submitting an annual budget for capital medical equipment item, with a value in excess of $2,500.00/item per year, necessary to provide services in the Jail. Corizon will purchase all medical equipment up to an aggregate cost of $2,500.00 per year. Sheriff will provide to Corizon an annual inventory of

Corizon owned equipment and equipment owned by the Sheriff and in use by Corizon. Ownership of the purchased medical equipment will revert to the Sheriff upon termination of the Agreement.

       7.4    General Maintenance Services. The Sheriff will provide for each inmate receiving health care services the same services and facilities provided by the Sheriff for all inmates at the Jail including, but not limited to, daily housekeeping services, dietary services, building maintenance services, personal hygiene supplies and services, and linen supplies.

       7.5    Supplies. Corizon warrants and represents that the quality and quantity of supplies on hand during this Agreement will be sufficient to enable Corizon to perform its obligations hereunder.

### ARTICLE VIII: TERM AND TERMINATION OF AGREEMENT

       8.1    Term. ==This Agreement will be effective at 12:01 a.m. on October 1, 2014. The initial term of this Agreement shall be thirty six (36) months.== This Agreement is renewable through the mutual agreement (in writing) of the Parties under like terms for two (2) additional one (1) year terms. Any extension must be agreed to no later than one hundred and twenty (120) days prior to the termination of the then existing term.

       8.2    Termination. This Agreement may be terminated as otherwise provided in this Agreement or as follows:

          (a)    Termination by agreement. In the event that both Parties agree in writing, this Agreement may be terminated on the terms and date stipulated therein.

          (b)    Termination without Cause. This Agreement may be cancelled without cause by the Sheriff or Corizon upon one hundred twenty (120) days prior written notice in accordance with Section 11.3 of this Agreement.

          (c)    Termination for Default. In the event either Party gives notice to the other that such other Party has materially defaulted in the performance of any of its material obligations hereunder and such default is not cured within thirty (30) days following the provision of written notice thereof, the non-defaulting Party (also the Party issuing notice) shall have the right to immediately terminate this Agreement.

          (d)    Annual Appropriations and Funding. Failure of the Leon County Board of County Commissioners or other funding body to authorize or appropriate funds sufficient for the Sheriff to meet his obligations hereunder.

          (e)    Immediate Termination by the Sheriff. The Sheriff, at the Sheriff's sole discretion, may terminate this Agreement immediately upon the occurrence of any of the following events:

              1) The insolvency, bankruptcy, or receivership of Corizon;
              2) Corizon fails to maintain insurance in accordance with the Insurance Section of this Agreement, unless Corizon's insurance carrier ceases to

        provide coverage without giving reasonable notice allowing Corizon to obtain replacement coverage. In such circumstances, Corizon shall be allowed reasonable time to solicit and bind new coverage without being in default or otherwise penalized under the terms of this Agreement. Corizon shall use all reasonable efforts to obtain replacement coverage.

    (f)    <u>Election or Appointment of Sheriff other than Larry Campbell.</u> Should a Sheriff other than Larry Campbell be elected or appointed during the initial term of this Agreement or any renewable period, the Agreement may be cancelled by the new elected or appointed Sheriff upon provided Corizon with ninety (90) days written notice.

    8.3    <u>Responsibility for Inmate Health Care</u>. Upon termination of this Agreement, all of Corizon's responsibility for providing health care services to all inmates, including inmates receiving health care services at sites outside the Jail will terminate.

## ARTICLE IX: COMPENSATION

    9.1    <u>Base Compensation</u>. For the period defined as Year 1 (October 1, 2014 through September 30, 2015), the Sheriff will pay to Corizon the annual base sum of $4,084,393 payable in twelve (12) equal monthly installments of $340,366.08. This annual base sum is based upon an ADP of 1150.

    For the period defined as Year 2 (October 1, 2015 through September 30, 2016), the Sheriff will pay Corizon an annual base sum equal to the Year 1 base compensation adjusted by the most recent twelve (12) month percentage change in the Medical Care Component of the United States Department of Labor Consumer Price Index ("CPI") for all Urban Consumers for the South region, or 2%, whichever is less, payable in twelve (12) equal monthly installments.

