UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION
CASE NO.: 4:19-cv-00162-MW-MAF

ELIZABETH FREDERICK, as Personal Representative of the Estate of Jennifer Casey Norred and on behalf of the survivors, Elizabeth Frederick, Mother and William James Norred, Father,

    Plaintiff,

v.

WALTER MCNEIL, Sheriff of Leon County, Florida, CORIZON, LLC, a Health Services Corporation, MARIA LILIANA GARCIA, M.D., KIMBERLY PETERSEN, DEBBIE SELLERS and MISTY ROBERTSON, in their individual capacities.

    Defendants.
_____/

**DEFENDANT MISTY ROBERSTON'S
RESPONSE TO PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

Defendant Misty Robertson ("Robertson") files her Response to the Plaintiff's Omnibus Motion in Limine [ECF #137] as follows:

**Background**

Norred entered the Leon County Jail on April 2, 2017, and an Intake Receiving and Screening was done. She disclosed daily alcohol and marijuana use. Her mental health history included schizophrenia, bipolar disorder and

medication for depression, but no psychiatric hospital admissions or suicide attempts [ECF #78-1, pp. 1-6]. Corrections officials decided she should be segregated from other inmates because of the nature of her crime [ECF #78-1, pp. 7, 9]. Norred signed a medical consent form [ECF #78-1, p. 11]. She was referred to a mental health counselor because she "used to take psych meds but [stated] they didn't work" [ECF #78-1, pp. 43, 52].

On April 4, 2017, Norred filled out a Health Services Request Form, seeking medications for hypothyroidism and a vegetarian diet. The medication could not be confirmed because Norred did not provide information as to the prescriber. On April 13, 2017, a nurse practitioner ordered bloodwork regarding this condition. She made no other complaints [ECF #78-1, p. 27, 50, 52].

Mental health counselor Robertson examined Norred on April 5, 2017. Norred declined treatment, stating, "Meds don't work anyway. I don't see why this is more important than my thyroid medicine. That's what I need handled, I don't need this." She was noted to be agitated and irritable, but not suicidal [ECF #78-1, p. 44].

On April 10, 2017, a history and physical was performed by a registered nurse. Norred disclaimed a history of suicide attempts or current suicidal ideation [ECF #78-1, p. 20, 54-55].

On July 21, 2017, Norred reportedly attempted to hang herself in her cell. She was examined by Dr. Garcia, who found her to be in no acute distress; found her able to follow instructions; and had no swelling, abrasions or redness on her neck. Dr. Garcia placed her on direct observation [ECF #78-1, pp. 23-25, 50, 52-53]. However, a jail lieutenant ordered her placed in a restraint chair. While restrained, Norred was regularly allowed to get out of the chair to stretch, exercise and shower. Just before her release from the chair, Norred told a registered nurse "I don't want to kill myself". "I'm OK I just had a disagreement with my Mom and Stepfather." She was released from the chair the following day, and Dr. Garcia approved her release from a medical perspective and Robertson put her on direct observation [ECF #78-1, pp. 45, 50, 53, 59-63]. Logs were maintained by medical staff at regular intervals from 11 a.m. July 22, 2017 until 4 a.m. July 24, 2017 [ECF #78-1, pp. 72-73].

Robertson examined Norred at 7 a.m. on July 24, 2017. Norred repeated what she told the registered nurse two days previously: "I had gotten bad news from my parents so I was upset but I don't really want to kill myself. I want my clothes back." Robertson found her oriented to person, place, time and situation; her behavior normal; her mood stable; and her thought goal directed, logical and coherent. Norred denied suicidal ideations. Robertson released her from suicide watch [ECF #78-1, pp. 45-46, 51].

Norred hung herself about three hours later.  Resuscitation efforts were unsuccessful, and she was declared dead at 10:24 a.m. [ECF #78-1, p. 58].

