UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ELIZABETH FREDERICK,

    Plaintiff,

v.

MISTY ROBERTSON,

    Defendant.

Case No. 4:19-cv-162-MW-MAF

**PLAINTIFF'S AMENDED[1] MOTION TO JOIN CORIZON HEALTH, INC., LONE STAR ALLIANCE, INC., AND SCOTTSDALE INSURANCE COMPANY AS PARTY-DEFENDANTS FOR PURPOSES OF FINAL JUDGMENT**

Plaintiff Elizabeth Frederick, by and through her counsel, and pursuant to Rule 21, respectfully moves the Court to join Corizon Health, Inc., Lone Star Alliance, Inc., and Scottsdale Insurance Company as a party-defendants for purposes of including it on any final judgment in favor of Plaintiff in this case. Because Corizon obligated itself to self-administer and pay out all damages, attorney's fees, and

---

[1] Plaintiff is filing an amended motion to include all applicable liability insurers and clarify Plaintiff's understanding of the extent of liability for Corizon under the Lone Star Policy.

costs at issue in this case up to the aggregate self-insured retention (SIR) amount under its insurance policy, it should be added on any final judgment in favor of Plaintiff. Further, Lone Star and Scottsdale should be added to any final judgment as liability insurers because Lone Star would be liable for any verdict in excess of the aggregate SIR and Scottsdale is liable for a verdict in excess of the per-claim SIR and per-claim limit of insurance, or $2,000,000, through the $10,000,000 limit of that umbrella policy.

I.   BACKGROUND

Plaintiff is set to try her case against Defendant Misty Robertson—a former non-physician employee of Corizon—for her deliberate indifference to Plaintiff's daughter's substantial risk of self-harm under the Fourteenth Amendment.

Around a year ago, Robertson filed for bankruptcy. [D.E. 120, 121]. Plaintiff obtained relief from the bankruptcy court to seek an adjudication of her claims against Robertson to collect any insurance proceeds. [D.E. 123]. Defendant's counsel takes the position that

insurance coverage is unavailable in this case because a "deductible"[2] has not been met and therefore Plaintiff cannot recover any additional sums apart from the paltry proceeds from the bankruptcy estate. [D.E. 141 at 11–12].

But defense counsel is wrong. As explained below, although Plaintiff may not be able to recover from Lone Star until the SIR aggregate is satisfied, Corizon agreed with Lone Star that it would pay non-physician employee SIR amounts. Because Corizon undertook this obligation instead of Robertson, it should be included on any final judgment in Plaintiff's favor. Further, Lone Star and Scottsdale should be included because (1) it is possible that a verdict would exceed the SIR aggregate, shifting liability to Lone Star, and (2) any verdict in excess of the SIR per-claim amount of $1,000,000 would implicate coverage under the Scottsdale umbrella policy.

## II.  ARGUMENT

---

[2] The policy has a self-insured retention, which is similar to a deductible, but not the same. Pertinent here, an SIR obviates the insurer's requirement to provide coverage until the SIR is paid, which is not the case with a deductible. *Summit Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 76 F. Supp. 3d 1381, 1384 (M.D. Fla. 2015) (citing *State Nat'l Ins. Co. v. Lamberti*, 362 Fed.Appx. 76, 78 (11th Cir. 2010)).

### A. There is Coverage under the Lone Star Policy

The Professional Liability Insurance Policy (Policy No. 4-100159) issued by Lone Star Alliance, Inc. to Valitas Health Services, Inc. (the "LS Policy") for the policy period of January 1, 2017 through January 1, 2018, is the operative underlying policy in place for this claim. *See* Policy, attached as **Exhibit 1** hereto. Defendant does not dispute this. Under its terms, endorsements, and an indemnity agreement between Lone Star and Corizon, Corizon has agreed to pay all damages for covered claims through satisfaction of an $18,500,000 SIR aggregate.