    For the period defined as Year 3 (October 1, 2016 through September 30, 2017), the Sheriff will pay Corizon an annual base sum an annual base sum equal to the Year 2 base compensation adjusted by the most recent twelve (12) month percentage change in the Medical Care Component of the United States Department of Labor Consumer Price Index ("CPI") for all Urban Consumers for the South region, or 2%, whichever is less, payable in twelve (12) equal monthly installments.

    Corizon will invoice the Sheriff fifteen (15) days before the first day of the month for which services will be rendered. The Sheriff agrees to pay Corizon on or before the thirtieth (30th) day of the month for which services will be rendered. In the event this Agreement should terminate or be amended on a date other than the end of any calendar month, compensation to Corizon will be prorated accordingly based on the fractional portion of the month during which Corizon actually provided services.

    9.2    <u>Increases/Decreases in Inmate Population</u>. For the Year 1 of the contract, a per diem rate of 1.90 will be applied to the monthly base compensation for each inmate in excess of (beyond a 24 hour period) 1150. For Year 2 of the contract, a per diem rate of 1.93 will be applied to the monthly base compensation for each inmate in excess of (beyond 24 hours) 1150. For Year 3 of

LCSO-Frederick 001987

the contract, a per diem rate of 1.97 will be applied to the monthly base compensation for each inmate in excess of (beyond 24 hours) 1150 will be paid to Corizon. If there is a decrease in population (beyond a 24 hour period) of 1150 for year 1 of the contract a rate of 1.90 will be credited to LCSO. If there is a decrease in population of (beyond a 24 hour period) 1150 for year 2 of the contract a rate of 1.93 will be credited to the LCSO. If there is a decrease in population of (beyond a 24 hour period) 1150 for year 3 of the contract a rate of 1.97 will be credited to the LCSO

The average daily population counts are added for each day of the month and divided by the number of days in the month to determine the average daily inmate population. The excess, if any, over or under the stated inmate population caps will be multiplied by the per diem rate and the number of days in the month to arrive at the increase in compensation payable to Corizon or a credit due the Sheriff for the month.

This per diem is intended to cover additional costs in those instances where minor, short-term increases in the inmate population result in the higher utilization of routine supplies and services. However, the per diem is not intended to provide for any additional fixed costs, such as new staffing positions, which might prove necessary if the inmate population exceeds 1150 for a period of 60 (sixty) or more days. In such cases, Corizon reserves the right to increase its staffing complement and adjust its contract price, upon consultation and approval from the Sheriff, in order to continue to provide services to the increased number of inmates and maintain the quality of care.

Should the Sheriff designate any other Leon County site as a Jail requiring the provision of health services by Corizon or change the configuration or layout of the current Jail, the parties agree to negotiate the additional staff and compensation prior to Corizon commencing services at a newly designated facility.

9.3    Compensation for Renewal Terms. Pricing will be adjusted for the renewal terms beyond the thirty six (36) month initial Agreement, based on the mutual written Agreement of the Sheriff and Corizon.

9.4    Inmates from Other Jurisdictions. Medical care rendered within the Jail to inmates from other jurisdictions housed in the Jail pursuant to contracts between the Sheriff and such other jurisdictions will be the responsibility of Corizon and will be included in the average daily inmate population count. Corizon will arrange medical care that cannot be rendered in the Jail, but Corizon shall have no financial responsibility for such services.

9.5    Responsibility for Inmates in the Sheriff's Work Camp Program. Notwithstanding any other provisions of this Agreement to the contrary, the Parties agree that inmates assigned to the Sheriff's Work Camp Program are personally responsible for the costs of any medical services provided to them. Corizon shall assist with arranging the necessary transportation for these inmates to obtain medical care.

9.6    Changes. If any statute, rule, or regulation is passed or any order issued or any statute or guideline adopted or interpretation made, or additional facilities are opened that materially changes the scope of services or materially increases the cost to Corizon of providing health care services hereunder, Corizon and the Sheriff agree to negotiate additional compensation to be paid by the Sheriff to Corizon as a result of such changes, provided that if the Parties are

LCSO-Frederick 001988

unable to agree on appropriate compensation, the matter shall be submitted to mediation according to the provisions of Section 11.7 hereof.

9.7 <u>Late Payments.</u> The Sheriff shall pay Corizon interest on all amounts due and owed hereunder that are not paid within thirty (30) days from the receipt of the applicable invoice. Interest shall accrue from the date the original payment was due at the statutory interest per annum as set forth in F.S.A. 55.03, et. seq. Additionally, the Sheriff shall bear the costs of any legal or collection fees and expenses incurred by Corizon in attempting to enforce the Sheriff's payment obligations hereunder.