Robertson worked in the jail in various capacities for 14 years, and knew Norred through her many incarcerations.  But her dealings with her during this incarceration were limited because she refused mental health treatment, which was her right [ECF #78-5, pp. 30, ln. 12-25; 31, ln. 1-17; 38, ln 20-25; 39, ln. 1-25; 40, ln. 2].  This included Robertson's attempts to speak to Norred while she was in the restraint chair [ECF #78-5, pp. 40, ln. 17-25; 41, ln. 1- 7; 42, ln 6-14; 44, ln 11-18]. When Robertson released Norred from suicide watch she did not exhibit or state any intention to harm herself, and Robertson believed her when she gave "rational reasons for her behavior."  Based on that belief and employing her professional judgment, she determined that Norred could be safely released from suicide watch.  Had she thought differently, "there was no obstacle to carrying out that decision. She would have remained on suicide watch" [ECF ##78-2, ¶¶4-5; 78-5, p. 54, ln 11-17].

**Argument**

**1. Attorney's Personal Opinions**

Frederick begins by seeking an order preventing the undersigned from injecting personal opinions at trial. During the prefiling conference, the undersigned made clear that he is not in the habit of violating basic rules that

invariably result in immediate mistrial, accumulating sanctions or withdrawal of the privilege to practice in this Court.

### 2. Referring to Norred by her middle name

During the prefiling conference, the undersigned made clear that he does not oppose this allowance.

### 3. Comparative Negligence Argument

Frederick seeks to ban any mention of comparative negligence or fault in the presence of the jury. This is an unclear argument. Comparative fault is a jury instruction issue, but this argument and others later in the Motion seem to indicate Frederick wants more: she wants to preclude any evidence that Norred played a hand in her suicide.

Evidence of causation is still required in a prisoner suicide case. That means proof a constitutional violation was the proximate cause of the suicide. In this instance, the claim is Robertson violated Norred's constitutional rights by failing to prevent her suicide. Mental health experts recognize that suicide is a volitional act done free of serious mental illness, and Frederick claims the lack of mental health care played a large part in the suicide. After all, she did sue a mental health counselor. However, the fact is that Norred often refused to meet with mental health professionals and, when she agreed, refused to participate in treatment. It's also unquestionable that Norred told Robertson and a nurse that she was not

suicidal shortly before committing suicide. That she played a hand in her own demise is certainly evidence to be considered by the jury.

### 4. Impermissible Character Evidence

Frederick seeks to exclude evidence of disciplinary reports, which are a type of charging documents for jail rule violations. During the prefiling conference, the undersigned informed Frederick's lawyers that she didn't have any disciplinary reports while in the jail. The issue is nonexistent.

### 5. Evidence Regarding Refusal or Access to Treatment

Frederick seeks to exclude evidence that Norred refused mental health treatment because it "would confuse the jury" [ECF #137, pp. 8-9]. She does not explain from where or what the confusion will arise. Again, this goes to the core of the case and the entire basis for Frederick's claim.

But there's more: Frederick wants to exclude evidence of Norred's denials of suicidal intentions, which are in the form of both medical records and witness testimony, claiming they are hearsay. They are not; they're statements by a party, which are not hearsay, and are therefore admissible. Fed. R. Evid. 801(d)(2). They are also admissible under Rule 803(3), which allows the admission of "… [a] statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health)…."

But even if the statements are hearsay, Frederick's argument that they aren't admissible through Rule 803(4) is incorrect. She relies entirely on *U.S. v. Cain*, 603 Fed. Appx. 840 (11th Cir. 2015). In that unreported case, a criminal defendant sought to introduce testimony supporting an insanity defense from a clinical social worker in the Broward County jail. The district court excluded the evidence, but the 11th Circuit never addressed the issue—it merely recognized it had not been previously addressed. Instead, it found other evidence from practitioners retained to examine the defendant made the issue moot. *Id.* at 843-44.