Specifically, Robertson was employed as a mental health counselor by Corizon between January 1, 2017 and January 1, 2018, when the LS Policy was in effect. The events that gave rise to Plaintiff's cause of action against Robertson occurred during that coverage period, in July 2017. [*See, generally*, D.E. 24]. The claim at issue in this case—a civil rights claim for deliberate indifference—is covered. Ex. 1 at 15, 32, 42.

Under the Policy, Robertson is an "Insured" per section II(F) of the Medical Professional Liability Insurance Policy Occurrence as a non-physician "employee" for her acts within the scope of her employment. *Id.* at 39. (Corizon is a named additional insured; its parent Valitas

4

Health Services is the first named insured.) *See id.* at 1, 47. Defendant does not appear to dispute that the claim would be covered under the LS Policy as an act of an employee; Defendant's counsel disputes the availability of funds due to the SIR. [D.E. 141].

The LS Policy only obligates Lone Star to reimburse the First Named Insured (Valitas) those sums in excess of the SIR aggregate set forth in the LS Policy's declarations page that an Insured becomes legally obligated to pay others as damages resulting from a medical incident arising out of professional services.  Ex. 1 at 11. Per the LS Policy's declarations and endorsement, Lone Star's coverage for damages arising out of a medical incident is subject to a $1,000,000 All Other Non-Physician Insureds Combined SIR. *Id.* at 1.  The policy makes Valitas "solely responsible" for satisfying the "All Other Non-Physician Insured" SIR, *see id.* at 11—meaning that Robertson, as an Insured, was not required to pay the SIR or other damages for a covered claim. *Id.* Nevertheless, she filed for bankruptcy—which would preclude her at this point from having to pay any SIR amount anyway.

However, the LS Policy is also subject to a Self-Administration of Claim and Indemnity Agreement entered into between Corizon and

5

Lone Star. *Id.* at 24–29. Pursuant to this agreement, Corizon has agreed to perform all Claim Administration Services, including payment of all claims that involve actual loss until the SIR aggregate is exhausted. *Id.* at 25 (at Article II(C)(1)). Although Valitas agreed to pay its non-physician employees' SIR (like Robertson's), its subsidiary, Corizon, appears to have ultimately agreed to cover those damages instead.

The plain meaning of the LS Policy then, when considering its endorsements and the indemnity agreement, necessitates a finding that Corizon must pay all damages, fees, and costs, for covered claims until the SIR aggregate of $18,500,000 is exhausted. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1304 (11th Cir. 2008) (insurance contracts construed according to "plain meaning"); *see al Sec. Nat'l Ins. Co. v. Gladstone Law Grp., P.A.*, 554 F. Supp. 3d 1265, 1272 (S.D. Fla. 2021) (discussing construction of insurance contracts); *S. Cent. Educ. Risk Mgmt. Program v. Star Ins. Co.*, 2:17-CV-14113, 2018 WL 11353289, at *9 (S.D. Fla. Dec. 18, 2018) (citing *State Nat'l Ins. Co. v. Lamberti*, 362 F. App'x 76, 78 n.2 (11th Cir. 2010) ("the insurer is not liable until the insured has paid the whole of its SIR").

Accordingly, Corizon should be liable for any judgment in favor of Plaintiff in this case up to the per-claim SIR amount of $1,000,000; if the remaining SIR aggregate (which Corizon claims is $13,500,000 [*see* D.E. 141 at 12]) is exhausted, Corizon can freely seek reimbursement from Lone Star and its excess carrier Scottsdale.[3] *See* Ex. 1 at 24, 38. In the event of a judgment in excess of the remainder of the SIR aggregate—whatever that amount might be[4]—Lone Star would be

---

[3] Corizon also agreed to maintain *at least* $1,000,000 of insurance per occurrence covering its employees, including Robertson, under its Health Services Agreement with the Leon County Sheriff. *See* Health Services Agreement at Art. 10.1, attached as **Exhibit 2**. Defense counsel's position that Corizon and its insurers have no liability to pay a judgment in this case would appear to violate its agreement with the county jail—that is by claiming Robertson's constitutional violation can only be compensable if millions of dollars in other claims are satisfied first. The point of such insurance, however, is to make sure that wrongs could be righted when private parties step into the traditional role of government. Corizon can't have it both ways. It elected to use a type of fronting policy and shift risk to itself, so it must pay any damages for a covered claim. A contrary position would be an admission that it never intended to comply with the terms and conditions of the county jail's health services agreement.