## ARTICLE X: LIABILITY AND RISK MANAGEMENT

10.1 <u>Insurance.</u> At all times during this Agreement, Corizon shall maintain Professional Liability insurance covering Corizon, its employees, its officers and agents in the minimum amount of at least one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) in the aggregate. Physicians and dentists provided by Corizon will be included in the coverage. After the contract period, a tail policy or a policy that continues coverage for the services performed during the contract period will be maintained for an appropriate period in accordance with the Florida Statute of Limitations. Corizon shall list the Sheriff as an additional insured and in the event its insurance coverage changes, Corizon shall provide the Sheriff with written notice of such changes within a reasonable time not to exceed thirty (30) days from the happening thereof.

Corizon will maintain over the term of this Agreement, Comprehensive General Liability coverage of at least $1,000,000 each claim and $2,000,000 in the aggregate.

Corizon will maintain over the term of this Agreement, Worker's Compensation Insurance for all of its employees connected with the work of this Agreement and in any case of subcontracting, will require that the subcontractor have sufficient coverage as well. Such insurance will comply fully with the Florida Worker's Compensation Law.

10.2 <u>Lawsuits Against the County and Sheriff.</u> In the event that any lawsuit (whether frivolous or otherwise) is filed against either Leon County, the Sheriff, his employees and/or agents based on and/or containing allegations concerning medical care by Corizon to inmates or on the performance of Corizon's employees, agents, subcontractors or assignees, the Parties agree that Corizon, its employees, agents, subcontractors, assignees or independent contractors, as the case may be, may be joined as Parties in any such lawsuit and shall be responsible for their own defense and any judgments rendered against them. Nothing herein shall prohibit any of the Parties to this Agreement from joining the remaining Parties hereto as defendants in lawsuits filed by third Parties.

10.3 <u>Indemnity.</u> Corizon agrees to indemnify and hold harmless, pay the cost of defense, including reasonable attorney's fees, and save the Sheriff, his officers, appointees, agents, and employees from any claim, action, lawsuit, loss, damage, cost, charge, judgments, liabilities, or expense of any kind whatsoever arising out of any act, action, neglect, omission and/or failure to act by Corizon, including but not limited to, any claims, amounts or injuries covered under the

LCSO-Frederick 001989

Workers' Compensation laws, except as a third party claim outside Workers' Compensation, resulting or arising from Corizon's obligations and duties under this Agreement, except that neither Corizon nor any of its subcontractors shall be liable for any injury or damage caused by or resulting from the negligence of the Sheriff, his officers, agents, and/or employees.

It is the express understanding of the Parties hereto that Corizon shall provide the actual health care services and have complete responsibility for the health care services provided by its employees, agents, or subcontractors, and any lawsuit arising solely out of such delivery of health care services. Corizon expressly agrees that employees assigned by Corizon to provide health care services pursuant to this Agreement are employees of Corizon and not the Sheriff, and the Sheriff will not be liable or responsible for Corizon's employees, agents, or subcontractors acts or omissions, whether by negligence or by deliberate act.

Notwithstanding other provisions of this section, the Sheriff shall have no obligation to provide legal counsel or a legal defense to Corizon in the event that a suit, claim, or action of any character or nature is brought by any person not a party to this Agreement against Corizon as a result of or relating to Corizon's duties, obligations, and performances pursuant to this Agreement. The Sheriff shall have no obligation for the payment of any judgment or the settlement of any claims made against Corizon as a result of or relating to Corizon's obligations, duties, and performances under this Agreement.

In no event shall Corizon's obligations in this section apply or extend to:

a) any claim, liability, cost or expenses arising or incurred at any time in connection with treatment of any inmate's injury if such treatment was not within the responsibility of Corizon's care pursuant to this Agreement; or

b) any claim, liability or cost arising out of the acts or omissions of any Sheriff's officers, agents or employees which prevent an inmate from receiving medical care as directed by Corizon; to obtain prompt medical review or examination by Corizon's employees or contractors.

Nothing herein is intended to or shall be construed to waive any rights the Sheriff may have under the laws of Florida, included but not limited to, the provisions of Section 768.28 of the Florida Statutes.