However, the Cain court did recognize that "at least two circuits have resolved this issue in favor of allowing statements made to social workers for treatment purposes to count as an exception to the hearsay rule pursuant to Rule 803(4). See *United States v. Kappell*, 418 F.3d 550, 557 (6th Cir. 2005); *Davignon v. Clemmey*, 322 F.3d 1, 8 n.3 (1st Cir. 2003)." See also *United States v. Gonzalez*, 905 F.3d 165, 200 (3d Cir. 2018)(collecting cases from several circuits, and noting that the "decisions of our sister Courts of Appeals support this conclusion, as every Court of Appeals to consider this issue has determined that statements made to a mental health professional for purposes of diagnosis or treatment qualify under the hearsay exception in Rule 803(4)").

### 6. Testimony from Frederick regarding Norred's refusal to accept mental health treatment in the jail

Frederick next seeks to preclude questioning regarding this issue because it's

"speculative." It is, but not in the way she thinks: it's speculative to make this argument because the issue has not been breached. Frederick was Norred's mother, and they lived together well into her adulthood. Frederick encouraged Norred to seek mental health treatment in the jail, which she did not do. With the proper predicate the line of questioning could also be entirely proper.

### 7. Comments regarding uncalled witnesses

Again, Robertson has no intention to violate what could be black-letter law, but it is too early to address a blanket exclusion, as depending on how Frederick presents her case, the issue could become relevant. This is a trial issue, and the undersigned will not raise the issue at trial before consulting the Court.

### 8. Cell Defecation

This was addressed at the prefiling conference: Robertson does not intend to show feces to the jury. But the decision may change with Frederick's presentation. It's another trial issue and the undersigned will not raise the issue at trial before consulting the Court.

### 9. Norred's charges and convictions

As discussed in the prefiling conference, Robertson knows of no qualifying convictions making this admissible.

### 10. Conviction evidence of other witnesses

Frederick seeks to exclude impeachment evidence through criminal history.

Case 4:19-cv-00162-MW-MAF   Document 141   Filed 09/08/22   Page 9 of 13

As discussed in the prefiling conference, it's impossible to address this issue without knowing the identity of the witnesses and obtaining criminal histories. That didn't happen.

### 11. Evidence linking Norred's crime to her mental health

This argument is exceedingly unclear. The best that can be made is Frederick seeks to exclude testimony regarding her behavior in the jail and action taken by jail employees with regard to that behavior—actions taken in an attempt to keep her and other inmates safe. It's a curious argument. Frederick claims Norred committed suicide because of mental illness. Her behavior in the jail is essential to that claim. Every employee in the jail is trained to recognize some signs of mental illness and how those signs should be addressed. They are certainly allowed to testify to their own observations.

### 12. Evidence regarding Corizon's contract with the Sheriff, which disallows inpatient mental health referrals

This is another curious argument. Frederick seeks an allowance to introduce the contract because it represents the level of care available in the jail. It's a simple evidentiary issue, and the undersigned can conjure no reason, at prefiling or now, for it to be included in a motion in limine. However, the reason Norred could not be sent to an inpatient mental health facility, such as a state hospital, is clear: she was in custody. Robertson had no authority to send her to the state hospital. That authority rested solely with the criminal court.

The Toomey Law Firm LLC • The Old Robb & Stucky Building, Suite 203 • 1625 Hendry Street • Fort Myers, Florida 33901

9

**13. Settlement Evidence**

Frederick seeks to disallow evidence of the Sheriff's settlement. Again, the undersigned has no wish to create an immediate mistrial, be sanctioned or disallowed from practicing in this Court. The same was said during the prefiling conference.

**14. Evidence of past alcohol and drug use**

Frederick seeks to exclude evidence of Norred's previous alcohol and drug use because it is irrelevant. Of course, she provides no specific pieces of evidence to which she objects, so it makes a response very difficult.

The undersigned finds no meaningful arrests for alcohol or drug activities. The medical records include reference to recreational and social marijuana and alcohol use. How that information would "confuse the issues" is unknown, as Frederick makes no specific argument. However, there is no question that alcohol and drug abuse can be associated with mental illness. This is a trial issue.