[4] Defense counsel's representation in Defendant's response to Plaintiff's omnibus motion in limine [D.E. 141], may not reflect whether other payments by third parties have satisfied more of the SIR in other claims. While the LS Policy requires that the First Named Insured (Valitas) satisfy the SIR, the Florida Supreme Court has held that in policies with similar self-insured retention language, "the insured in this case can use the payments to it from a third party to satisfy the self-insured retention provision." *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 495 (Fla. 2014). The Florida Supreme Court reasoned that the policy in question did not expressly

7

required to cover $1,000,000 of damages under its per-claim medical incident amount.

## B. There is Coverage Under the Scottsdale Policy

Scottsdale Insurance Company issued a Healthcare Umbrella Insurance Policy to Valitas Health Services, Inc., as the Named Insured, with Corizon LLC and Corizon Health, Inc. as Additional Insureds by endorsement, for the policy period January 1, 2017 to January 1, 2018, with a $10,000,000 policy limit (the "Scottsdale Policy"). *See* Scottsdale Policy No. HPS0000036, attached as **Exhibit 3**.

Per the Scottsdale Policy, Scottsdale agreed to pay the "ultimate net loss" in excess of "the applicable underlying limit" which the insured must pay as a result of a medical incident. *Id.* at 3 (§ I.A.). Like the underlying policy with Lone Star, Robertson is an insured as an employee of Corizon. *Id.* at 17 (§ V.M.4.).

Under Limits of Insurance, the Scottsdale Policy provides:

> B.6. If the Limits of the Underlying Policies stated in Schedule A are reduced or exhausted solely by payment of **damages** to which this Policy applies, such insurance provided by this Policy will apply in excess of the reduced

---

prohibit third parties from paying an insured's self-funded retention rate. *See id.* at 502.

>Limits of Underlying Policies, or if all Limits of Underlying Policies are exhausted, will apply as in place of the **underlying insurance** subject to the terms, conditions, definitions and exclusions of this Policy.

*Id.* at 4 (§ II.B.6.) (emphasis added).

The applicable underlying limit means:

>1. If the policies of underlying insurance apply to the occurrence or medical incident:
>
>    a. The amount of insurance stated in the policies of the underlying insurance in Schedule A or any other available insurance less the amount by which an aggregate limit so stated has been reduced solely due to payment of claims covered hereunder; or
>
>    b. The retained limit, if any, shown in the Declarations, Item 4. as such; or
>
>2. If the policies of underlying insurance do not apply to the occurrence or medical incident and such incident is otherwise covered hereunder, the retained limit.

*Id.* at 15 (§ V.B.). The Scottsdale Policy itself references a per-claim underlying limit of $5,000,000 per Schedule A. *See id.* at 22. However, for the reasons stated below, Plaintiff would contend that Scottsdale is on the hook for any verdict in excess of $2,000,000.

9

Plaintiff argues that Scottsdale is liable for any claims in excess of the per-claim limit of insurance under the Lone Star Policy ($1,000,000 per medical incident) and per-claim SIR amount of $1,000,000—that is Scottsdale is liable for damages in excess of $2,000,000 through the limits of the policy (or up to $10,000,000) because the endorsement in Schedule A renders the policy ambiguous.