10.4   Stop Loss Insurance Coverage.  In the event the Sheriff elects to maintain stop loss insurance coverage relevant to the health care services provided pursuant to this Agreement, Corizon hereby agrees to facilitate the administrative details (limited to billing activities) in maintaining the coverage as long as the Sheriff cooperates fully throughout the process.

16

## ARTICLE XI: MISCELLANEOUS

11.1 <u>Independent Contractor Status</u>. The Parties acknowledge that Corizon is an independent contractor and that all medical care decisions will be the sole responsibility of Corizon. Nothing in this Agreement is intended nor shall be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, or any other relationship allowing the Sheriff to exercise control or direction over the manner or method by which PHS, its employees, agents, assignees, or its subcontractors perform hereunder.

11.2 <u>Assignment and Subcontracting</u>. Corizon shall not assign or subcontract this Agreement, in whole or in part, to any other entity or person without the express written consent of the Sheriff, which consent shall not be unreasonably withheld. Any such assignment or subcontract shall include the obligations contained in this Agreement. Any assignment or subcontract shall not relieve Corizon of its independent obligation to provide the services and be bound by the requirements of this Agreement. The Sheriff and Corizon each binds itself, its successors, assigns, and legal representatives to the other Party hereto and to the successors, assigns and legal representatives of such other Party in respect to all covenants, agreements, and obligations contained herein.

11.3 <u>Notice</u>. Unless otherwise provided herein, all notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally in hand or sent by certified mail, return receipt requested, postage prepaid, and addressed to the appropriate party at the following address or to any other person at any other address as may be designated in writing by the Parties:

(a)   Larry Campbell
      Leon County Sheriff
      2825 Municipal Way
      Tallahassee, FL 32304

      With copies to:

      Brent Coughlin
      Jail Commander
      2825 Municipal Way
      Tallahassee, FL 32304

(b)   Dr. Woodrow A. Myers, Jr.
      Chief Executive Officer
      Corizon Health, Inc.
      105 Westpark Drive, Suite 200
      Brentwood, Tennessee 37027

      With a copy to:

      Chief Legal Officer
      Corizon Health, Inc.

        105 West Park Drive, Suite 200
        Brentwood, Tennessee 37027

Notices shall be effective upon receipt.

    11.4    <u>Governing Law</u>. This Agreement and the rights and obligations of the Parties hereto shall be governed by and construed in accordance with the laws of the State of Florida and venue shall be in Leon County, Florida, unless statutorily required to file elsewhere.

    11.5    <u>Entire Agreement</u>. This Agreement constitutes the entire Agreement of the Parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions, and/or agreements that have been made in connection with the subject matter hereof. No modifications or amendments to this Agreement shall be binding upon the Parties unless the same is in writing and signed by the respective Parties hereto. All prior negotiations, agreements, and understandings with respect to the subject matter of this Agreement are superseded hereby.

    11.6    <u>Amendment</u>. This Agreement may only be amended or revised in a written instrument signed by all the Parties hereto.

    11.7    <u>Dispute Resolution</u>. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be first sent to mediation for possible resolution. The Parties agree to share equally the cost of the mediation.

    11.8    <u>Waiver of Breach</u>. The waiver by either Party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

    11.9    <u>Enforcement.</u> In the event either Party incurs legal expenses or costs to enforce the terms of this Agreement, the prevailing Party in any arbitration/litigation proceeding hereunder shall be entitled to recover the cost of such action so incurred, including without limitation, reasonable attorney's fees. The Sheriff's obligation under this section shall be to the extent permitted by law.

    11.10    <u>Other Contracts and Third-Party Beneficiaries</u>. The Parties agree they have not entered into this Agreement for the benefit of any third person or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof.

    11.11    <u>Severability</u>. In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of the Agreement, which shall remain in full force and effect and enforceable in accordance with its terms.

    11.12    <u>Force Majeure</u>. Neither Party shall be held responsible for any delay or failure in performance (other than payment obligations) to the extent that such delay or failure is caused, without limitation, by strikes, inmate disturbances, acts of public enemy, fire, flood, earthquakes, hurricanes, failure of transportation, explosion, war, embargo, government regulation, civil or

LCSO-Frederick 001992

military authority, acts of God, acts or omissions of carriers, or other similar causes beyond its control.