**15. Norred's statements as reflected in medical and other records**

This is yet another curious argument. Frederick acknowledges the records are admissible as business records, but only those statements helpful to her cause should be admitted. As previously shown, the records are not hearsay or are clearly subject to exception. Notably, experts for trial reviewed and relied on the records in forming their opinions, as they are the only evidence of Norred's condition

during her time in the jail. Norred's conduct in the jail, and all of it, is certainly relevant. Finally, Frederick points to no specific entries subject to exclusion. *See United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010)(recognizing that motions in limine should identify specific inadmissible evidence).

**16. Allowing evidence of Robertson's bankruptcy**

The final salvo is also the most strikingly wrong. Frederick seeks to introduce evidence that Robertson will not be personally responsible for a verdict because that was extinguished in bankruptcy and wants to introduce evidence the claim is insured. She cites a few cases for the prospect that insurance coverage can be admissible where a defendant claims the potential for ruination from a punitive damage award. However, that is not the present case: Robertson can't be responsible because her responsibility was discharged. She simply can't be ruined because she can't be responsible to pay any verdict.

Of course, there's more. Robertson filed a Suggestion of Bankruptcy on May 5, 2021 and the Court stayed this case the same day [ECF ##120, 121]. The bankruptcy court issued an order allowing this case to proceed on September 17, 2021, limiting Frederick's recovery to insurance proceeds, only [ECF #123]. Frederick filed a claim in the bankruptcy court for $950,000, which was a fantasy number representing the supposed value of the case. Robertson's bankruptcy

attorney originally objected to the claim, but later withdrew the objection, and the bankruptcy trustee decided to pay Frederick $4,706.87 from the bankruptcy estate [ECF #134, p. 2].

Frederick's ability to recover a potential verdict is limited to insurance proceeds, but there's a fly in her ointment: <u>the insurance company won't pay any damages in this case</u>. There is an insurance policy, and it was provided to Frederick's lawyers three years ago. It provides $4 million in coverage and is limited to occurrences in the 2017 calendar year. It also has a $18.5 million overall deductible that must be exhausted before the coverage is available, that deductible is only reduced by settlements and verdicts, not fees and costs, and is limited to $2 million, per-case. There is also a $1 million per-case deductible.

The status of this policy has been discussed with Frederick's lawyers several times over more than a year, including last week. Since it is an occurrence policy limited to 2017, all potential cases are known and the various statutes of limitations on potential cases have expired. The overall deductible has $13.5 million remaining and there is zero chance it will be exhausted.

The bottom line is that Fredrick is limited to collecting on an insurance policy that has no chance of covering a verdict, compensatory or punitive. Telling the jury otherwise would be grossly improper.

The motion should be denied.

The Toomey Law Firm LLC • The Old Robb & Stucky Building, Suite 203 • 1625 Hendry Street • Fort Myers, Florida 33901

12

By:    /s/ Gregg A. Toomey
       Gregg A. Toomey
       Florida Bar No. 159689

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of September, 2022 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send a copy of the foregoing electronically to the following:

James V. Cook
James V. Cook, PA
*Attorneys for Plaintiff*
314 W. Jefferson Street
PO Box 10021 [32302]
Tallahassee, FL 32301-1608
P: 850-222-8080
F: 850-561-0836
E: cookjv@gmail.com

James M. Slater
Slater Legal PLLC
*Attorneys for Plaintiff*
113 S. Monroe Street
Tallahassee, FL 32301
P: 305-523-9023
E: james@slater.legal
eservice@slaterlegal.com

THE TOOMEY LAW FIRM LLC
*Attorneys for Defendant Robertson*
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL  33901
Phone:  239.337.1630
Fax:  239-337.0307
Email:  gat@thetoomeylawfirm.com, alr@thetoomeylawfirm.com, and hms@thetoomeylawfirm.com

By:    /s/ Gregg A. Toomey
       Gregg A. Toomey
       Florida Bar No. 159689