Federal courts look to the applicable state-law rules of interpretation for constructing insurance contracts. *Virginia Properties, Inc. v. Home Ins. Co.*, 74 F.3d 1131, 1133 (11th Cir. 1996). Under Florida law, it is well-established that "[a]mbiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured," and that "if the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is considered ambiguous." *Fayad v. Clarendon National Insurance Company*, 899 So. 2d 1082 (Fla. 2005). "It has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer." *Berkshire Life Ins. Co. v. Adelberg*, 698

So. 2d 828, 830 (Fla. 1997). Coverage provisions should be liberally construed, with ambiguities resolved in favor of the insured. "Where policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer. [...] In addition, 'when an insurer fails to define a term in a policy, [...] the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided.'" *State Farm Fire and Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). "[C]ourts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Taurus Holdings Inc. v. U.S. Fidelity and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005); *see also Buckley Towers Condo. Inc. v. QBE Ins. Co.*, 395 Fed. Appx. 659 (11th Cir. 2010) (quoting *Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 573 (Fla. 1st DCA 2010) ("Under Florida's binding law, courts are not free to rewrite the terms of an insurance contract")).

    Here the Scottsdale Policy is ambiguous—it purports to cover claims in excess of the "underlying insurance," in this case the Lone Star Policy, which requires application of the SIR amount and a per-

11

claim limitation of $1,000,000 for medical incidents. But Schedule A states that the underlying insurance amount is $5,000,000—which is not the case here. It is also ambiguous whether the application of actual payment of insurance by Lone Star would be required—as Lone Star is not liable until the SIR aggregate is satisfied. Because insurance policies should be construed in favor of coverage, *see Bankers Life and Cas. Co. v. Vadra*, 563 So. 2d 200, 201 (Fla. 3d DCA 1990) (collecting cases), Plaintiff would argue that Scottsdale's obligation to pay in this case is triggered by a judgment in excess of $2,000,000.

For example, in *Miller v. Safety Mut. Cas. Corp.*, 497 So. 2d 1273, 1274 (Fla. 2d DCA 1986), the excess insurer argued it was relieved from its obligation to provide indemnity because the insured had collected less than the underlying policy limits available, despite a judgement in excess of the limits. The court held that the excess carrier was required to indemnify all amounts above the underlying limits, holding that

> Safety Mutual is bound by the terms of its policy which defined the conditions under which it would be liable. It alone decided the wording of its contract. Safety Mutual agreed to pay claims which exceeded the retained limit, which included the limits of any underlying insurance collectible by the insured. Nowhere does the policy require such underlying

12

>   insurance to actually be collected by the insured before Safety Mutual becomes liable.

*Id.* at 1274.

Here too, Scottsdale should be on the hook to pay damages in the event of judgment in excess of the policy limit and SIR limit, or any sum in excess of $2,000,000.

### C. Corizon, Lone Star, and Scottsdale Should Be Joined as Defendants

Because Corizon agreed to pay damages, fees, and costs for covered claims up to the SIR aggregate (and can seek reimbursement from its insurers for claims in excess of that amount), it should be joined as a defendant for purposes of rendering a final judgment in this case. Lone Star and Scottsdale should also be added to any judgment because they are liable for damages to the extent their obligation to pay is triggered by a finding of damages in excess of the underlying insurance or the remaining balance of the SIR aggregate.

Courts are imbued with the discretion to join additional parties under Rule 21. *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992). On motion or sua sponte, a court may *at any time*, on just terms, add or drop a party. *See* Fed. R. Civ. P. 21; *see also Armour v. Monsanto Co.*,

13

995 F. Supp. 2d 1273, 1283 (N.D. Ala. 2014) aff'd sub nom. *Tolbert v. Monsanto Co.*, No. 13-15621, 2015 WL 5172854 (11th Cir. Sept. 4, 2015) (collecting cases for the proposition that Rule 21 permits joinder at *any time*, including after trial or judgment); *see also Mullaney v. Anderson*, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952) (permitting joinder under Rule 21 on appeal).

Although the Court is not sitting in diversity, Florida substantive law explicitly permits the inclusion of an insurer on a final judgment subject to certain conditions, such as pre-judgment notice by certified mail. § 627.4136(4), Fla. Stat.; *see also Allstate Ins. Co. v. Stanley*, 282 F. Supp. 2d 1342, 1343 (M.D. Fla. 2003). The statute exists to provide efficiency for joining an insurer in an already pending lawsuit, rather than requiring the initiation of a separate lawsuit after judgment to collect insurance proceeds. *See Hazen v. Allstate Ins. Co.*, 952 So.2d 531, 536–37 (Fla. 2d DCA 2007).