Should emergency staffing (above the contracted hours) be necessary to support the Jail during a FEMA recognized event, Corizon will invoice the Sheriff accordingly. If FEMA reimburses the Sheriff, the Sheriff will pay the invoice.

11.13 <u>Trial Duty</u>. In the event Corizon's personnel is required to devote time with regard to litigation or threatened litigation by or on behalf of the Sheriff this shall be part of their service time pursuant to this Agreement. Corizon will make every effort to fill the position that is vacant due to such court or trial appearance requirements and Corizon will not be assessed a penalty for any related unfilled hours.

11.14 <u>Default</u>. Unless Corizon's performance is specifically exempted by this Agreement, the Sheriff shall be entitled to a credit or reimbursement for any cost the Sheriff incurs for any medical services required to be performed by Corizon when and to the extent that Corizon shall fail to perform and a thirty (30) day cure period has passed. The credit or reimbursement provided for in this section shall not be deemed to be the sole remedy of the Sheriff and the Sheriff is otherwise entitled to seek all other lawful remedies the Sheriff is entitled to under this Agreement.

11.15 <u>Funding Sources</u>. The Parties acknowledge that the performance of this Agreement and payment for medical services to Corizon pursuant to this Agreement are predicated on the continued annual appropriations by the Board of County Commissioners of Leon County to the Sheriff with specific funds allocated to meet the medical needs of the inmates in the Jail and the Sheriff's ability to perform under this Agreement.

11.16 <u>Permits and License</u>. Corizon acknowledges that it will maintain and pay for all relevant permits and licenses required to perform the services required by this Agreement. This will include, but not be limited to licenses and permits for radiology and pharmacy. Corizon shall manage and maintain all licenses and permits in accordance with Section 7.2 of the Florida Model Jail Standards. Corizon shall ensure that all individuals or entities performing the health care services required under this Agreement, including its employees, agents, assignees, subcontractors or independent contractors shall be appropriately licensed, registered or certified as required by applicable law. Corizon shall immediately notify the Sheriff of any revocation, suspension, termination, expiration, restrictions, etc., of any required license, registration or certification of any individual or entity to perform the services herein specified.

11.17 <u>Effect of This Agreement</u>. This Agreement constitutes the complete understanding between the Parties with respect to the terms and conditions set forth herein and supersedes all previous written or oral agreements and representations. The terms and conditions of this Agreement shall control over any terms and conditions in any solicitation, request for proposal, proposal, purchase order, acknowledgment, or other written form.

11.18 <u>Authority.</u> Each Party hereto expressly represents and warrants that the person executing this Agreement is the legal, valid, and binding representative of each Party.

LCSO-Frederick 001993

11.19 <u>Exhibits.</u> Exhibits A, B, and C are included as attachments and are hereby made a part of this Agreement.

11.20 <u>Audit.</u> The Sheriff reserves the right to audit all records relating to this Agreement.

11.21 <u>Miscellaneous.</u> Corizon will begin implementation of an Electronic Health Record (EHR) system at Leon County Jail within 6 months of the date of this Agreement and complete the implementation by the fourth quarter of 2015. Corizon also agrees to implement DEXIS, a digital dental diagnostic imaging system, and InterMedHx medication reconciliation system. Corizon will be financially responsible for the software required for these systems and the Sheriff will be financially responsible for obtaining all hardware required for these systems. If the Sheriff terminates the Agreement without cause before the initial thirty-six (36) month term expires, the Sheriff agrees to promptly reimburse Corizon for the EHR system at a rate of $6,250.00 multiplied by the number of months remaining under the initial contract term. If the Sheriff declines to exercise any renewal option under the Agreement, Corizon will transfer its license for the EHR system to the Sheriff and the Sheriff will be responsible for any applicable annual maintenance and hosting charges for the EHR system owed to the EHR provider.

IN WITNESS WHEREOF, the Parties have executed this Agreement in their official capacities with legal authority to do so.

**LEON COUNTY SHERIFF**

By: _____

Title: Sheriff

Date: 9/30/14

ATTEST:

By: _____

Date: 9/30/14

**CORIZON HEALTH, INC.**

By: _____

Title: President & COO

Date: 10-3-14

ATTEST:

By: _____
Officer of Corporation

Date: 10-3-14

APPROVED AS TO FORM
by LEGAL DEPT.

LCSO-Frederick 001994