Accordingly, the Court should add Lone Star and Scottsdale as party-defendants to be added to any final judgment in this case. The relevant policies include language purporting to prevent the insurers' inclusion on a final judgment, *see* Ex. 1 at 35 (§ 2.F.), Ex. 3 at 13 (§

14

IV.K.), which Florida statute permits under section 627.4136(3), Florida Statutes; however, the requirements of section 627.4136 are not binding on the Court in a section 1983 action, and Rule 21 does not have any such prohibition. *Stanley*, 282 F. Supp. at 1343 (applying the statute in diversity after determining it was substantive).

Further, given that Corizon has agreed to pay claims up to the SIR aggregate, the Court should permit its joinder as a party-defendant. Although Corizon is not a liability insurer like Lone Star and Scottsdale, it has undertaken that role here by determining how and when damages are paid, as well as paying claims under until exhaustion of the SIR aggregate. *See* Ex. 1 at 25 (Art. II(C)(1)). The reality is that Corizon promised the public it would cover these types of claims when it secured its lucrative contract with the county jail at the taxpayer's expense. *See* Ex. 2 Art. 10.1. Its decision to risk payment of a judgment for a covered claim with an SIR should not operate to preclude Plaintiff—or other wronged parties—from recovering for constitutional or other harms committed in the Leon County Jail by Corizon and its staff during the effective period of Corizon's contract with the Leon County Sheriff. Corizon agreed to pay all covered claims

under the Policy up to $18,500,000; it should be included on a judgment in favor of Plaintiff in this case to pay the SIR amount.

Plaintiff will serve a copy of this motion on Corizon Health, Lone Star, and Scottsdale by certified mail.

### III. CONCLUSION

For the foregoing reasons, the Court should join Corizon Health, Inc., Lone Star Alliance, Inc., and Scottsdale Insurance Company as defendants in this case for purposes of including it on a final judgment in Plaintiff's favor in this case.

Dated: September 15, 2022.

                        Respectfully submitted,

                        SLATER LEGAL PLLC

                        */s/ James M. Slater*
                        James M. Slater
                        Florida Bar No. 111779
                        113 S. Monroe Street
                        Tallahassee, Florida 32301
                        james@slater.legal
                        Tel: (305) 523-9023

                            -and-

                                                  LAW OFFICE OF JAMES COOK

                                                  */s/ James V. Cook*
                                                  James V. Cook
                                                  Florida Bar No. 0966843
                                                  314 West Jefferson Street
                                                  Tallahassee, Florida 32301
                                                  cookjv@gmail.com
                                                  Tel: (850) 222-8080
                                                  Fax: (850) 561-0836

                                                  *Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on September 15, 2022, I electronically filed the foregoing document with the Clerk by using the CM/ECF system, which will serve a copy on all counsel of record. A copy will also be sent by certified mail to: (1) Corizon Health, Inc. c/o CT Corporation System, 1200 S. Pine Island Road, Plantation, Florida 33324; (2) Lone Star Alliance, Inc., P.O. Box 160140, Austin, Texas 78716-0140; and (3) Scottsdale Insurance Company, Attn. Claims Manager, 8877 North Gainey Center Drive, Scottsdale, Arizona 85258.

                                          By: */s/ James M. Slater*
                                                   James M. Slater

## Certificate of Good Faith Conference

Pursuant to Local Rule 7.1(B), Plaintiff's counsel has conferred in good faith with counsel for Defendant by telephone on September 14, 2022. Defense counsel objects to the relief requested herein.

By: */s/ James M. Slater*
James M. Slater

## Certification Pursuant to L.R. 7.1(F)

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing document contains fewer than 3,500 words, inclusive of headings but exclusive of the case style, signature block and certificates.

By: */s/ James M. Slater*
James M. Slater