United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 03, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| TEHUM CARE SERVICES, INC.,[1] | Case No. 23-90086 (CML) |
| Debtor. | |

**ORDER CONFIRMING THE FIRST
MODIFIED JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF THE TORT CLAIMANTS' COMMITTEE,
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR**

Tehum Care Services, Inc.*, f/k/a* Corizon Health Services (the "Debtor"), [2] the

above-captioned debtor and debtor in possession, having:

a. commenced, on February 13, 2023 (the "Petition Date"), this chapter 11 case (this "Chapter 11 Case"), by filing a voluntary petition for relief in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court" or this "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");[3] and

b. continued to operate its business and manage its property during this Chapter 11 Case as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Debtor, the Tort Claimants' Committee (the "TCC"), and the Official Committee of Unsecured Creditors (the "UCC," together with the TCC, the "Committees," and collectively with the Debtor, the "Proponents"), as "proponents of the plan" within the meaning of section 1129 of the Bankruptcy Code, whether jointly or singularly, having:

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] Capitalized terms used in this order (the "Confirmation Order") but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan (as defined below), the Disclosure Statement (as defined below), or as the context otherwise requires. The rules of interpretation set forth in Article I.B. of the Plan apply.

[3] In this Order, unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

**EXHIBIT "A"**

c.    filed, on October 2, 2024, the *Joint Motion of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor for Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Claim Holders (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief* [D.I. 1741], seeking, among other things, approval of the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and approval of the Solicitation Procedures (as defined below);

d.    filed, on October 2, 2024, (i) the *Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. 1739], and (ii) the *Disclosure Statement Regarding Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. 1740] (as may be or have been modified, amended, or supplemented from time to time, the "Disclosure Statement");

e.    filed, on November 4, 2024, the *Debtor's and Official Committee of Unsecured Creditors' Joinder in the Tort Claimants' Committee's Omnibus Reply to Disclosure Statement Objections* [D.I. 1794], pursuant to which the UCC and the Debtor joined in the *Tort Claimants' Committee's Omnibus Reply in Support of the Joint Motion of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor for Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Claim Holders (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief* [D.I. 1793], filed by the TCC on November 4, 2024;

f.    filed, on November 13, 2024, as a proposed order, the *Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Claim Holders (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief* [D.I. 1811];

g.    filed, on November 13, 2024, the *Notice of Changed Pages of the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor and Related Disclosure Statement* [D.I. 1814];

h.    obtained, on November 13, 2024, the entry of the *Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing*

2

*Solicitation Procedures, (III) Approving Form and Manner of Notice to Claim Holders (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief* [D.I. 1813] (the "Solicitation Procedures Order" or the "Disclosure Statement Order"), approving the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and related notices, forms;

i. filed, on November 14, 2024, the solicitation versions of: (i) the Plan and (ii) the Disclosure Statement, as Exhibits A and B, respectively, of the *Notice of Filing of Solicitation Versions of the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor and Related Disclosure Statement* [D.I. 1815];

j. filed, on November 15, 2024, the *Notice of Deadline for Casting Votes to Accept or Reject Proposed Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. 1820];

k. caused the Solicitation Packages,[4] Non-Voting Package,[5] the Contract and Lease Counterparties Package,[6] the Disclosure Statement Order, and the Notice of

---

[4] The Solicitation Package consists of the following materials: (a) either (i) a USB Flash Drive (the "USB") containing the Solicitation Procedures (substantially in the form attached as Exhibit 1 to the Solicitation Procedures Order) and the Disclosure Statement (with all exhibits, including the Plan); or (ii) a paper copy of the Solicitation Procedures and the Disclosure Statement (with all exhibits, including the Plan); (c) *Notice of Hearing to Consider Confirmation of Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (the "Confirmation Hearing Notice") (substantially in the form attached as Exhibit 4-1 to the Solicitation Procedures Order); (d) the Solicitation Procedures Order (without Exhibits); (e) an Opt-Out Release Form for Holders of All Claims (the "Opt-Out Release Form") (substantially in the form attached as Exhibit 2 to the Solicitation Procedures Order); (f) a copy of the appropriate Ballot(s) and voting instructions for the voting class in which the creditor is entitled to vote: (i) Ballot for Holders of Claims in Class 3 (Convenience Class) ("Class 3 Ballot") (substantially in the form attached as Exhibit 3-1 to the Solicitation Procedures Order); (ii) Ballot for Holders of Claims in Class 4 and Class 5 (Channeled General Unsecured Claims and Opt-Out General Unsecured Claims) ("Class 4 and 5 Ballot") (substantially in the form attached as Exhibit 3-2 to the Solicitation Procedures Order); (iii) Ballot for Holders of Claims in Class 6, Class 7, and Class 8 (Channeled PI/WD Claims, Opt-Out PI/WD Claims, and Opt-Out Insured PI/WD Claims) ("Class 6, 7, and 8 Ballot") (substantially in the form attached as Exhibit 3-3 to the Solicitation Procedures Order); and (iv) Ballot for Holders of Claims in Classes 9 and 10 (Channeled Indirect Claims and Opt-Out Indirect Claims) ("Class 9 and 10 Ballot") (substantially in the form attached as Exhibit 3-4 to the Solicitation Procedures Order); (g) if applicable, a letter from the TCC urging such claimants to vote to accept the Plan (the "TCC Letter") (substantially in the form attached as Exhibit 4-5 to the Solicitation Procedures Order); (h) if applicable, a letter from the UCC urging such claimants to vote to accept the Plan (the "UCC Letter") (substantially in the form attached as Exhibit 4-6 to the Solicitation Procedures Order); and (i) a pre-addressed, postage pre-paid return envelope (the "Return Envelope").

[5] The Non-Voting Package consists of the following documents: (a) the Notice of Non-Voting Status (the "Notice of Non-Voting Status") (substantially in the form attached as Exhibit 4-3 to the Disclosure Statement Order); (b) the Opt-Out Release Form; (c) Confirmation Hearing Notice; and (d) a Return Envelope.

[6] The Contract and Lease Counterparties Package consists of the following document the Notice of Contract and Lease Counterparties (the "Contract Lease Notice") (substantially in the form attached as Exhibit 4-4 to the

Hearing to Consider Confirmation of Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor (the "Confirmation Hearing Notice") (which, among other things, notified parties of the deadline for objecting to Confirmation of the Plan) to be distributed in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Bankruptcy Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Certificate of Service* dated December 3, 2024 [D.I. 1852]; the *Supplemental Certificate of Service* dated December 16, 2024 [D.I. 1867]; the *Supplemental Certificate of Service* dated December 16, 2024 [D.I. 1868]; the *Supplemental Certificate of Service* dated January 14, 2025 [D.I. 1926]; and the *Supplemental Certificate of Service* dated February 11, 2025 [D.I. 1958] (collectively, the "Certificates of Service");

l.      caused *Notice of Deadline for Casting Votes to Accept or Reject Proposed Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors* to be published in the December 2024 issue of the *Prison Legal News*, as evidenced by the *Certification of Publication of the Notice of the Deadline for Casting Votes to Accept or Reject Proposed Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor in the Prison Legal News* [D.I. 1863] (the "Certificate of Publication");

m.      filed, on February 25, 2025, the *Declaration of Darlene S. Calderon Regarding the Solicitation and Tabulation of Votes on the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor under Chapter 11 of the Bankruptcy Code* [D.I. 1993] (the "Voting Report");

n.      filed, on February 27, 2025, the *Declaration of David Barton in Support of Confirmation of the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. 2003] (the "UCC Confirmation Declaration");

o.      filed, on February 27, 2025, the *Declaration of Russell A. Perry in Support of the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, And Debtor* [D.I. 2004] (the "Debtor Confirmation Declaration");

p.      filed, on February 27, 2025, the *Declaration of Nathan Alvarez in Support of Confirmation of the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. 2005] (the "TCC Confirmation Declaration" and, collectively with the UCC Confirmation

---

Lease Counterparties (the "Contract Lease Notice") (substantially in the form attached as Exhibit 4-4 to the Disclosure Statement Order).

Declaration and the Debtor Confirmation Declaration, the "Confirmation Declarations");

q. filed, on February 28, 2025, the *First Modified Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. 2010-1] (as may be or have been modified, amended, or supplemented from time to time, the "Plan");

This Court having:

a. entered the Disclosure Statement Order;

b. set February 21, 2025, at 5:00 p.m. (prevailing Central Time), as the deadline for filing objections to confirmation of the Plan;

c. set February 21, 2025, at 5:00 p.m. (prevailing Central Time), as the deadline for voting on the Plan;

d. set March 3, 2025, at 10:00 a.m. (prevailing Central Time) as the date and time for a hearing on the confirmation of the Plan (the "Confirmation Hearing"), pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e. reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Declarations, the Voting Report, the Confirmation Hearing Notice, the Certificates of Service, the Certificate of Publication, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of this Chapter 11 Case;

f. held the Confirmation Hearing;

g. heard and considered the statements and arguments made by counsel, including counsel for each of the Proponents, the Office of the United States Trustee ("U.S. Trustee"), and other parties in interest, in respect of Confirmation;

h. considered all testimony presented and evidence admitted at the Confirmation Hearing, as applicable;

i. overruled any and all objections to the Plan and Confirmation, including: (i) the *Limited Objection of Chapman Law Group to Confirmation of Plan* [D.I. 1985]; (ii) the *United States Trustee's Limited Objection to the Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. 1979]; (iii) the *Tennessee Department of Revenue's Objection to Confirmation of the Chapter 11 Plan* [D.I. 1978]; (iv) the *BR 3018 Objection by Anant Kumar Tripati for Lack of Consent Under Purdue; Motion to Strike; Offer of Proof; Declaration* [D.I. 1862]; (v) the *Motion to Strike Disclosure Statement, etc. Approved November 13, 2024* [D.I. 1860]; (vi) the *Objection to the Chapter*

*11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. 1836]; and (vii) all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

j. taken judicial notice of all papers and pleadings and other documents filed, all orders entered, and all evidence and arguments presented in this Chapter 11 Case.

**NOW**, **THEREFORE**, having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation and other evidence presented at the Confirmation Hearing and the record of this Chapter 11 Case establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law, and orders as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Finding of Fact and Conclusions of Law

1. The findings and conclusions set forth (i) herein, (ii) in the record of the hearing to approve the Disclosure Statement, and (iii) in the record of the Confirmation Hearing constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014(c) of the Bankruptcy Rules. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.      Jurisdiction and Venue**

2.      This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. § 1334.  Venue in this Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during this Chapter 11 Case.  Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L).  This Court may enter a final order confirming the Plan consistent with Article III of the United States Constitution.

**C.      Burden of Proof**

3.      The Proponents have met their burden of proving that the Plan complies with each element of section 1129(a) and, to the extent applicable, section 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

**D.      Notice of the Confirmation Hearing**

4.      Notice of the Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

**E.      Judicial Notice**

5.      The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the Chapter 11 Case.

**F.      Plan Supplement**

6.      The Plan Supplement complies, and is consistent with, the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order,

and the facts and circumstances of this Chapter 11 Case. No other or further notice was or is required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Proponents reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules; *provided* that, no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the terms of the Plan.

**G. Solicitation**

7. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations. The Disclosure Statement, the Plan, the Confirmation Hearing Notice, the Opt-Out Release Form, the Ballots, and other materials constituting the solicitation materials approved by the Court in the Disclosure Statement Order, were transmitted to and served on all Holders of Claims in the Voting Classes, and the solicitation materials (not including Ballots) were also provided to the other key parties in interest in this Chapter 11 Case, in compliance with section 1125 of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

8. The Confirmation Hearing Notice, the Opt-Out Release Form, and Notice of Non-Voting Status were provided to Holders or potential Holders of Claims or Interests in Non-Voting Classes. Such transmittal and service were adequate and sufficient, and no other or further notice was or is required. All procedures used to distribute the solicitation materials and other notices and documents described in the Solicitation Order were conducted in accordance

with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

9.      Each of the Proponents have acted fairly, in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent and in compliance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in connection with all their respective activities relating to solicitation and confirmation of the Plan.

10.     The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of this Chapter 11 Case and complies with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Disclosure Statement Order, and applicable non-bankruptcy law.  Based on the record before the Court, including the Voting Report, the Certificate of Solicitation, and the Certificate of Publication, the Proponents have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and not by any means forbidden by law.

### H.      Voting Report

11.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Disclosure Statement, the Disclosure Statement Order, and any applicable law, rule, or regulation.  As evidenced by the Voting Report, Classes 3, 4, 5, 6, 7, 8, 9, and 10 have voted to accept the Plan.

**I.     Bankruptcy Rule 3016**

12.     The Plan is dated and identifies the Proponents as submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Proponents appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**J.     Modification of the Plan**

13.     The modifications made to the Plan since the commencement of solicitation of votes thereon, including any modifications set forth herein (collectively, the "Plan Modifications"), do not individually or in the aggregate materially or adversely affect or change the treatment of any Claim against or Interest in any Debtor.  Accordingly, pursuant to Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code.  All references to the Plan in this Confirmation Order shall be to the Plan as modified.

**K.     Section 1129(a)(1)—Compliance of the Plan**
**with Applicable Provisions of the Bankruptcy Code**

**1.     Sections 1122 and 1123(a)(1)—Proper Classification**

14.     The classification of Claims and Interests under the Plan is proper and satisfies the requirements of the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the classification of Claims and Interests into eleven (11) classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and which have not been classified in accordance with section 1123(a)(1) of the Bankruptcy Code).

15. Valid factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not created for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

## 2. Section 1123(a)(1)–(4)—Compliance

16. In accordance with section 1123(a) of the Bankruptcy Code, this Court finds and concludes that the Plan: (a) designates Classes of Claims and Interests, other than Claims of a kind specified in sections 507(a)(2) and 507(a)(8) of the Bankruptcy Code; (b) specifies Classes of Claims and Interests that are not Impaired under the Plan; (c) specifies the treatment of Classes of Claims and Interests that are Impaired under the Plan; (d) provides the same treatment for each Claim or Interest of a particular Class, unless the Holder of a particular Claim or Interest agrees to less favorable treatment of such Claim or Interest; and (e) contains procedures for resolving certain contingent, unliquidated, and disputed Claims and Interests. Therefore, the Plan satisfies the requirements of section 1123(a)(1)–(4) of the Bankruptcy Code.

## 3. Section 1123(a)(5)—Means of Implementation

17. Articles IV–VIII as well as various other provisions of the Plan, provide adequate and proper means for the Plan's implementation. Those provisions relate to, among other things: (a) the sources of consideration for Plan distributions; (b) the Estate Party Settlement; (c) the settlement of Claims, Interests and controversies; (e) the creation, management, and authority of the Trusts; (e) the cancellation of Interests in the Debtor; (e) the payment of certain fees and expenses; (f) the authority to undertake actions necessary to effectuate the Plan and the Trust

Agreements; (g) the rejection, assumption, or assumption and assignment of Executory Contracts and Unexpired Leases; (h) the establishment of certain escrows and reserves to secure the payment of certain claims. The Plan complies with section 1123(a)(5) of the Bankruptcy Code.

**4.      Section 1123(a)(5) & (a)(7)—
Post-Effective Date Debtor, Trusts, Officers & Directors**

18.      The Proponents have disclosed the identity and material terms of engagement for the Trustees in the Plan Supplement.  The Trust Agreements and the terms thereof are hereby approved. The Debtor, Plan Proponents, and the Trustees, as appropriate, are each authorized to enter into and perform under the Trust Agreements, as set forth in Articles IV.D and IV.E of the Plan and elsewhere in the Plan.

*i.      Trustees*

19.      In accordance with the Plan and the Trust Documents, the TCC, in consultation with the UCC and the Debtor, has selected Michael Zimmerman to serve as the PI/WD Trustee. On the Effective Date, Michael Zimmerman, without the need for further action or approval, shall be appointed as the PI/WD Trustee pursuant to the terms of an agreement filed with the Bankruptcy Court.  In accordance with the Plan and the Trust Documents, the Proponents have selected Matthew Dundon to serve as the GUC Trustee.  On the Effective Date, Matthew Dundon, without the need for further action or approval, shall be appointed as the GUC Trustee pursuant to the terms of an agreement filed with the Bankruptcy Court.

*ii.      PI/WD Trust*

20.      The PI/WD Trust shall be established to administer, process, settle, resolve, liquidate, satisfy, and pay all Allowed Channeled PI/WD Trust Claims.  All Channeled PI/WD Trust Claims shall be subject to the Channeling Injunction.  The PI/WD Trust shall be funded

with the PI/WD Trust Assets.  PI/WD Claims and Indirect PI/WD Claims that are not channeled to the PI/WD Trust shall be treated in a manner consistent with Article III of the Plan.

21.     The PI/WD Trust is intended to qualify as a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and, to the extent permitted under applicable law, for state and local income tax purposes.  All PI/WD Trust Assets contributed to the PI/WD Trust under the Plan shall be deemed to be contributed by the Debtor's Estate.

22.     On the Effective Date or as otherwise provided herein, and without further action of any Person, the PI/WD Trust shall assume the liabilities, obligations, and responsibilities of the Debtor for all Channeled PI/WD Trust Claims as set forth in the Plan.

23.     The PI/WD Trust shall have control over the Retained PI/WD Trust Causes of Action and the PI/WD Insurance Actions, and the PI/WD Trust shall thereby be the estate representative pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code with the right to enforce each of the Retained PI/WD Trust Causes of Action and the PI/WD Insurance Actions, and the proceeds of the recoveries on any of the Retained PI/WD Trust Causes of Action or the PI/WD Insurance Actions shall be deposited in and become the property of the PI/WD Trust, and the PI/WD Trust shall have the right to enforce the Plan and any of the other Plan Documents according to their respective terms, including the right to receive the PI/WD Trust Assets as provided in the Plan.  The PI/WD Trust shall have the ability and authority to dispose of the PI/WD Trust Assets and use the proceeds thereof to make distributions to the holders of Channeled PI/WD Trust Claims in accordance with the PI/WD Trust Documents.

24.     In addition to all powers enumerated in the PI/WD Trust Agreement, in the Plan, and in this Confirmation Order, from and after the Effective Date, the PI/WD Trust shall succeed to all the rights and standing of the Debtor and its Estate with respect to the Retained PI/WD Trust Causes of Action.  The PI/WD Trust will have the exclusive authority and power to: among other things, (a) administer, object to, and settle Channeled PI/WD Trust Claims; (b) dispose of PI/WD Trust Assets, (c) make distributions to Holders of Allowed Channeled PI/WD Trust Claims in accordance with the Plan and the PI/WD Trust Agreement, including the PI/WD Trust Distribution Procedures; and (d) carry out the provisions of the Plan relating to the PI/WD Trust and the Channeled PI/WD Trust Claims, including commencing, prosecuting, and settling all Retained PI/WD Trust Causes of Action for the benefit holders of Channeled PI/WD Trust Claims.  The PI/WD Trust shall succeed to all of the rights and powers of the Debtor and its Estate with respect to all Retained PI/WD Trust Causes of Action, and the PI/WD Trust shall be substituted and will replace the Debtor, its Estate, any official committee appointed in the Chapter 11 Case, in all such Retained PI/WD Trust Causes of Action, whether or not such claims are pending in filed litigation.

25.     There shall be a Trust Advisory Committee for the PI/WD Trust (the "PI/WD TAC").  The PI/WD TAC shall consist of three (3) members.  The initial members of the PI/WD TAC are:  Aanda Slocum, Elizabeth Frederick, and Henry Snook.  Each of the member of the PI/WD TAC shall serve in accordance with the terms of the PI/WD Trust Agreement.

26.     On the Effective Date, the PI/WD Trust Distribution Procedures shall become effective, and the PI/WD Trustee shall implement the PI/WD Trust Distribution Procedures in accordance with the terms of the PI/WD Trust Documents to reach fair, reasonable, and equitable settlements between the Holder of each Allowed Channeled PI/WD Trust Claim and the PI/WD

14

Trust. From and after the Effective Date, the PI/WD Trustee shall have the authority to administer, amend, supplement, or modify the PI/WD Trust Distribution Procedures solely in accordance with the terms thereof and the PI/WD Trust Documents and the Plan.

27. After the Effective Date, pursuant to section 1124(b) of the Bankruptcy Code, the PI/WD Trustee shall be the "administrator" of the PI/WD Trust as such term is used in Treasury Regulation Section 1.468B-2(k)(3) and shall be responsible for filing all tax returns of the PI/WD Trust. The PI/WD Trust shall be responsible for the payment of any taxes imposed on the PI/WD Trust or the PI/WD Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the PI/WD Trust Agreement. The PI/WD Trustee may request an expedited determination of taxes on the PI/WD Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the PI/WD Trust for all taxable periods through the dissolution of the PI/WD Trust.

### iii. *Post-Effective Date Debtor and GUC Trust*

28. On the Effective Date, the GUC Trust will be formed pursuant to the GUC Trust Agreement to receive and liquidate the GUC Trust Assets and wind down the Debtor's Estate. In addition, the GUC Trust shall serve as a successor to the Debtor pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code to: (a) administer the terms of the Plan (other than as the Plan relates to PI/WD Claims and Indirect PI/WD Claims), including making payments in accordance with Articles II and III to all Holders of Claims other than PI/WD Claims and Indirect PI/WD Claims; (b) make distributions pursuant to the GUC Trust Agreement; (c) assert any Cause of Action on behalf of the Debtor that constitutes a GUC Trust Asset; and (d) take such other action as may be authorized by the GUC Trust Agreement,

including objecting to any and all Claims other than Professional Fee Claims, PI/WD Claims and Indirect PI/WD Claims.

29. Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, GUC Trust Assets shall automatically vest in the GUC Trust free and clear of all Liens, Claims, interests, charges, or other Encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the GUC Trustee may use, acquire, or dispose of the GUC Trust Assets and compromise or settle any Channeled GUC Trust Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the GUC Trust Agreement.

30. Upon the transfer of the GUC Trust Assets, as more fully set forth in the GUC Trust Agreement, the Debtor will have no reversionary or further interest in or with respect to the GUC Trust Assets. For U.S. federal income tax purposes, the beneficiaries of the GUC Trust will be treated as grantors and owners thereof and it is intended that the GUC Trust be classified as a liquidating trust under Section 301.7701-4 of the regulations issued by the IRS. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the GUC Trust be treated as if they had received an interest in the GUC Trust Assets and then contributed such interests to the GUC Trust.

31. On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtor shall be deemed to have resigned and the GUC Trustee shall be appointed as the sole manager, director, and officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtor's managers, directors, and officers. From and after the Effective Date, the GUC Trustee shall be the sole representative of, and shall act

for, the Post-Effective Date Debtor. The Post-Effective Date Debtor or the GUC Trustee, as applicable, shall be deemed to be substituted in lieu of the Debtor as the proper party in interest in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Post-Effective Date Debtor or the GUC Trustee to file motions or substitutions of parties or counsel in any such matter.

32. There shall be a Trust Advisory Committee for the GUC Trust (the "GUC TAC"). The GUC TAC shall consist of three (3) members. The initial members of the GUC TAC are: David Barton, Denny Hamilton and Stephanie Westermeier. Each of the member of the GUC TAC shall serve in accordance with the terms of the GUC Trust Agreement.

33. The manner of selection of the Trustees and the Trusts is consistent with the interests of creditors and other stakeholders, as well as with public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

*iv.* ***Additional Trust Assets***

34. For the avoidance of doubt, the Trust Assets shall include any interest held by the Debtor in a Claim (as that term is defined in that certain *Assignment of Interest in a Claim*, dated February 27, 2025, as between the Debtor, as assignee, and CHS TX, Inc., as assignor). These additional Trust Assets shall be divided equally between GUC Trust Assets and the PI/WD Trust Assets.

**5. Section 1123(a)(6)—Prohibition Against the Issuance of Nonvoting Securities and Adequate Provisions for Voting Power of Classes of Securities**

35. Section 1123(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Case because the Plan contemplates: (a) the merger or dissolution of the Debtors' corporate

17

existences as soon as practicable after the Effective Date; and (b) no issuance of new securities of the Debtors.

**6.      Section 1123(b)—Discretionary Contents of the Plan**

36.      The Plan contains various provisions that may be construed as discretionary but are not required for confirmation under the Bankruptcy Code.  As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code.  As a result, the requirements of section 1123(b) of the Bankruptcy Code have been satisfied.

*iv.      Section 1123(b)(1)-(2)—Claims and Interests;*
*Executory Contracts and Unexpired Leases*

37.      Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, respectively, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, and Article V of the Plan provides for the assumption or rejection of the Executory Contracts and Unexpired Leases of the Debtor to the extent not previously assumed or rejected pursuant to section 365 of the Bankruptcy Code or otherwise provided under the Plan, and provides appropriate authorizing orders of this Bankruptcy Court.

*ii.      Section 1123(b)(3)—Release, Exculpation, Consensual*
*Claimant Release, Injunction, and Preservation of Claims Provisions*

38.      **Settlement of Claims and Interests**.  In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan (the "Plan Settlements").

39. **Release of Liens**. The release of Liens described in Article IX.B of the Plan is an essential and critical provision of the Plan and formed an integral part of the agreement embodied in the Plan among all parties in interest.

40. **Estate Release**. The release of Claims and Causes of Action by the Debtor and its Estate as set forth in Articles IV.B.9 and IX.C of the Plan is an essential and critical provision of the Plan and forms an integral part of the agreement embodied in the Plan among all parties in interest.

41. The Estate Release, which includes by reference each of the related provisions and definitions contained in the Plan, is: (a) within this Court's jurisdiction pursuant to 28 U.S.C. § 1334; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good faith settlement and compromise of the Claims and Causes of Action released by this specific release; (d) in the best interests of the Debtor and its creditors; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) appropriately tailored under the facts and circumstances of the Chapter 11 Case.

42. All Statute of Limitations for all Claims and Causes of Action against the Released Parties held by the Debtor, the Estate, the PI/WD Trust, the GUC Trust, and Holders of Channeled Claims shall be tolled and extended to the first Business Day that is ninety (90) days after the termination of the Channeling Injunction as provided in Article IV.B.2 of the Plan.

43. **Releases by the Debtor and the Settlement Parties of Holders of Claims in 4, 6, 8, and 9**. The release of Causes of Action by the Released Parties as set forth in Article IX.E of the Plan is an essential and critical provision of the Plan and forms an integral part of the agreement embodied in the Plan among all parties in interest.

44. The Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, is: (a) within this Court's jurisdiction pursuant to 28 U.S.C. § 1334; (b) in exchange for the good and valuable consideration provided by the Holders of Claims in Class 4 (Channeled General Unsecured Claims), Class 6 (Channeled PI/WD Claims), Class 8 (Opt-Out Insured PI/WD Claims), and Class 9 (Channeled Indirect Claims); (c) a good faith settlement and compromise of the Claims and Causes of Action released by this specific release; (d) in the best interests of the Debtor and its creditors; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) appropriately tailored under the facts and circumstances of the Chapter 11 Case.

45. **Consensual Claimant Release**. The release of Claims and Causes of Action by the Consenting Claimants, as set forth in Article IV.B.7 and IX.D of the Plan, constitutes an essential and critical provision of the Plan and forms an integral part of the agreement embodied in the Plan among all parties in interest.

46. The Consensual Claimant Release is: (a) consensual as to the Consenting Claimants, respectively; (b) within this Court's jurisdiction pursuant to 28 U.S.C. § 1334; (c) in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by such release; (e) in the best interests of the Debtor and its creditors; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) appropriately tailored under the facts and circumstances of the Chapter 11 Case.

47. The Consensual Claimant Release and its protections were necessary inducements to the participation of the Debtor's stakeholders in the negotiations and compromises that led to the Plan and the structure thereof, including the Estate Party Settlement.

48. All applicable parties received due and adequate notice of the Consensual Claimant Release and had the opportunity to opt out of the Consensual Claimant Release. Considering, among other things, the value provided by the Released Parties to the Debtor's Estate, the consensual nature of the Consensual Claimant Release, and the critical nature of the Consensual Claimant Release to the Plan, the Consensual Claimant Release is appropriate. Any party who timely opted-out of the Consensual Claimant Release, as identified on **Exhibit A** to this Confirmation Order, are not bound by the Consensual Claimant Release and shall not receive, and shall have no right to receive, a Distribution from the Trusts.

49. Notwithstanding anything to the contrary in the Plan, Disclosure Statement, or this Confirmation Order, nothing in the Plan, Disclosure Statement, or this Confirmation Order shall have any effect: (i) on any claim held by Dimensions Health Corporation d/b/a University of Maryland Capital Region Medical Center, Baltimore Washington Medical Center, Inc. d/b/a University of Maryland Baltimore Washington Medical Center, University of Maryland Medical Center, LLC, Maryland General Hospital, Inc. d/b/a University of Maryland Medical Center Midtown Campus, and Shore Health System, Inc. d/b/a University of Maryland Shore Medical Center at Easton (collectively, the "UMMS Claimants") against YesCare Corp. or its non-Debtor affiliates (collectively, "YesCare") based solely on or arising solely from YesCare's direct business dealings or transactions with UMMS Claimants on or after May 3, 2022; or (ii) that certain August 2024 *Confidential Settlement Agreement and Release* by and between, *inter alia*, Chapman & Associates, P.C. and YesCare Corp. entered in connection with Eastern District of Michigan Case No. 2:23-cv-11210.

50. **Exculpation**. The exculpation provisions contained in Article IX.F of the Plan are: properly tailored to the circumstances of this Chapter 11 Case, appropriate under applicable

21

law (including *In re Highland Capital Mgmt., L.P.*, 48 F. 4th 419 (5th Cir. 2022)), supported by proper evidence, proposed in good faith, formulated following extensive good faith, arm's-length negotiations with key constituents, and appropriately limited in scope. The Exculpated Parties reasonably relied upon the exculpation provisions as a material inducement to engage in postpetition negotiations with the Debtor that culminated in the Plan, the Estate Party Settlement, and all other settlements and compromises therein that maximize value for the Debtor's Estate. The record in this Chapter 11 Case fully supports the exculpation provisions, which provisions are supported by the Settlement Parties, are appropriately tailored to protect the Exculpated Parties from unnecessary litigation.

51. **Channeling Injunction**. The Channeling Injunction set forth in Article IX.I of the Plan, and governed by other provisions of the Plan, is narrowly tailored and necessary to implement the terms of the Plan, including the Estate Party Settlement. The Channeling Injunction and each of the related provisions set forth in the Plan: (a) are within the jurisdiction of this Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) are an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) are an integral element of the transactions incorporated into the Plan; (d) confer material benefits on, and are in the best interest of the Debtor, its estate, and the Holders of Claims and Interests; (e) are important to the overall objectives of the Plan to finally resolve the Channeled Claims; and (f) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and other applicable provisions in the Bankruptcy Code. The record of the Confirmation Hearing and this Chapter 11 Case is sufficient to support the Channeling Injunction contained in Article IX.I of the Plan and this Confirmation Order.

52.     **Preservation of Rights of Action**.   Article IV.J of the Plan appropriately provides that, except as otherwise provided in this Plan, an agreement or document entered into in connection with the Plan, or in a Final Order of this Court, pursuant to section 1123(b) of the Bankruptcy Code and as set forth more fully in the Disclosure Statement, the Debtor reserves and, as of the Effective Date, assigns to the applicable Trust the Estate Causes of Action identified in the Plan Supplement as Retained Causes of Action.  On and after the Effective Date, the GUC Trustee and PI/WD Trustee, as appropriate, may pursue Retained Causes of Action on behalf of and for the benefit of the applicable Trust beneficiaries.

53.     No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Estate Cause of Action against it as any indication that the GUC Trustee or the PI/WD Trustee, as appropriate, will not pursue all available Estate Causes of Action against it.  Unless any Estate Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the GUC Trustee and PI/WD Trustee expressly reserve all Estate Causes of Action for later adjudication and all matters relating to the administration of the Retained Causes of Action, and therefore no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Estate, *provided*, *however*, notwithstanding the foregoing, the GUC Trust shall be required to obtain the consent of the PI/WD Trust for any material matter, including the filing, prosecution, enforcement, abandonment, settlement, compromise, release, withdrawal, or litigation to judgment of the Retained Causes of Action which could affect the PI/WD Trust.

54. The Debtor, the GUC Trustee, or the PI/WD Trustee, as applicable, reserves such Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. Subject to the foregoing consent rights of the PI/WD Trust, the GUC Trust shall retain and shall have, including through its authorized agents or representatives, the right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

**L.     Section 1129(a)(2)—Compliance of the Debtor and
        Others with the Applicable Provisions of the Bankruptcy Code**

55. The Proponents have complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including sections 1123, 1125, and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019. As a result, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

**M.     Section 1129(a)(3)—Proposal of Plan in Good Faith**

56. The Proponents have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtor's Estate for the benefit of their stakeholders, and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of this Chapter 11 Case, the Estate Party Settlement, the Plan itself, and the process leading to its formulation. The good faith of each of the entities who negotiated the Plan is evident from the facts and records of this Chapter 11 Case and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case.

**N.**     **Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable**

57.     The procedures set forth in the Plan for this Court's review and ultimate determination of the fees and expenses to be paid by the Debtor in connection with this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, satisfy the objectives of, and comply with, section 1129(a)(4) of the Bankruptcy Code.  As a result, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

**O.**     **Section 1129(a)(5)—Disclosure of Identity of
         Proposed Management, Compensation of Insiders, and Consistency of
         Management Proposals with the Interests of Creditors and Public Policy**

58.     The Proponents have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.  Pursuant to Article IV.F of the Plan, the Proponents disclosed the identity of the Trustees in the Plan Supplement.  Each of the Trustees is competent, has relevant experience, and will assist with the administration of the GUC Trust and the PI/WD Trust, as appropriate.  Additionally, the Proponents filed copies of the Trust Documents as part of the Plan Supplement.  Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**P.**     **Section 1129(a)(6)—No Rate Change**

59.     The Debtor is not subject to any governmental regulation of any rates.  Therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable.

**Q.**     **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests**

60.     The Liquidation Analysis included as <u>Exhibit C</u> to the Disclosure Statement and the other evidence related thereto that was proffered or adduced at or prior to the Confirmation Hearing: (a) are reasonable, persuasive, and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each Holder of an Allowed Claim or

25

Interest in such Class has voted to accept the Plan or will receive under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtor were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

**R.      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes**

61.      Classes 1 and 2 are composed of Unimpaired Claims and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

62.      Class 11 is composed of Impaired Interests and is conclusively presumed to have rejected the Plan under section 1126(f) of the Bankruptcy Code.

63.      As described in the Voting Report, Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9 and 10 were entitled to vote to accept or reject the Plan.  Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, and 10 voted to accept the Plan.

64.      All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all other applicable non-bankruptcy rules, laws, and regulations.

**S.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

65.      In full and final satisfaction, settlement, release, and discharge of any Allowed Administrative Claim against the Debtor, except to the extent the Debtor (with the consent of the TCC and the UCC) and a Holder of an Allowed Administrative Claim (other than Professional Fee Claims, which are governed by Article II.B of the Plan) agrees to a less favorable treatment of such Administrative Claim, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Administrative Claim shall receive Cash in an amount

equal to the Allowed amount of such Administrative Claim, as set forth in Article II.A of the Plan.

66. Except as otherwise provided by a Final Order entered by this Court, requests for payment of Administrative Claims must be Filed and served on the Debtor, the TCC, and the UCC no later than the Administrative Claims Bar Date. Each request for payment of an Administrative Claim must set forth, at a minimum, (a) the name of the Holder of the Administrative Claim, (b) the amount of the Administrative Claim and (c) a detailed basis for the Administrative Claim. A request for payment of an Administrative Claim that has been properly and timely Filed and served shall become an Allowed Administrative Claim unless an objection is filed by the date that is thirty (30) days after such request has been Filed and served. If a timely objection is Filed, the Administrative Claim in question shall become Allowed only to the extent set forth in a Final Order of the Bankruptcy Court. A Governmental Unit shall not be required to file a request for the payment of an expense described in 11 U.S.C. § 503(b)(1)(B) or (C) as a condition of its being an allowed administrative expense.

67. If an Administrative Claim is Allowed after the Effective Date and there are insufficient funds to pay such Allowed Administrative Claim from the Administrative and Priority Claims Reserve, then such claim will be paid from the net proceeds of Retained Causes of Action asserted against any Person other than the Released Parties (the "Net RCA Proceeds")[7] at such time as such Net RCA Proceeds become available for distribution under the terms and conditions of the Cooperation Agreement. After payment of the remaining amounts owing to holders of Allowed Administrative Claims and Allowed Priority Tax Claims from the Net RCA

---

[7] For the avoidance of doubt, Net RCA Proceeds shall not include a Cause of Action against a Released Party or the proceeds from a Cause of Action against a Released Party.

Proceeds, all remaining Net RCA Proceeds will be distributed to the GUC Trust and the PI/WD Trust under the terms and conditions of the Cooperation Agreement.

68.     Any failure to File a request for payment of an Administrative Claim by the Administrative Claims Bar Date shall result in the Administrative Claim in question being discharged and released as of the Effective Date, and its Holder being forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, its Estate, or any other Entity.  Any requests for payment of Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtor, or further order of the Bankruptcy Court.

69.     The DIP Claims shall be fully and forever discharged and released on the Effective Date pursuant to the Estate Party Settlement set forth in Articles II.C, IV.B.6 and IX.A of the Plan.

70.     As set forth in Article II.D of the Plan, in full and final satisfaction, settlement, release, and discharge of any Administrative Claim arising under or in respect of the Synergi Order and the agreements referenced therein, Synergi shall be entitled to receive Cash from the ERC Fund equal to the amount of such Administrative Claim pursuant to and in accordance with the Synergi Order.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall modify the Synergi Order, including the payments terms and conditions set forth therein.

71.     Except to the extent that a federal Governmental Unit Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each federal Governmental Unit Holder of such Allowed Priority Tax Claim will receive, at the sole option of

28

the Debtor or the Trustees, as applicable, either: (1) an amount of Cash from the ERC Fund equal to the amount of such Allowed Priority Tax Claim by the later of (a) ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, or (b) ten (10) days after the date on which the ERC Fund is funded; or (2) regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date. For the avoidance of doubt, federal Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

72. Except to the extent that a state Governmental Unit Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each state Governmental Unit Holder of such Allowed Priority Tax Claim will receive an amount of Cash equal to the amount of such Allowed Priority Tax Claim no later than ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter. For the avoidance of doubt, state Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority State Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

73. If a Priority Tax Claim is Allowed after the Effective Date and there are insufficient funds to pay such Allowed Priority Tax Claim from the Administrative and Priority Claims Reserve, then such claims will be paid from the Net RCA Proceeds at such time as such Net RCA Proceeds become available for distribution under the terms and conditions of the Cooperation Agreement. After payment of the remaining amounts owing to holders of Allowed

29

Administrative Claims and Allowed Priority Tax Claims from the Net RCA Proceeds, all remaining Net RCA Proceeds will be distributed to the GUC Trust and the PI/WD Trust under the terms and conditions of the Cooperation Agreement.

74.     Accordingly, the Administrative Claims, DIP Claims, and Priority Tax Claims are Unimpaired under Article II of the Plan.  As a result, the requirements of section 1129(a)(9) of the Bankruptcy Code with respect to such Classes have been satisfied.

**T.      Section 1129(a)(10)—Acceptance by At Least One Impaired Class**

75.     As set forth in the Voting Report, Classes 3, 4, 5, 6, 7, 8, 9 and 10 have voted to accept the Plan.  As such, at least one Class of Claims that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider.  As a result, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

**U.      Section 1129(a)(11)—Feasibility of the Plan**

76.     The evidence proffered or adduced at, or prior to, the Confirmation Hearing in connection with the feasibility of the Plan is reasonable, persuasive, and credible.  The Plan provides for the distribution of the Debtor's assets in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan.  The assets remaining in the Debtor's Estate as of the Effective Date will vest (a) in the Post-Effective Debtor and then be transferred to the GUC Trust for the administration, liquidation, and distribution by the GUC Trustee in accordance with the GUC Trust Agreement; or (b) in the PI/WD Trust for the administration, liquidation, and distribution by the PI/WD Trust Trustee in accordance with the PI/WD Trust Agreement.  As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

**V.      Section 1129(a)(12)—Payment of Bankruptcy Fees**

77.      The Plan provides that the Debtor (or the Disbursing Agent on behalf of the Debtor) shall pay all fees payable under section 1930 of title 28, United States Code on and after the Effective Date until the entry of a final decree in the Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.  As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

**W.      Section 1129(a)(13)—Retiree Benefits**

78.      The Debtor does not have any obligations to pay retiree benefits and, therefore, section 1129(a)(13) of the Bankruptcy Code is not applicable.

**X.      Section 1129(a)(14), (15), and (16)—Domestic Support Obligations; Unsecured Claims Against Individual Debtor; Transfers by Nonprofit Organizations**

79.      The Debtor does not have domestic support obligations, is not an individual and is not a nonprofit organization.  Therefore, sections 1129(a)(14), (15), and (16) of the Bankruptcy Code do not apply to this Chapter 11 Case.

**Y.      Section 1129(c)—Only One Plan**

80.      Other than the Plan (including any previous versions thereof), no other plan has been filed in this Chapter 11 Case.  As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**Z.      Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Securities Law**

81.      No Governmental Unit has requested that this Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  As evidenced by its terms, the

principal purpose of the Plan is not such avoidance. As a result, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**AA.   Satisfaction of Confirmation Requirements**

82.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**BB.   Rejection of Executory Contracts and Unexpired Leases**

83.    The rejection of each Executory Contract or Unexpired Lease pursuant to Article V of the Plan shall be legal, valid, and binding upon the Debtor and all non-Debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such rejection had been effectuated pursuant to an appropriate order of the Court entered prior to the Effective Date under section 365 of the Bankruptcy Code.

**CC.   Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

84.    Without limiting or modifying the rights of the Debtor, the UCC, and the TCC under Article X of the Plan, each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.   Confirmation of the Plan**

85.    The Plan, a copy of which is attached hereto as **Exhibit B**, as may be amended by this Confirmation Order, is confirmed pursuant to section 1129 of the Bankruptcy Code. The Plan and the Plan Documents comply with all applicable provisions of the Bankruptcy Code, including sections 1129 and 1123 of the Bankruptcy Code. All objections to confirmation of the

32

Plan that have not been withdrawn or resolved prior to the Confirmation Hearing are hereby overruled.

86.     The Debtor shall cause to be served a notice of entry of this Confirmation Order and occurrence of the Effective Date, substantially in form attached hereto as **Exhibit C** (the "Confirmation Notice"), on all parties served with the Confirmation Hearing Notice as soon as reasonably practicable after the Effective Date; *provided that,* no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtor mailed notice of the Confirmation Hearing but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Entity, or is otherwise aware, of that Entity's new address.  The Proponents shall cause the Confirmation Notice to be posted on the website of this Chapter 11 Case: https://veritaglobal.net/tehum.  Such service in the time and manner set forth herein will provide good, adequate, and sufficient notice under the circumstances, and shall be deemed to comply with Bankruptcy Rules 2002(a)(7), 2002(f)(3) and (f)(7), 2002(*l*), 3002(c)(4), and 3020(c)(2).

## B.     **Binding Effect**

87.     Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, from and after the entry of this Confirmation Order and upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement and this Confirmation Order shall be deemed immediately effective, enforceable, and binding upon: (a) the Debtor; (b) any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan); (c) any and all

non-Debtor parties to Executory Contracts and Unexpired Leases with any of the Debtor; (d) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan; and (e) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

## C.   **Plan Classification Controlling**

88.   The terms of the Plan shall govern the classification of Claims and Interests for purposes of the Distributions to be made thereunder.  The classifications and amounts set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification or amounts of such Claims under the Plan for Distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification or amount of such Claim under the Plan for Distribution purposes; and (d) shall not be binding on the Debtor except for voting purposes.

## D.   **Compromise and Settlement of Claims, Interests, and Controversies**

89.   Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of this Confirmation Order shall constitute this Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding that such compromise or

settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. The treatment provided for Channeled PI/WD Trust Claims under the Plan and the PI/WD Trust Documents incorporates and reflects a proposed settlement framework of such Claims against the Debtor. In consideration for the distributions and other benefits provided under the Plan and the PI/WD Trust Documents, as of the Effective Date, the provisions of the Plan and the PI/WD Trust Documents shall constitute a good-faith settlement for Channeled PI/WD Trust Claims relating to the contractual, legal, equitable, and subordination rights that Holders of Channeled PI/WD Trust Claims may have with respect to such Claims under the Plan or any distribution to be made on account of such Claims. The entry of this Confirmation Order shall constitute the Court's approval of the settlement framework for all Channeled PI/WD Trust Claims, as well as a finding by the Court that such settlement framework, to the extent followed by and used by the PI/WD Trust, will result in Allowed Claim amounts that are fair, reasonable, and equitable under the circumstances of this Chapter 11 Case and for the limited purpose of determining the Debtor's liability and obligation to pay such Allowed Channeled PI/WD Trust Claim, *provided*, *however*, that such finding shall not determine in any respect the liability of a Governmental Unit for such Claim, which liability shall be determined through litigation and/or settlement separate and apart from the Plan and the Chapter 11 Case in all respects. On the Effective Date, the Settling Parties shall release and waive all Claims and Causes of Action against the Debtor and its Estate, including the DIP Claims, the Proof of Claim filed by Geneva Consulting LLC (Claims Register No. 572 for $315,032.97), and the Proof of Claim filed by M2 LoanCo, LLC (Claims Register No. 589 for $24,032,965), which Claims shall be Disallowed for all purposes and expunged from the Claims

Register.  The Settling Parties will have no right to seek indemnification from the Trusts and will not assert any claims against the Trusts.

**E.      Release of Liens**

90.      In accordance with Article IX.B of the Plan, on the Effective Date, all mortgages, deeds of trust, Liens (including the DIP Liens), pledges, or other security interests against any property of the Estate shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens (including the DIP Liens), pledges, or other security interests shall revert automatically to the Debtor and its successors and assigns, including the Trusts.  Any Holder of a Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Debtor or the Trustees to evidence the release of such Lien (including the DIP Lien), including the execution, delivery, and filing or recording of such releases.  The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens (including the DIP Liens).

**F.      Consensual Claimant Release**

91.      In accordance with Article IX.D of the Plan, as of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all

Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that the releases set forth in Article IX.D of the Plan shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents. If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth in Article IX.D of the Plan shall be void. If such releases become void, then the

relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts. Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose. The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

## G. **Estate Release**

92. In accordance with Article IX.C of the Plan, as of the Final Payment Date, except for the claims or theories of recovery or remedies distributed to or retained by Holders of Opt-Out GUC Claims, Holders of Opt-Out PI/WD Claims, and Holders of Opt-Out Indirect Claims, and except for the rights that remain in effect from and after the Effective Date to enforce the Plan and this Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, and each of their respective successors or assigns, including the Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, the Payment Agreement, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan

Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in the Plan shall not be construed to release any Insurance Actions or any post-Effective Date obligations under the Estate Party Settlement or any document, instrument, or agreement executed to implement the Estate Party Settlement. If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth in Article IX.C of the Plan shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts. Any Released Party may enforce the Estate Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose. The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

**H. Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9**

93. In accordance with Article IX.E of the Plan, as of the Final Payment Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, the Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally,

39

irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Channeled GUC Claims), Class 6 (Channeled PI/WD Claims), Class 8 (Opt-Out Insured PI/WD Claims), and Class 9 (Channeled Indirect Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article IX.E of the Plan shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.

I.      **Exculpation**

94.     In accordance with Article IX.F of the Plan, as of the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.  The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code.  Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

J.      **Channeling Injunction**

95.     As of the Effective Date, to facilitate the liquidation of Channeled Claims by the Trusts and to preserve and promote the settlement framework contemplated by and provided for in the Plan, including the Estate Party Settlement, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under the Bankruptcy Code, the Channeling Injunction shall become effective.  Any Released Party may enforce the Channeling Injunction before this Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.  While the Channeling

Injunction is in effect as to any Channeled Claim, and for ninety (90) days following the termination of the Channeling Injunction under Article IX.I.5 of the Plan, the running of any relevant Statute of Limitations shall be tolled and extended as to any Channeled Claim. Upon the termination of the Channeling Injunction, the PI/WD Trustee and the GUC Trustee shall file a notice on the docket of the Chapter 11 Case and provide notice to beneficiaries of the Trusts that the Estate Party Settlement did not become effective and that such beneficiaries have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties.

96. The Channeling Injunction is to be implemented in connection with the Trusts and shall be in full force and effect on the Effective Date. In accordance with Article IV.B.2 of the Plan, if a Settlement Payment Default occurs and is not cured within the Settlement Payment Cure Period or waived in writing by both the PI/WD Trustee and GUC Trustee, all Plan injunctions, stays, or releases provided in favor of the Released Parties that are in effect under the Plan shall be deemed terminated and void. All Statute of Limitations for all Claims and Causes of Action against the Released Parties held by the Debtor, the Estate, the PI/WD Trust, the GUC Trust, and Holders of Channeled Claims shall be tolled and extended to the first Business Day that is ninety (90) days after the termination of the Channeling Injunction if the Settlement Payment Default is not timely cured or waived in writing by both the PI/WD Trustee and the GUC Trustee. Notice of any waiver by the PI/WD Trustee and the GUC Trustee described in this paragraph must be filed on the docket for the Chapter 11 Case. If the Settlement Payment Default is not timely cured or waived in writing, the Channeling Injunction will be terminated and the PI/WD Trustee and the GUC Trustee shall file a notice on the docket of the Chapter 11 Case and provide notice to beneficiaries of the Trusts that the Estate Party

Settlement did not become effective and that such beneficiaries have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties.

**K.** **Injunction Against Interference with the Plan**

97.     In accordance with Article IX.J of the Plan, upon entry of this Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.  The negotiation, settlement, and resolution of any Claims and Interest under the Plan shall not operate to excuse any Party from its obligations under any contracts, Insurance Policies, or other agreements, notwithstanding any terms of such contracts, Insurance Policies or agreements or provisions of non-bankruptcy law.

**L.** **Injunction against Interference with Opt-Out Rights**

98.     In accordance with Article IX.K of the Plan, as of the Effective Date, neither YesCare Corp., CHS TX, Inc. nor any other alleged successor entity may assert in any litigation involving an Opt-Out GUC Claim, an Opt-Out PI/WD Claim, or an Opt-Out Indirect Claim in the Civil Justice System that such Claims, to the extent asserted against YesCare Corp., CHS TX, Inc., or any other successor based on the doctrine of successor liability are barred, released, discharged, or impaired by this Confirmation Order, the Plan, or the Estate Release.  The right to assert such Claims based on the doctrine of successor liability has been received or retained by the Holders of such Claims under Article III.D, and the Holders of such Claims shall have a Claim against Debtor solely to the extent necessary to preserve and enforce such right.  Subject to the foregoing, YesCare Corp.'s, CHS TX, Inc.'s, or any other alleged successor entity's claims, rights, and defenses to any action brought by the Holder of an Opt-Out GUC Claim, an Opt-Out PI/WD Claim, or an Opt-Out Indirect Claim in the Civil Justice System are expressly

43

preserved under the Plan, including the rights of YesCare Corp., CHS TX, Inc., or any other alleged successor entity to contest liability for Opt-Out GUC Claims, Opt-Out PI/WD Claims, or Opt-Out Indirect Claims and to argue that they are not liable as successors to the Debtor based on the facts of the underlying action and/or the requirements for imposing successor liability under applicable law.

**M.      Insurance Provision**

99.      Nothing in the Plan, the Plan Documents, this Confirmation Order, any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan, any order or opinion entered on appeal from this Confirmation Order, or any valuation of Claims (either individually or in the aggregate) in the Chapter 11 Case shall, with respect to any Insurance Company (including a PI/WD Insurance Company or a GUC Insurance Company):   (i) constitute any adjudication, judgment, trial, hearing on the merits, finding, conclusion, or other determination establishing the coverage obligation of any such Insurance Company for any Claim; or (ii) limit the right of any such Insurance Company to assert any Insurer Coverage Defense; *provided*, *however*, that with, respect to (i) and (ii), (y) the transfer of rights to the PI/WD Trust pursuant to the PI/WD Insurance Assignment and the transfer of rights to the GUC Trust pursuant to the GUC Insurance Assignment shall be valid and enforceable, and (z) the discharge or release of the Debtor or any Released Party from any Claims or Causes of Action under the Plan shall not affect the liability of any such Insurance Company.  The establishment of any claim in litigation against the PI/WD Trust in its capacity as the Debtor's representative shall be deemed the establishment of a claim against the Debtor under any available Insurance Policy.

44

**N.** **Forbearance from Prosecuting Released Estate Causes of Action**

100. In accordance with Article IV.B.10 of the Plan, the Trusts shall forbear from asserting or prosecuting any Released Estate Causes of Action between the Effective Date and the Final Payment Date unless a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived by both the PI/WD Trustee and GUC Trustee. While this forbearance period is in effect, and for ninety (90) days following the termination of such forbearance period, the running of any relevant Statute of Limitations shall be tolled and extended as to any Released Estate Causes of Action.

**O.** **Claim Over**

101. In accordance with Article IV.B.11 of the Plan, it is the intent of the parties to the Estate Party Settlement that: (a) the contributions made by the Settling Parties to the Trusts should be the sole payments the Released Parties shall make to address the Released Claims; (b) a claim by a Consenting Claimant against any non-party arising out of a Released Claim should not result in any additional payment by any Released Party; and (c) the settlement effectuated through the Plan meets the requirements of the Uniform Contribution Among Tortfeasors Act and any similar state or federal law or doctrine that reduces or discharges a Released Party's liability to any other parties. The Plan and this Order provide that the Estate Party Settlement is a good faith settlement that bars any Cause of Action by a non-Released Party against any Released Party for contribution, for indemnification, or otherwise seeking to recover any amounts paid by or awarded against that non-Released Party and paid or awarded to any Consenting Claimant by way of settlement, judgment, or otherwise on any claim that would be a Released Claim were such non-Released Party a Released Party to the extent that a good-faith settlement has such an effect in accordance with applicable law.

**P.     <u>Voiding of Releases in Favor of the Released Parties</u>**

102.     In accordance with Article IV.B.12 of the Plan, if, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth in Article IV.B.7 and Article IV.B.9 of the Plan in favor of the Released Parties shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extend to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.

**Q.     <u>Retention of Liability</u>**

103.     Nothing in the Plan, the Plan Documents, this Confirmation Order, any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan, or any order or opinion entered on appeal from this Confirmation Order, shall constitute any adjudication, judgment, trial, hearing on the merits, finding, conclusion, or other determination establishing that any non-Released Party shall not be deemed to be (i) liable with the Debtor by reason of any theory of law or equity or (ii) liable (or continue to be liable) for their respective liabilities to any holder of a Claim by reason of any theory of law or equity. The Plan, the Plan Documents, and this Confirmation Order shall not in any way reduce, limit, discharge or release any non-Released Party, including any Governmental Unit that may be co-liable with the Debtor on account of any Claim (including a PI/WD Claim), or any Insurance Company.

**R.     <u>Treatment of Executory Contracts and Unexpired Leases</u>**

104.     The rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases as set forth in Article VI of the Plan is hereby approved. Except as otherwise set forth in

the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date without the need for any further action or consents that may otherwise be required under applicable non-bankruptcy law.

**S.     Assumption of Liability and Trust Funding**

105.    Upon the Effective Date, each of the Trusts shall assume the liabilities of the Debtor with respect to the Channeled Claims channeled to such Trust and have authority to administer, process, settle, resolve, liquidate, satisfy, and pay all such Channeled Claims.

106.    The PI/Trust shall be funded with the PI/Trust Assets, which shall be used to resolve and pay Channeled PI/WD Trust Claims.  The GUC Trust shall be funded with the GUC Assets, which shall be used to resolve and pay Channeled GUC Trust Claims.  On the Effective Date, the GUC Data Transfer must have been delivered to the GUC Trust and the PI/WD Data Transfer must have been delivered to the PI/WD Trust.

107.    On the Effective Date, sections 1123, 1141(b), and 1141(c) of the Bankruptcy Code, all right, title, and interest in and to the PI/WD Trust Assets shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the PI/WD Trust free and clear of all Liens, Claims, Encumbrances, interests, and rights of any nature, whether at law or in equity, of any Person or Entity.  To the extent any of the PI/WD Trust Assets are not transferred to the PI/WD Trust on the Effective Date pursuant to the Plan, then as soon as such assets accrue or become transferable after the Effective Date, they shall automatically and immediately transfer to the PI/WD Trust free and clear of all Encumbrances and Claims or other interests of any Person. On and after the Effective Date, except as otherwise provided in the Plan, the PI/WD Trustee may use, acquire, or dispose of the PI/WD Trust Assets and compromise, settle, and resolve on a final basis, any Channeled PI/WD Trust Claims without supervision or approval by

47

the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the PI/WD Trust Agreement.

108.    On the Effective Date, sections 1123, 1141(b), and 1141(c) of the Bankruptcy Code, all right, title, and interest in and to the GUC Trust Assets shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the GUC Trust free and clear of all Liens, Claims, Encumbrances, interests, and rights of any nature, whether at law or in equity, of any Person or Entity.  To the extent any of the GUC Trust Assets are not transferred to the GUC Trust on the Effective Date pursuant to the Plan, then as soon as such assets accrue or become transferable after the Effective Date, they shall automatically and immediately transfer to the GUC Trust free and clear of all Encumbrances and Claims or other interests of any Person. On and after the Effective Date, except as otherwise provided in the Plan, the GUC Trustee may use, acquire, or dispose of the GUC Trust Assets and compromise, settle, and resolve on a final basis, any Channeled GUC Trust Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise provided in the GUC Trust Agreement.

109.    The Trust Agreements, substantially in the forms filed in the Plan Documents, are hereby approved in all respects.  On the Effective Date, the Debtor shall irrevocably assign, transfer, convey and deliver (and shall be deemed to have irrevocably assigned, transferred, conveyed and delivered) all of their rights, title, and interest in and to all of the designated Trust Assets to the appropriate Trust, free and clear of all Claims, Liens, charges, and other encumbrances, and in accordance with section 1141 of the Bankruptcy Code, and the Trust Assets shall automatically vest in each Trust without further action by any Person.  Each of the

Trust Assets shall be held by each Trustee as of the Effective Date in trust for the benefit of the Beneficiaries (as defined in the Trust Agreements).

110. The appointment of Matthew Dundon as GUC Trustee pursuant to the terms of the GUC Trust Agreement is hereby approved, and the GUC Trustee is hereby (a) authorized to execute and perform under the GUC Trust Agreement, to appear and be heard before the Bankruptcy Court on all matters related to the Chapter 11 Case (as a representative of the GUC Trust and/or under section 1123(b) of the Bankruptcy Code, as applicable); and (b) vested with all of the powers and authority set forth in the Plan and GUC Trust Agreement.

111. The appointment of Michael Zimmerman as PI/WD Trustee pursuant to the terms of the PI/WD Trust Agreement is hereby approved, and the PI/WD Trustee is hereby (a) authorized to execute and perform under the PI/WD Trust Agreement, to appear and be heard before the Bankruptcy Court on all matters related to the Chapter 11 Case (as a representative of the PI/WD Trust and/or under section 1123(b) of the Bankruptcy Code, as applicable); and (b) vested with all of the powers and authority set forth in the Plan and PI/WD Trust Agreement.

**T.** **Insurance Assignment**

112. The GUC Insurance Assignment is authorized and permissible as provided in the Plan and under section 1123(a)(5) of the Bankruptcy Code, notwithstanding any terms of any GUC Insurance Policies or provisions of applicable law that are argued to prohibit the delegation, assignment, or other transfer of such rights, and the GUC Trust is a proper party to assert the liability of the Debtor to trigger such insurance rights.

113. The PI/WD Insurance Assignment is authorized and permissible as provided in the Plan and under section 1123(a)(5) of the Bankruptcy Code, notwithstanding any terms of any PI/WD Insurance Policies or provisions of applicable law that are argued to prohibit the

delegation, assignment, or other transfer of such rights, and the PI/WD Trust is a proper party to assert the liability of the Debtor to trigger such insurance rights.

## U.     DIP Claims

114.    In accordance with Article II.C of the Plan, DIP Claims shall be fully and forever discharged and released on the Effective Date pursuant to the Estate Party Settlement set forth in Article IV.B.6 and Article IX.A of the Plan.

## V.     Cancellation of Interests in the Debtor

115.    On the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, security documents, and other instruments or documents evidencing or creating any prepetition Interests in the Debtor shall be deemed cancelled and of no further force and effect.

## W.     Administrative Claim Bar Date

116.    Pursuant to Article II.A of the Plan, unless previously filed or paid, requests for payment of Administrative Claims (other than Professional Fee Claims, DIP Facility Claims, claims arising under section 503(b)(1)(D) of the Bankruptcy Code, Priority Tax Claims and Statutory Fees) must be filed and served on the Debtor, the TCC and the UCC no later than the Administrative Claims Bar Date.  Each request for payment of an Administrative Claim must set forth, at a minimum, (a) the name of the Holder of the Administrative Claim, (b) the amount of the Administrative Claim and (c) a detailed basis for the Administrative Claim.  A request for payment of an Administrative Claim that has been properly and timely Filed and served shall become an Allowed Administrative Claim unless an objection is filed by the date that is thirty (30) days after such request has been filed and served.  If a timely objection is filed, the Administrative Claim in question shall become Allowed only to the extent set forth in a Final Order of the Bankruptcy Court.

117.     Any failure to File a request for payment of an Administrative Claim by the Administrative Claims Bar Date shall result in the Administrative Claim in question being discharged and released as of the Effective Date, and its Holder being forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, its Estate, or any other Entity.  Any requests for payment of Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtor, or further order of the Bankruptcy Court.

## X.     Deadline to File Professional Fee Claims

118.     All Professionals or other Persons requesting the final Allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330 and/or 331 for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for Allowance and payment of Professional Fee Claims on counsel to the TCC, the UCC, the DIP Lender, the Debtor, and the United States Trustee no later than the first Business Day that is thirty (30) days after the Effective Date.

119.     Estate Professionals shall estimate their Accrued Professional Fees as of the Effective Date and deliver such estimate to the TCC, the UCC, and the Debtor at least five (5) Business Days prior to the anticipated Effective Date.  If a Professional does not provide such estimate, the TCC, the UCC, and the Debtor may estimate the unbilled fees and expenses of such Professional.  The total amount so estimated will constitute the Professional Fee Escrow Amount, provided that such estimate will not be considered an admission or limitation with respect to the fees and expenses of such Professional.

120. On the Effective Date, the Debtor shall fund the Professional Fee Escrow Accounts with Cash in an amount equal to the Professional Fee Escrow Amount plus a reasonable cushion amount determined by the TCC, the UCC, and the Debtor. The TCC Professional Fee Escrow Account will be funded with Cash sufficient to pay the Professional Fee estimate for the TCC's Professionals, which account shall be held and administered by the PI/WD Trustee.

## Y.    Deadline to File Rejection Claims

121. As provided in Article V.B of the Plan, unless otherwise provided by a Bankruptcy Court order, all Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be the subject of a Proof of Claim Filed with the Claims Agent and served on the Post-Effective Date Debtor no later than thirty (30) days after the later of (i) the Effective Date or (ii) the date of entry of a Bankruptcy Court order approving such rejection. Such Proof of Claim may be objected to in accordance with the provisions of Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not the subject of a timely Filed Proof of Claim shall be Disallowed for all purposes in this Chapter 11 Case, discharged, and forever barred.

## Z.    Exemption from Certain Transfer Taxes

122. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, no transfers of property under the Plan shall be subject in any way to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, including but not limited to (1) the issuance, distribution, transfer,

or exchange of any debt, equity security, or other interest in either Trust; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan. Each appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## AA. Non-Severability of Plan Provisions Upon Confirmation

123. This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (3) non-severable and mutually dependent.

## BB. Governmental Agencies and State of Idaho Parties

124. Except as expressly provided for in the Plan, nothing in the Plan, this Confirmation Order, or other related Plan documents shall affect a release or limit any claim

arising solely under the enforcement of the police powers or regulatory activities of the United States Government or any of its agencies, or any state and local authority, whatsoever.

125.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the releases, discharges and injunctions contained in the Plan shall not restrict, limit, or otherwise modify any claims that may be asserted under, or any recovery that may be received from, any performance bond or any payment bond issued for the benefit of the State of Idaho parties.

## CC    Authorization to Consummate the Plan

126.    The Proponents are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (with the consent of the applicable parties and in accordance with Article X.C of the Plan) of the conditions precedent to the Effective Date set forth in Article X.B of the Plan.

## DD.    Substantial Consummation

127.    Substantial consummation of the Plan under sections 1101(2) and 1127(b) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

## EE.    Retention of Jurisdiction

128.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including those matters set forth in Article XI of the Plan.

## FF.    Terms of Injunctions and Stays

129.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the

Bankruptcy Code or any order of the Bankruptcy Court and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan and this Confirmation Order shall remain in full force and effect in accordance with their terms.

**GG.**    **Stay of Confirmation**

130.    Any applicable stay of effectiveness provided in Bankruptcy Rules 3020(e), 6004(g), 6004(h), 6006(d), and 7062, or otherwise shall not apply to this Confirmation Order. This Confirmation Order shall be effective and enforceable immediately upon its entry.

**HH.**    **Final Order**

131.    This Confirmation Order is a final order and the period within which an appeal must be filed commences immediately upon the entry hereof.

Signed: March 03, 2025

_____
Christopher Lopez
United States Bankruptcy Judge

**Exhibit A to Confirmation Order**

List of Opt-Out Parties

Opt-Out Summary

| Creditor Name | Date Received | Ballot No. | Class | Opt Out of Release |
|---|---|---|---|---|
| Adree Edmo | 02/19/2025 | 384 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Aleatha D. Reitsma-Mathias, MD | 02/20/2025 | 443 | Class 9 / 10 (Indirect Claims) | Yes |
| Antoinette Windhurst | 12/05/2024 | 65 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Arizona Department of Corrections, Rehabilitation, & Reentry | 02/20/2025 | 471 | Class 9 / 10 (Indirect Claims) | Yes |
| Carl Ashley | 12/10/2024 | 117 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Charles S. Jamsen, MD | 02/20/2025 | 436 | Class 9 / 10 (Indirect Claims) | Yes |
| Charletta Renae Atkinson | 12/11/2024 | 50 | Class 4 / 5 (Non-Personal Injury Claims) | Yes |
| Claire Pei, DO | 02/20/2025 | 442 | Class 9 / 10 (Indirect Claims) | Yes |
| Danielle Alford, P.A. | 02/20/2025 | 419 | Class 9 / 10 (Indirect Claims) | Yes |
| Darrell Barrows, NP | 02/20/2025 | 421 | Class 9 / 10 (Indirect Claims) | Yes |
| Donald Rolle #25795 | 02/21/2025 | 495 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Donna M. Rohrs, PA | 02/20/2025 | 445 | Class 9 / 10 (Indirect Claims) | Yes |
| Edward Albert Stenberg #124629 | 01/08/2025 | 209 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Harold Obiakor, MD | 02/20/2025 | 453 | Class 4 / 5 (Non-Personal Injury Claims) | Yes |
| Hector Garcia, Jr. | 01/31/2025 | 319 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Janak R. Bhavsar, MD | 02/20/2025 | 422 | Class 9 / 10 (Indirect Claims) | Yes |
| Jeffrey Bomber, DO | 02/20/2025 | 423 | Class 9 / 10 (Indirect Claims) | Yes |
| Joshua Kocha, PA | 02/20/2025 | 439 | Class 9 / 10 (Indirect Claims) | Yes |
| Joshua Schad, NP-C | 02/20/2025 | 444 | Class 9 / 10 (Indirect Claims) | Yes |
| Juliana Martino, N.P. | 02/20/2025 | 434 | Class 9 / 10 (Indirect Claims) | Yes |
| Keith Papendick, MD | 02/20/2025 | 440 | Class 9 / 10 (Indirect Claims) | Yes |
| Kevin Sorrick | 01/28/2025 | 311 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Kim Farris, PA-C | 02/20/2025 | 427 | Class 9 / 10 (Indirect Claims) | Yes |
| Kohchise Jackson | 01/07/2025 | 193 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Kristin A. Austin, NP | 02/20/2025 | 420 | Class 9 / 10 (Indirect Claims) | Yes |
| Leila Ghasemi, NP | 02/20/2025 | 429 | Class 9 / 10 (Indirect Claims) | Yes |
| Louisiana Department of Revenue | 02/05/2025 | 335 | C/U/D Scheduled Claims | Yes |
| Marks, ONeill, OBrien, Doherty and Kelly, P.C. | 02/20/2025 | 455 | Class 4 / 5 (Non-Personal Injury Claims) | Yes |
| MEZA-SAYAS, ANTONIO | 12/10/2024 | 57 | C/U/D Scheduled Claims | Yes |
| Michelle McIntosh | 12/10/2024 | 42 | Class 4 / 5 (Non-Personal Injury Claims) | Yes |
| Mohammad Azimi, MD | 02/20/2025 | 424 | Class 9 / 10 (Indirect Claims) | Yes |
| New Hampshire Department of Revenue Administration | 12/20/2024 | 165 | Unclassified Claims | Yes |
| Patricia Lewis, NP | 02/20/2025 | 430 | Class 9 / 10 (Indirect Claims) | Yes |
| Ravi D. Yarid, D.O. | 02/20/2025 | 446 | Class 9 / 10 (Indirect Claims) | Yes |
| Rickey Coleman, DO | 02/20/2025 | 425 | Class 9 / 10 (Indirect Claims) | Yes |
| Rob Crompton, MD | 02/20/2025 | 426 | Class 9 / 10 (Indirect Claims) | Yes |
| Robert Gamez, Jr. | 01/21/2025 | 228 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Robert Lacy, DO | 02/20/2025 | 431 | Class 9 / 10 (Indirect Claims) | Yes |
| Rodney B. Holmes, #528263 | 02/21/2025 | 497 | C/U/D Scheduled Claims | Yes |
| Rosilyn Jindal, PA | 02/20/2025 | 437 | Class 9 / 10 (Indirect Claims) | Yes |
| Samantha Price, N.P. | 02/20/2025 | 441 | Class 9 / 10 (Indirect Claims) | Yes |
| Scott Eliason | 01/07/2025 | 195 | Class 9 / 10 (Indirect Claims) | Yes |
| Shanthi Gopal, MD | 02/20/2025 | 454 | Class 4 / 5 (Non-Personal Injury Claims) | Yes |
| Stacy Lindahl, NP | 02/20/2025 | 432 | Class 9 / 10 (Indirect Claims) | Yes |
| Steven Odom | 02/21/2025 | 498 | C/U/D Scheduled Claims | Yes |
| Surjit S. Dinsa, MD | 02/20/2025 | 428 | Class 9 / 10 (Indirect Claims) | Yes |
| Tana Hill, NP | 02/20/2025 | 435 | Class 9 / 10 (Indirect Claims) | Yes |
| Tennessee Department of Revenue | 02/14/2025 | 359 | Class 4 / 5 (Non-Personal Injury Claims) | Yes |
| Teri A. Massey, NP | 02/20/2025 | 438 | Class 9 / 10 (Indirect Claims) | Yes |
| Terry Bowling #216014 | 12/12/2024 | 122 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| TRIPATI, ANANT | 12/06/2024 | 116 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| Victoria Hallett, DO | 02/20/2025 | 433 | Class 9 / 10 (Indirect Claims) | Yes |
| William Kelly | 02/06/2025 | 338 | Class 6 / 7 / 8 (Personal Injury Claims) | Yes |
| ZAMORA, ERIC | 02/15/2025 | 363 | C/U/D Scheduled Claims | Yes |

**Exhibit B to Confirmation Order**


First Modified Joint Chapter 11 Plan

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| TEHUM CARE SERVICES, INC.,[1] | ) Case No. 23-90086 (CML) |
|  | ) |
| Debtor. | ) |
|  | ) |

**FIRST MODIFIED JOINT CHAPTER 11 PLAN OF THE TORT CLAIMANTS'
COMMITTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR**

**BROWN RUDNICK LLP**
David J. Molton (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Meghan McCafferty (*pro hac vice*)
Amir Shachmurove (*pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email:  dmolton@brownrudnick.com
        egoodman@brownrudnick.com
        cmoxley@brownrudnick.com
        gcicero@brownrudnick.com
        mmccafferty@brownrudnick.com
        ashachmurove@brownrudnick.com

*Co-Counsel to the Tort Claimants' Committee*

**BERRY RIDDELL, LLC**
Michael W. Zimmerman
6750 E. Camelback Road, Suite #100
Scottsdale, AZ 85251
Telephone: (480) 385-2727
Email:  mz@berryriddell.com

*Co-Counsel to the Tort Claimants' Committee*

**STINSON LLP**
Nicholas Zluticky (SD TX Bar No. 3846893)
Zachary Hemenway (SD TX Bar No. 3856801)
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Email:  nicholas.zluticky@stinson.com
        zachary.hemenway@stinson.com

*Counsel to the Official Committee of Unsecured
Creditors*

**GRAY REED**
Jason S. Brookner (TX Bar No. 24033684)
Micheal W. Bishop (TX Bar No. 02354860)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
1300 Post Oak Boulevard, Suite 2000
Houston, TX 77056
Telephone: (713) 986-7127
Facsimile: (713) 986-5966
Email:  jbrookner@grayreed.com
        mbishop@grayreed.com
        akaufman@grayreed.com
        lwebb@grayreed.com
        acarson@grayreed.com

*Counsel to the Debtor and Debtor in Possession*

THE PLAN PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF A CHANNELING INJUNCTION PURSUANT TO SECTIONS 105(a) OF THE BANKRUPTCY CODE THAT CHANNELS ALL CLASS 4, CLASS 6, AND CLASS 9 CLAIMS, *I.E.*, CLAIMANTS WHO HAVE NOT OPTED OUT OF THE CONSENSUAL CLAIMANT RELEASE (AS DEFINED HEREIN), TO SEPARATE TRUSTS.  CLAIMANTS WHO ELECT TO OPT OUT OF THE CONSENSUAL CLAIMANT RELEASE SHALL HAVE NO RIGHT TO RECOVER FROM THE TRUSTS, BUT MAY PURSUE RECOVERIES IN THE CIVIL JUSTICE SYSTEM.

---

[1]  The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|

INTRODUCTION .................................................................................................................................1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**...................................................1

    A.    Defined Terms ........................................................................................................1

    B.    Rules of Interpretation ........................................................................................17

    C.    Computation of Time ..........................................................................................18

    D.    Governing Law ...................................................................................................18

    E.    Reference to Monetary Figures ..........................................................................18

    F.    Controlling Document ........................................................................................18

**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS**..........................................18

    A.    Administrative Claims ........................................................................................19

    B.    Professional Fee Claims .....................................................................................19

    C.    DIP Claims .........................................................................................................20

    D.    Synergi Administrative Claim ............................................................................21

    E.    Priority Tax Claims (Federal and State)..............................................................21

**ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**..........21

    A.    Classification of Claims and Interests.................................................................21

    B.    Requirement to File a Personalized Proof of Claim Form by All Claimants, Including Those Who Are Part of Representative Action ..................................21

    C.    Voting Requirements ..........................................................................................21

    D.    Opt-Out Deadline ...............................................................................................22

    E.    Summary of Classification .................................................................................22

    F.    Treatment and Voting of Classes of Claims and Interests ..................................22

        1.    Class 1 — Other Priority Claims ...........................................................22

        2.    Class 2 — Other Secured Claims...........................................................23

        3.    Class 3 — Convenience Claims..............................................................23

        4.    Class 4 — Channeled GUC Claims ........................................................23

        5.    Class 5 — Opt-Out GUC Claims ...........................................................24

        6.    Class 6 — Channeled PI/WD Claims .....................................................24

        7.    Class 7 — Opt-Out PI/WD Claims.........................................................25

        8.    Class 8 — Opt-Out Insured PI/WD Claim .............................................25

        9.    Class 9 — Channeled Indirect Claims ....................................................26

        10.    Class 10 — Opt-Out Indirect Claims......................................................27

        11.    Class 11 — Interests in the Debtor .........................................................27

    G.    Elimination of Vacant Classes ...........................................................................27

    H.    Voting Classes; Presumed Acceptance by Non-Voting Classes ..........................27

    I.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.....................28

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ....................................28

    A.    Sources of Consideration for Plan Distributions ................................................28

    B.    The Estate Party Settlement ...............................................................................28

        1.    The Settlement Payment .........................................................................28

        2.    Settlement Payment Default ....................................................................28

        3.    Allocation of Settlement Payment ..........................................................29

        4.    Use of Settlement Payment .....................................................................29

        5.    Right of Termination Based on Voting Results .......................................29

        6.    Settlement Parties' Release of Certain Claims ........................................29

        7.    Release by the Consenting Claimants of the Released Parties..................30

|   | 8. | Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9 | 30 |
|   | 9. | Release of Estate Causes of Action Against the Released Parties | 31 |
|   | 10. | Forbearance from Prosecuting Released Estate Causes of Action | 31 |
|   | 11. | Claim Over | 31 |
|   | 12. | Voiding of Releases in Favor of the Released Parties | 32 |
| C. | Opt-Out Insured PI/WD Claims | | 32 |
| D. | PI/WD Trust to Resolve All Channeled PI/WD Trust Claims | | 32 |
| E. | General Settlement of Claims | | 32 |
| F. | Post-Effective Date Debtor, GUC Trust, and PI/WD Trust | | 33 |
|   | 1. | Post-Effective Date Debtor and GUC Trust | 33 |
|   | 2. | PI/WD Trust | 36 |
| G. | Corporate Action | | 39 |
| H. | Effectuating Documents; Further Transactions | | 40 |
| I. | Exemptions from Certain Taxes and Fees | | 40 |
| J. | Preservation of Causes of Action | | 40 |
| K. | Dissolution of Committees and Cessation of Fee and Expense Payments | | 41 |

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .... 41**
| A. | Assumption or Rejection of Executory Contracts and Unexpired Leases | 41 |
| B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 41 |
| C. | Cure of Defaults and Objections to Cure and Assumption | 42 |
| D. | Insurance Policies | 42 |
| E. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 42 |
| F. | Reservation of Rights | 43 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .... 43**
| A. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | | 43 |
|   | 1. | Delivery of Distributions in General | 43 |
|   | 2. | Minimum; De Minimis Distributions | 43 |
|   | 3. | Undeliverable Distributions and Unclaimed Property | 43 |
| B. | Manner of Payment | | 44 |
| C. | Compliance Matters | | 44 |
| D. | Allocation Between Principal and Accrued Interest | | 44 |
| E. | Setoffs and Recoupment | | 44 |

**ARTICLE VII. RESERVES ADMINISTERED BY THE GUC TRUSTEE .... 44**
| A. | Establishment of Reserve Accounts | 44 |
| B. | Administrative and Priority Claims Reserve | 45 |
| C. | Other Secured Claims Reserve | 45 |
| D. | Debtor's Lack of Interest in Distribution Reserve Accounts | 45 |

**ARTICLE VIII. PROCEDURES FOR RESOLVING CERTAIN CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS .... 45**
| A. | Applicability | 45 |
| B. | Allowance of Disputed Claims and Interests | 45 |
| C. | Claims Administration Responsibilities | 46 |
| D. | Estimation of Claims and Interests | 46 |
| E. | Adjustment to Claims Without Objection | 46 |
| F. | No Distributions Pending Allowance | 46 |
| G. | Disallowance of Claims | 46 |
| H. | Claim Amendment Deadline | 47 |
| I. | Distributions After Allowance | 47 |
| J. | No Interest | 47 |

**ARTICLE IX. SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS**....................**47**

    A.    Compromise and Settlement of Claims, Interests, and Controversies ...........................47

    B.    **Release of Liens** ................................................................................................................48

    C.    **Estate Release** .................................................................................................................48

    D.    **Consensual Claimant Release** .......................................................................................49

    E.    **Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9** .........................................................................................................................49

    F.    **Exculpation** .....................................................................................................................50

    G.    Recoupment ......................................................................................................................50

    H.    **Term of Injunctions or Stays** .......................................................................................50

    I.    **Channeling Injunction** ...................................................................................................50

        1.    Purpose ................................................................................................................50

        2.    Protections Afforded to Released Parties...........................................................50

        3.    Reservations........................................................................................................51

        4.    Enforcement........................................................................................................52

        5.    Termination of Channeling Injunction................................................................52

        6.    Tolling of Statute of Limitations.........................................................................52

    J.    **Injunction against Interference with the Plan** ...........................................................52

    K.    **Injunction against Interference with Opt-Out Rights** ...............................................52

    L.    Insurance Provision...........................................................................................................52

    M.    Claim Over........................................................................................................................53

    N.    Retention of Liability ........................................................................................................53

**ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE**....................**53**

    A.    Conditions Precedent to the Confirmation of the Plan......................................................53

    B.    Conditions Precedent to the Effective Date ......................................................................54

    C.    Waiver of Conditions Precedent .......................................................................................55

    D.    Substantial Consummation ...............................................................................................55

**ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** .............................**55**

    A.    Modification of Plan .........................................................................................................55

    B.    Revocation or Withdrawal of Plan....................................................................................55

**ARTICLE XII. RETENTION OF JURISDICTION**..............................................................................................**55**

    A.    Jurisdiction........................................................................................................................55

**ARTICLE XIII. MISCELLANEOUS PROVISIONS**...........................................................................................**57**

    A.    Additional Documents ......................................................................................................57

    B.    Statutory Fees....................................................................................................................57

    C.    Reservation of Rights........................................................................................................57

    D.    Successors and Assigns......................................................................................................57

    E.    Service of Documents .......................................................................................................57

    F.    Entire Agreement ..............................................................................................................59

    G.    Plan Supplement Exhibits .................................................................................................59

    H.    Non-Severability ...............................................................................................................59

    I.    Good Faith ........................................................................................................................59

    J.    Waiver or Estoppel............................................................................................................59

    K.    No Attorney's Fees ...........................................................................................................60

    L.    Closing of Chapter 11 Case...............................................................................................60

**INTRODUCTION**

The Official Committee of Tort Claimants, the Official Committee of Unsecured Creditors, and Tehum Care Services, Inc., *f/k/a* Corizon Health Services, the above-captioned debtor and debtor in possession hereby propose the following joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in Article I of the Plan.

Nothing in the Plan or the Plan Documents constitutes an admission by the Debtor as to the existence, merits, or amount of the Debtor's actual present or future liability on account of any Claim or demand except to the extent that such liability is specifically provided for in the Plan or the other Plan Documents in accordance with the Confirmation Order effective as of the Effective Date. All PI/WD Claims in Class 6 shall be finally determined by the PI/WD Trust in accordance with the PI/WD Trust Distribution Procedures, without any further right to seek review or adjudication of such claims by any court, including the Bankruptcy Court. All PI/WD Claims in Class 7 shall be finally determined in the Civil Justice System. Claimants who opt out of the Consensual Claimant Release shall have no right to recover from the PI/WD Trust or the GUC Trust.

Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, results of operations, historical financial information, projections, and future operations, as well as a summary and analysis of this Plan and certain related matters, including Distributions to be made under this Plan. The Disclosure Statement also provides a summary of the Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN WITH CARE IN EVALUATING HOW THE PLAN WILL AFFECT YOUR CLAIM(S) BEFORE: (I) VOTING TO ACCEPT OR REJECT THE PLAN; OR (II) MAKING ANY ELECTION ON YOUR BALLOT TO EXERCISE YOUR RIGHT TO PURSUE YOUR CLAIMS AGAINST ANY INSURER OR RELEASED PARTY.

Furthermore, there are other agreements and documents, some of which will be filed with the Bankruptcy Court, that are referenced in this Plan, the Plan Supplement, or the Disclosure Statement as exhibits and schedules. All such exhibits and schedules are incorporated into and are a part of this Plan as if set forth in full herein.

Subject to section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and this Plan, the Official Tort Claimants' Committee, the Official Committee of Unsecured Creditors, and the Debtor reserve the right, upon the written consent of each, to alter, amend, modify, revoke, or withdraw this Plan prior to its Substantial Consummation.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES**

*A.     Defined Terms*

Unless context otherwise requires, or defined above, the capitalized and italicized terms used herein have the respective meanings set forth below:

1.      "*Accrued Professional Fees*" means, as of any date, all of a Professional's then-unpaid accrued fees and reimbursable expenses for services rendered in the Chapter 11 Case up to and including such date, whether or not such Professional has then filed an application for the Allowance and payment of such fees and expenses. No amount of a Professional's fees or expenses denied by a Final Order of the Bankruptcy Court shall constitute Accrued Professional Fees.

2.      "*Administrative Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Case arising on or before the Effective Date that is allowable under section 503(b) of the Bankruptcy Code and entitled to priority under sections 364(c)(1), 503(b), 503(c), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code.

3.      "*Administrative Claims Bar Date*" means the deadline for filing requests for payment of Administrative Claims (other than Professional Fee Claims) which shall be the first Business Day that is thirty (30) days following the Effective Date, unless otherwise specifically set forth in the Plan or a Final Order.

4. "*Administrative and Priority Claims Reserve*" means a reserve established by the Debtor on the Effective Date to be used to pay Holders of all Allowed Priority Claims and Allowed Administrative Claims, to the extent the same have not been paid in full on or before the Effective Date.

5. "*Administrative Claims Objection Deadline*" means the first Business Day that is twenty-one (21) days following the Administrative Claims Bar Date, unless otherwise specifically set forth in the Plan or a Final Order.

6. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

7. "*Allowed*" means, with reference to any Claim: (a) a GUC Claim or an Indirect GUC Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date and as to which no objection has been interposed on or before the Claims Objection Deadline or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; (b) a GUC Claim or an Indirect GUC Claim that is listed in the Schedules and is not identified as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely Filed and as to which no objection has been interposed on or before the Claims Objection Deadline; (c) a GUC Claim or an Indirect GUC Claim that is resolved in a manner consistent with the GUC Trust Agreement and the Plan or that is Allowed pursuant to a Final Order of the Bankruptcy Court; (d) a PI/WD Claim or an Indirect PI/WD Claim that is resolved in a manner consistent with the PI/WD Trust Distribution Procedures and the Plan; or (e) an Administrative Claim or Professional Fee Claim that is Allowed under the Plan or in a Final Order of the Bankruptcy Court; *provided*, that notwithstanding the foregoing, unless expressly waived by the Plan, the Allowed amount of any Claim or Administrative Claim shall be subject to, and shall not exceed the limitations or maximum amounts permitted by, the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. "Allowance" and "Allowing" have correlative meanings.

8. "*Asset*" means any right, title, and interest of the Debtor, of any nature in property of any kind and form, wherever located and whether tangible or intangible, including real property, personal property, and intellectual property, as specified in section 541 of the Bankruptcy Code.

9. "*Assumed Executory Contract and Unexpired Lease List*" means the list of Executory Contracts and Unexpired Leases (with proposed cure amounts and assignee) that will be assumed by the Debtor and assigned to the applicable assignee, which list shall be included in the Plan Supplement.

10. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other claims, causes of action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s), cause(s) of action or remedy(ies) were commenced prior to the Effective Date.

11. "*Ballot*" means the forms of ballots approved by the Bankruptcy Court and provided to Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, and 10 to indicate their votes to accept or reject the Plan and, to extent applicable, make certain elections, as defined in the Solicitation Procedures Motion, to the extent consistent with the Solicitation Procedures Order.

12. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect and as may be hereafter amended.

13. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other court of the United States having jurisdiction over the Chapter 11 Case.

14. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as now in effect or hereafter amended.

15.     "*Bar Date*" means, as applicable, (i) the Claims Bar Date, (ii) any other date or dates established or to be established by this Plan or by a Final Order of the Bankruptcy Court setting a deadline by which Proofs of Claim must be Filed and (iii) the Administrative Claims Bar Date.

16.     "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

17.     "*Cash*" or "*$*" means legal tender of the United States of America.

18.     "*Causes of Action*" means any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.

19.     "*Channeled Claim*" means a Channeled GUC Trust Claim or a Channeled PI/WD Trust Claim, as the context may require.

20.     "*Channeled GUC Claim*" means a GUC Claim asserted by a GUC Claimant that does not opt out of the Consensual Claimant Release.

21.     "*Channeled GUC Trust Claim*" means (a) a Channeled GUC Claim and (b) an Indirect GUC Claim that is a Channeled Indirect Claim.

22.     "*Channeled Indirect Claim*" means an Indirect Claim asserted by an Indirect Claimant that does not opt out of the Consensual Claimant Release.

23.     "*Channeled PI/WD Claim*" means a PI/WD Claim asserted by a PI/WD Claimant (a) who does not opt out of the Consensual Claimant Release or (b) who does not opt out to pursue his or her PI/WD Claims in the Civil Justice System for the purpose of pursuing a recovery from one or more PI/WD Insurance Companies, *provided*, *however*, that an Opt-Out Insured PI/WD Claim shall become a Channeled PI/WD Claim if the Holder of the Opt-Out Insured PI/WD Claim elects or is deemed to elect to return to the PI/WD Trust under and in accordance with the PI/WD Trust Distribution Procedures.  A PI/WD Claim asserted by the Holder of an Opt-Out PI/WD Claim shall not be a Channeled PI/WD Claim.

24.     "*Channeled PI/WD Trust Claim*" means (a) a Channeled PI/WD Claim and (b) an Indirect PI/WD Claim that is a Channeled Indirect Claim.

25.     "*Channeling Injunction*" means the injunction set forth in **Article IX.I** to be issued pursuant to, and included in, the Confirmation Order.  For the avoidance of doubt, the Channeling Injunction shall only apply to Channeled Claims asserted by Consenting Claimants.

26.     "*Chapter 11 Case*" means the above-captioned chapter 11 bankruptcy case of the Debtor.

27.     "*Civil Justice System*" means any non-bankruptcy federal, state, foreign, cross-border, or international adjudicatory system, whether private or public, judicial, administrative, arbitral, or mediative, or adversarial or non-adversarial.

28.     "*Claim*" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code.

29.     "*Claimant*" means a Holder of a Claim.

30.     "*Claims Agent*" means Verita Global.

31.    "*Claims Bar Date*" means the last date to file Proofs of Claim against the Debtor, which was August 14, 2023, for all creditors including Governmental Units.

32.    "*Claims Objection Deadline*" means, (I) for Claims that are not channeled to the GUC Trust or the PI/WD Trust, the first Business Day that is one hundred eighty days (180) days after the Effective Date unless extended by order of the Bankruptcy Court; (II) for Channeled GUC Trust Claims, such Claims will be subject to the deadlines in the GUC Trust Agreement; and (III) for Channeled PI/WD Trust Claims, such Claims will be subject to the deadlines in the PI/WD Trust Distribution Procedures.

33.    "*Claims Register*" means the official register of Claims against and Interests in the Debtor maintained by the Claims Agent.

34.    "*Class*" means any category of Holders of Claims or Interests classified by this Plan pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

35.    "*Committees*" means, collectively, the UCC and the TCC.

36.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case. "Confirm," "Confirmed" and "Confirmability" shall have correlative meanings.

37.    "*Confirmation Date*" means the date that the Confirmation Order is entered on the docket of the Chapter 11 Case.

38.    "*Confirmation Hearing*" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be continued from time to time.

39.    "*Confirmation Objection Deadline*" means the date that is at least fourteen (14) Business Days prior to the date first set by the Bankruptcy Court for the Confirmation Hearing.

40.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Committees, the Debtor, and the Settling Parties.

41.    "*Consensual Claimant Release*" means the consensual releases granted by the Consenting Claimants in favor of the Released Parties as set forth in **Article IV.B.7** and **Article IX.D**.

42.    "*Consenting Claimant*" means a Consenting Indirect Claimant, a Consenting GUC Claimant, and/or Consenting PI/WD Claimant, regardless of whether any such Claimant receives a Distribution and so long as such Claimant has previously consented to the Consensual Claimant Release in accordance with the procedures set forth in the Plan.

43.    "*Consenting Indirect Claimant*" means:  (a) any Holder of an Indirect Claim that votes to accept or is deemed to accept the Plan **and** who does not check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release; and (b) any Holder of an Indirect Claim that abstains from voting on the Plan, votes to reject the Plan, or is deemed to reject the Plan **and** that does not (i) check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release or (ii) object to the Plan in respect of the Consensual Claimant Release.  No Holder of an Opt-Out Indirect Claim shall be a Consenting Indirect Claimant.

44.    "*Consenting GUC Claimant*" means:  (a) any Holder of a GUC Claim that votes to accept or is deemed to accept the Plan **and** that does not check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release; (b) any Holder of a GUC Claim that abstains from voting on the Plan, votes to reject the Plan, or is deemed to reject the Plan **and** that does not (i) check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release or (ii) object to the Plan in respect of the Consensual Claimant Release; and (c) any Holder of a GUC Claim that elects to receive an Expedited GUC Distribution.  No Holder of an Opt-Out GUC Claim shall be a Consenting GUC Claimant.

45.     "*Consenting PI/WD Claimant*" means:  (a) any Holder of a PI/WD Claim who votes to accept or is deemed to accept the Plan **and** who does not check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release, including any who elect to pursue insurance recoveries under and consistent with **Article IV.C.**; (b) any Holder of a PI/WD Claim who abstains from voting on the Plan, votes to reject the Plan, or is deemed to reject the Plan **and** who does not (i) check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release or (ii) object to the Plan in respect of the Consensual Claimant Release; and (c) any Holder of a PI/WD Claim who elects to receive an Expedited PI/WD Claim Distribution.  No Holder of an Opt-Out PI/WD Claim shall be a Consenting PI/WD Claimant.

46.     "*Consummation*" means the occurrence of the Effective Date.

47.     "*Convenience Claim*" means any GUC Claim in an Allowed amount that is less than or equal to Five Thousand Dollars ($5,000.00).

48.     "*Cooperation Agreement*" means the cooperation agreement between the PI/WD Trust and the GUC Trust to be entered into on the Effective Date governing the Retained Causes of Action and other joint assets to be received by and administered by the Trusts under the Plan.

49.     "*Court*" means the Bankruptcy Court, the District Court, or any court with appellate jurisdiction over any order entered by the Bankruptcy Court and/or the District Court in the Chapter 11 Case, as applicable.

50.     "*Cure Claim*" means a Claim based on the Debtor's default under an Executory Contract or an Unexpired Lease to be assumed and assigned by the Debtor under section 365 of the Bankruptcy Code, as set forth on the Assumed Executory Contract and Unexpired Lease List, other than with respect to a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

51.     "*Debtor*" means Tehum Care Services, Inc. f/k/a Corizon Health, Inc., a Texas corporation, in its capacity as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

52.     "*Debtor Professional Fee Claim*" means any Professional Fee Claim by a Professional who has been retained by the Debtor.

53.     "*Debtor Professional Fee Escrow Account*" means the segregated account established for the payment of Debtor Professional Fee Claims.

54.     "*DIP Claims*" means all Claims of the DIP Lender arising under and pursuant to the DIP Facility, the DIP Documents, and the DIP Order.

55.     "*DIP Credit Agreement*" means that certain *Senior Secured Superpriority Debtor-in-Possession Credit Agreement* attached to the DIP Order as Exhibit 1, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

56.     "*DIP Documents*" means, collectively, the DIP Credit Agreement, the DIP Order, and all other agreements, documents, and instruments related thereto, as may be amended, modified, restated, or supplemented from time to time.

57.     "*DIP Facility*" means the senior secured debtor in possession term loan facility, as provided for under the DIP Documents and authorized pursuant to the DIP Order.

58.     "*DIP Lender*" means M2 LoanCo, LLC, in its capacity as the DIP Lender (as defined in the DIP Order) as supplemented in subsequent orders.

59.     "*DIP Lien*" means any lien granted under the DIP Facility.

60. "*DIP Order*" means, collectively, (a) the *Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing and (V) Granting Related Relief* [Docket No. 243], and (b) all additional interim orders entered by the Bankruptcy Court authorizing the Debtor to incur postpetition obligations thereunder, and otherwise amending, supplementing, or modifying such authority from time to time, including the *Fifth Interim DIP Order (I) Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [Docket No. 1669].

61. "*Disallowed*" means any Claim or Interest or portion thereof that is Disputed, not Allowed or is otherwise disallowed under the Trust Documents or the Plan.

62. "*Disclosure Statement*" means that certain disclosure statement relating to the Plan, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code, which is in form and substance acceptable to the Committees, the Debtor, and the Settling Parties.

63. "*Disclosure Statement Hearing*" means the hearing held before the Bankruptcy Court to consider the adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, as such hearing may be continued from time to time.

64. "*Disclosure Statement Objection Deadline*" means the date that is at least fourteen (14) Business Days prior to the date first set by the Bankruptcy Court for the Disclosure Statement Hearing.

65. "*Disclosure Statement Order*" means an order entered by the Bankruptcy Court, in form and substance reasonably acceptable to the Committees, the Debtor, and the Settling Parties: (a) finding that the Disclosure Statement (including any amendment, supplement, or modification thereto) contains adequate information pursuant to section 1125 of the Bankruptcy Code; (b) fixing the amounts of Claims solely for voting purposes and not for purposes of distributions; (c) approving the Voting Procedures; and (d) authorizing solicitation of the Plan.

66. "*Disputed*" means any GUC Claim, Indirect GUC Claim, Convenience Claim, Secured Claim, Other Secured Claim, Priority Tax Claim, Other Priority Claim, or Interest or portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely Filed with the Bankruptcy Court, to the extent the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

67. "*Distribution*" means Cash, property, interests in property or other value distribution to Holders of Allowed Claims, or their respective designated agents, including the GUC Trust Beneficiaries and the PI/WD Trust Beneficiaries, as applicable under this Plan, or any Trust Agreement governing the Trusts created under this Plan.

68. "*Distribution Date*" means the date on which the GUC Trustee or the PI/WD Trustee, as applicable, first makes distributions to Holders of Allowed Channeled GUC Trust Claims or Holders of Allowed Channeled PI/WD Trust Claims as provided in the Plan and the Trust Documents.

69. "*Distribution Reserve Accounts*" means the Cash reserve accounts established pursuant to this Plan, including but not limited to the Administrative and Priority Claims Reserve and the Other Secured Claims Reserve. The term "Distribution Reserve Accounts" does not include the Professional Fee Escrow Accounts.

70. "*District Court*" means the United States District Court for the Southern District of Texas.

71. "*Effective Date*" means the later of the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in **Article X.B** have been satisfied or waived. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

72. "*Encumbrance*" means, with respect to any property (whether real or personal, tangible or intangible), any mortgage, lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation.

73. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

74. "*ERC Fund*" means a segregated account to be funded by the proceeds of employee retention tax credits received by the Debtor or the GUC Trust and the PI/WD Trust, as applicable.

75. "*Estate*" means the estate of the Debtor as created under section 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

76. "*Estate Assets*" means all Assets held by the Estate prior to the Effective Date.

77. "*Estate Causes of Action*" means Causes of Action owned, held, or capable of being asserted by, under, through or on behalf of the Debtor or its Estate, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions under chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise. Without limiting the foregoing, Estate Causes of Action shall include: (a) Causes of Action that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable state law, including Causes of Action seeking to impose liability based on (i) the doctrine of successor liability, or (ii) the doctrines of alter ego or veil piercing; (b) Causes of Action that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is common to all creditors of the Debtor and can be asserted by the Debtor under applicable state law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.

78. "*Estate Party Settlement*" means the settlement among the Committees, the Debtor and the Settling Parties set forth in **Article IV.B**.

79. "*Estate Release*" means the release of the Released Estate Causes of Action to be given by the Debtor and its Estate to the Released Parties, as set forth in **Article IV.B.9** and **Article IX.C**.

80. "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the TCC, (b) the members of the TCC, (d) the UCC, and (e) the members of the UCC.

81. "*Expedited GUC Distribution*" means a one-time Cash payment from the GUC Trust in the amount of Five Thousand Dollars ($5,000.00), to be made to a Holder of a GUC Claim that irrevocably elects, as evidenced on a Ballot timely and validly submitted by such Holder, to have such GUC Claim reduced to Five Thousand Dollars ($5,000.00) and paid (upon Allowance) in full and final satisfaction of such GUC Claim.

82. "*Expedited PI/WD Claim Distribution*" means a one-time Cash payment from the PI/WD Trust in the amount of Five Thousand Dollars ($5,000.00), to be made to a Holder of a PI/WD Claim that irrevocably elects, as evidenced on a Ballot timely and validly submitted by such Holder, or at such later time as permitted by the PI/WD Trust Distribution Procedures, to have such PI/WD Claim reduced to Five Thousand Dollars ($5,000.00) and paid (upon Allowance) in full and final satisfaction of such PI/WD Claim.

83. "*Executory Contract*" means a contract to which the Debtor is a party, including all amendments thereto, that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

84. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court or its authorized designee, including with respect to a Proof of Claim or Proof of Interest, the Claims and Noticing Agent.

85. "*Final Decree*" means the decree contemplated in Bankruptcy Rule 3022.

86. "*Final Order*" means an order or judgment of the Bankruptcy Court, or the District Court in the event the reference is withdrawn in respect of a contested matter or adversary proceeding, entered by the Clerk of the Bankruptcy Court, or the District Court, as applicable, on the docket in the Chapter 11 Case (whether in the Bankruptcy Court or the District Court), which has not been reversed, modified, amended, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reconsideration, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reconsideration, re-argument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reconsideration, re-argument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or the District Court, as applicable, shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari shall have been denied, or a new trial, reconsideration, re-argument, or rehearing shall have been denied or resulted in no modification or amendment of such order or judgment, and the time to take any further appeal, petition for certiorari, or move for a new trial, reconsideration, re-argument, or rehearing shall have expired; provided, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure has been or may be filed with respect to such order or judgment. The susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code shall not render a Final Order not a Final Order.

87. "*Final Payment Date*" means the date that the Final Settlement Payment is received by the Trusts.

88. "*Final Settlement Payment*" is defined in **Article IV.B.1**.

89. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

90. "*GUC Claim*" means any Claim against the Debtor that is not a PI/WD Claim, an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim. The term GUC Claim does not include Indirect GUC Claims. The term GUC Claim includes any GUC Claim against the Debtor regardless of whether such Claim is alleged to have been allocated to CHS TX, Inc. or YesCare Corp. under the Plan of Divisional Merger.

91. "*GUC Claimant*" means the Holder of a GUC Claim.

92. "*GUC Data Records*" means all files, documents, and information which the Debtor or a Settling Party has acquired, and which contain evidence potentially related to GUC Claims, Indirect GUC Claims, or Retained GUC Trust Causes of Action.

93. "*GUC Data Transfer*" means the transfer of the GUC Data Records to the GUC Trust so as to enable the recipient to have full access and utilization of the Data Records to the same extent available to the transferor.

94. "*GUC Insurance Action*" means any claim, Cause of Action, or right of the Debtor, under the laws of any jurisdiction, against any Insurance Company, arising from or related to a GUC Insurance Policy, including: (a) any such Insurance Company's failure to provide coverage or otherwise pay under a GUC Insurance Policy; (b) the refusal of any GUC Insurance Company to compromise and settle any GUC Claim or Indirect GUC Claim under or pursuant to any GUC Insurance Policy; (c) the interpretation or enforcement of the terms of any GUC Insurance Policy with respect to any GUC Claim or Indirect GUC Claim; (d) any conduct by any Insurance Company in respect to a GUC Claim or an Indirect GUC Claim constituting "bad faith" conduct or that could otherwise give rise to extra-

contractual damages, or other wrongful conduct under applicable law; or (e) any right to receive proceeds held by such Person with respect to a GUC Insurance Policy.

95.     "*GUC Insurance Action Recoveries*" means the right to receive the proceeds or benefits of any GUC Insurance Action

96.     "*GUC Insurance Assignment*" means the assignment and transfer to the GUC Trust of (a) the GUC Insurance Actions, (b) the GUC Insurance Action Recoveries, and (c) all other rights, claims, benefits, or Causes of Action of the Debtor under or with respect to the GUC Insurance Policies (but not the policies themselves).

97.     "*GUC Insurance Company*" means any Insurance Company that may have liability under a GUC Insurance Policy.

98.     "*GUC Insurance Policy*" means any Insurance Policy currently or previously in effect at any time on or before the Effective Date naming the Debtor (or any past or present predecessor or subsidiary of the Debtor) as an insured (whether as the primary or additional insured, or by virtue of being a subsidiary to the named insured), or otherwise alleged to afford the Debtor insurance coverage, upon which any claim could have been, has been, or may be made with respect to any GUC Claim or Indirect GUC Claim, including the policies listed in the Schedules.

99.     "*GUC Trust*" means that certain trust that will come into existence on the Effective Date to address and resolve Channeled GUC Trust Claims which shall be formed pursuant to and governed by the provisions of the Plan and the GUC Trust Agreement.

100.     "*GUC Trust Agreement*" means the agreement establishing and governing the GUC Trust dated as of the Effective Date.

101.     "*GUC Trust Assets*" means all Assets and Estate Assets allocated to the GUC Trust pursuant to the GUC Trust Agreement and the Plan, as applicable, and in each case, as amended, supplemented, restated, or otherwise modified from time to time, including:  (a) 50% of the Settlement Payments; (b) 50% of the ERC Fund; (c) 50% interest in the Retained Causes of Action and the proceeds thereof; (d) Retained GUC Trust Causes of Action; (e) the GUC Insurance Assignment; (f) the GUC Data Transfer; (g) 50% of the Debtor's remaining Assets, including Cash, (h) any other funds or Assets allocated to the GUC Trust under the Plan; and (h) any income, profits, gains, and proceeds realized, received, or derived from GUC Trust Assets.

102.     "*GUC Trust Beneficiaries*" means the Holders of Channeled GUC Trust Claims whose Claims are to be resolved by the GUC Trust under the Plan.

103.     "*GUC Trust Documents*" means, collectively, (a) the GUC Trust Agreement, (b) the Confirmation Order, and (c) any other agreements, instruments, and documents governing the establishment, administration, and operation of the GUC Trust, as the same may be amended or modified from time to time in accordance with the terms thereof.

104.     "*GUC Trustee*" means the trustee of the GUC Trust, who shall be selected by the UCC, in consultation with the Debtor, and who shall be named in the Plan Supplement, and is thereafter subject to the provisions of the GUC Trust Agreement.

105.     "*Holder*" means any Person or Entity holding a Claim or an Interest.

106.     "*Impaired*" means, with respect to a Class of Claims or Interests or a Claim or Interest, a Class of Claim or Claim or Interest or an Interest that is "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

107.     "*Indirect Claims*" means, collectively, Indirect GUC Claims and Indirect PI/WD Claims.

108. "*Indirect GUC Claim*" means a Claim against the Debtor for contribution, indemnification, reimbursement, or subrogation of any entity that is liable with the Debtor on a GUC Claim held by another creditor, whether contractual or implied by law and whether in the nature of or sounding in contract, tort, warranty, statute, common law, or any other theory of law or equity whatsoever.

109. "*Indirect PI/WD Claim*" means a Claim against the Debtor for defense, contribution, indemnification, reimbursement, or subrogation of any entity that is liable with the Debtor on a PI/WD Claim held by another creditor, whether contractual or implied by law and whether in the nature of or sounding in contract, tort, warranty, statute, common law, or any other theory of law or equity whatsoever.

110. "*Indirect Claimant*" means the Holder of an Indirect Claim.

111. "*Initial Settlement Amount*" is defined in **Article IV.B.1**.

112. "*Injunctions*" means the Insurance Entity Injunction, and any other injunctions entered by the Bankruptcy Court in connection with Confirmation of the Plan.

113. "*Insider*" means an "insider" as defined in section 101(31) of the Bankruptcy Code.

114. "*Installment Settlement Payment*" is defined in **Article IV.B.1**.

115. "*Insurance Action*" means a GUC Insurance Action or a PI/WD Insurance Action, as the context may require.

116. "*Insurance Action Recoveries*" means the right to receive the proceeds or benefits of any Insurance Action.

117. "*Insurance Company*" means any insurance company, insurance syndicate, coverage holder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any Insurance Policy.

118. "*Insurance Coverage Defense*" means all defenses at law or in equity that any Insurance Company may have under applicable law or under any Insurance Policy to provide insurance coverage or a defense or to perform any other action arising out of or related to PI/WD Claims, Indirect PI/WD Claims, GUC Claims or Indirect GUC Claims or in response to a PI/WD Insurance Action, except for (a) any defense that the PI/WD Insurance Assignment or the GUC Insurance Assignment is invalid or unenforceable or otherwise breaches the terms of such coverage; or (b) any defense that the Debtor filed for bankruptcy and/or the discharge or release of the Debtor from liability for any Claims pursuant to the Plan, breaches the terms of such coverage; or that either of the foregoing (a) through (b), operates to, or otherwise results in, the elimination of or the reduction in any obligation such Insurance Company may have under rights assigned to the PI/WD Trust or the GUC Trust, including in providing coverage for liabilities assumed by the PI/WD Trust or the GUC Trust that were or are liabilities of the Debtor.

119. "*Insurance Policy*" means any insurance policies issued prior to the Effective Date to the Debtor or under which the Debtor has sought or may seek coverage.

120. "*Insurance Proceeds*" means any proceeds recovered under the Insurance Policies.

121. "*Interim Compensation Order*" means the *Amended Agreed Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 1646].

122. "*Interest*" means any equity security, as defined in section 101(16) of the Bankruptcy Code.

123. "*IRS*" means the Internal Revenue Service.

124. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

125. "*Local Bankruptcy Rules*" means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas as now in effect or hereafter amended.

126. "*Mediator*" means Judge Christopher S. Sontchi (ret.) in his capacity as a Court-appointed mediator in the Chapter 11 Case.

127. "*Non-Released Parties*" means (a) James Gassenheimer, Charles Gassenheimer, James Hyman, Michael Flacks, and Flacks Group LLC, and, as appropriate, their predecessors, successors, assigns, and present and former shareholders, members, Affiliates, subsidiaries, employees, agents, brokers, adjusters, managing agents, claims gents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such; (b) any Entity co-liable with one or more Released Parties, including a Governmental Unit, on any Claim; and (c) any PI/WD Insurance Company and GUC Insurance Company.

128. "*Opt-Out GUC Claim*" means a GUC Claim asserted by GUC Claimant that opts out of the Consensual Claimant Release and, by doing so, irrevocably elects to pursue its GUC Claim in the Civil Justice System with no right to return to or recover from the GUC Trust.

129. "*Opt-Out Insured PI/WD Claim*" means a PI/WD Claim asserted by a PI/WD Claimant who elects on his or her Ballot to pursue his or her PI/WD Claims in the Civil Justice System for the purpose of pursuing a recovery from one or more PI/WD Insurance Companies, subject to the right to return to and recover from the PI/WD Trust under and in accordance with the PI/WD Trust Distribution Procedures, and who does **not** opt out of the Consensual Claimant Release.

130. "*Opt-Out PI/WD Claim*" means a PI/WD Claim asserted by a PI/WD Claimant who opts out of the Consensual Claimant Release and who, by doing so, irrevocably elects to pursue his or her PI/WD Claim in the Civil Justice System with no right to return to or recover from the PI/WD Trust.

131. "*Opt-Out Indirect Claim*" means an Indirect Claim asserted by Indirect Claimant that opts out of the Consensual Claimant Release and, by doing so, irrevocably elects to pursue its Indirect Claim in the Civil Justice System with no right to return to or recover from the Trusts.

132. "*Opt-Out Release Form*" means the form approved by the Bankruptcy Court for opting out of the Consensual Claimant Release. Claimants may vote to accept the Plan on a Ballot and, at the same time, elect to opt out of the Consensual Claimant Release.

133. "*Ordinary Course Professional*" means a Professional employed by the Debtor pursuant to the Ordinary Course Professionals Order.

134. "*Ordinary Course Professionals Order*" means the *Amended Order (I) Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 638].

135. "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Case.

136. "*Other Secured Claim*" means any Secured Claim, other than a DIP Claim.

137. "*Other Secured Claims Reserve*" means a reserve established by the Debtor on the Effective Date to be used to pay Holders of all Other Secured Claims, to the extent the same have not been paid prior to the Effective Date.

138. "*Payment Agreement*" means the Payment Agreement for Insurance and Risk Management Services dated January 1, 2012, by and between National Union Fire Insurance Company of Pittsburgh, PA and the Debtor that was allocated to CHS, TX, Inc. along with certain collateral to secure the obligations thereunder, pursuant to the Plan of Divisional Merger.

139. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code and includes any individual, corporation, general or limited partnership, limited liability company, joint venture, estate, trust, benefit plan, unincorporated organization, business, syndicate, sole proprietorship, association, organization, labor union or other entity, or governmental unit.

140. "*Petition Date*" means February 13, 2023, the date on which the Debtor commenced the Chapter 11 Case.

141. "*PI/WD*" means personal injury or wrongful death.

142. "*PI/WD Claim*" means any unsecured Claim against the Debtor that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim within the meaning of 28 U.S.C. § 157(b)(2)(B), including any PI/WD Claim against the Debtor regardless of whether such Claim is alleged to have been allocated to CHS TX, Inc. or YesCare Corp. under the Plan of Divisional Merger. The term PI/WD Claim does not include Indirect PI/WD Claims.

143. "*PI/WD Claimant*" means the Holder of a PI/WD Claim.

144. "*PI/WD Data Records*" means all files, documents, and information which the Debtor or a Settling Party has acquired, and which contain evidence potentially related to PI/WD Claims, Indirect PI/WD Claims, or Retained PI/WD Trust Causes of Action, including all documents reflecting insurance retention, expense costs and/or deductibles regarding PI/WD Claims.

145. "*PI/WD Data Transfer*" means the transfer of the PI/WD Data Records to the PI/WD Trust so as to enable the recipient to have full access and utilization of the Data Records to the same extent available to the transferor.

146. "*PI/WD Insurance Action*" means any claim, Cause of Action, or right of the Debtor, under the laws of the applicable jurisdiction, against any Insurance Company, arising from or related to a PI/WD Insurance Policy, including: (a) any such Insurance Company's failure to provide coverage or otherwise pay under a PI/WD Insurance Policy; (b) the refusal of any PI/WD Insurance Company to compromise and settle any PI/WD Claim under or pursuant to any PI/WD Insurance Policy; (c) the interpretation or enforcement of the terms of any PI/WD Insurance Policy with respect to any PI/WD Claim; (d) any conduct by any Insurance Company in respect to a PI/WD Claim constituting "bad faith" conduct or that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law; or (e) any right to receive proceeds held by such Person with respect to a PI/WD Insurance Policy.

147. "*PI/WD Insurance Action Recoveries*" means the right to receive the proceeds or benefits of any PI/WD Insurance Action.

148. "*PI/WD Insurance Assignment*" means the assignment and transfer to the PI/WD Trust of (a) the PI/WD Insurance Actions, (b) the PI/WD Insurance Action Recoveries, and (c) all other rights, claims, benefits, or Causes of Action of the Debtor under or with respect to the PI/WD Insurance Policies (but not the policies themselves).

149. "*PI/WD Insurance Company*" means any Insurance Company that may have liability under a PI/WD Insurance Policy.

150. "*PI/WD Insurance Policy*" means any Insurance Policy currently or previously in effect at any time on or before the Effective Date naming the Debtor (or any past or present predecessor or subsidiary of the Debtor) as an insured (whether as the primary or additional insured, or by virtue of being a subsidiary to the named insured), or otherwise alleged to afford the Debtor insurance coverage, upon which any claim could have been, has been, or may

be made with respect to any PI/WD Claim or Indirect PI/WD Claim, including the policies listed on Schedule 2 to the Disclosure Statement.

151. "*PI/WD Trust*" means that certain trust that will come into existence on the Effective Date to address and resolve Channeled PI/WD Trust Claims, which shall be formed pursuant to, and governed by, the provisions of the Plan and the PI/WD Trust Agreement.

152. "*PI/WD Trust Agreement*" means the agreement establishing and governing the PI/WD Trust dated as of the Effective Date.

153. "*PI/WD Trust Assets*" means all Assets and Estate Assets allocated to the PI/WD Trust pursuant to the PI/WD Trust Agreement and the Plan, as applicable, and in each case, as amended, supplemented, restated, or otherwise modified from time to time, including: (a) 50% of the Settlement Payments; (b) 50% of the ERC Fund; (c) 50% interest in the Retained Causes of Action and the proceeds thereof; (d) Retained PI/WD Trust Causes of Action; (e) the PI/WD Insurance Assignment; (f) the PI/WD Data Transfer; (g) 50% of the Debtor's remaining Assets, including Cash, (h) any other funds or Assets allocated to the PI/WD Trust under the Plan; and (h) any income, profits, gains, and proceeds realized, received, or derived from PI/WD Trust Assets.

154. "*PI/WD Trust Beneficiaries*" means the Holders of Channeled PI/WD Trust Claims whose Claims are to be resolved by the PI/WD Trust under the Plan.

155. "*PI/WD Trust Distribution Procedures*" means the trust distribution procedures for Channeled PI/WD Trust Claims, as the same may be amended or modified from time to time in accordance with the terms thereof and the PI/WD Trust Agreement, which shall be acceptable to the TCC and the UCC.

156. "*PI/WD Trust Documents*" means, collectively, (a) the PI/WD Trust Agreement, (b) the PI/WD Trust Distribution Procedures, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the PI/WD Trust, as the same may be amended or modified from time to time in accordance with the terms thereof.

157. "*PI/WD Trustee*" means the trustee of the PI/WD Trust, who shall be selected by the TCC, in consultation with the UCC, and who shall be named in the Plan Supplement, and is thereafter subject to the provisions of the PI/WD Trust Agreement.

158. "*Plan*" means this chapter 11 plan, as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

159. "*Plan of Divisional Merger*" means that certain *Agreement and Plan of Divisional Merger,* dated as of May 1, 2022, by Corizon Health, Inc.

160. "*Plan Document*" means any of the documents, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement, all of which shall be in form and substance as provided herein.

161. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed in one or more parts or volumes at least fourteen (14) calendar days prior to the Confirmation Objection Deadline, as the same may be amended, supplemented, or modified from time to time on the terms set forth herein, containing, without limitation: (a) the Assumed Executory Contract and Unexpired Lease List; (b) a schedule of Retained Causes of Action; (c) the Cooperation Agreement; (d) the Settlement Payment Schedule; (e) the identity of the GUC Trustee; (f) the identity of the PI/WD Trustee; (g) the identity of the GUC Trust Advisory Committee; and (h) the identity of the PI/WD Trust Advisory Committee.

162. "*Post-Effective Date Debtor*" means the Debtor, the GUC Trust, or any successor thereto after the Effective Date responsible for winding down the Debtor's Estate and implementing the terms of the Plan.

163.     "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

164.     "*Priority Tax Claim*" means any Claim of a Governmental Unit against the Debtor that is entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

165.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in such Class.

166.     "*Professional*" means any Person retained by the TCC, the UCC, or the Debtor pursuant to a Final Order of the Bankruptcy Court entered under sections 327, 328, 330, 331, 363, or 1103 of the Bankruptcy Code.

167.     "*Professional Fee Claim*" means any Claim of a Professional or other Person for Allowance of compensation and/or reimbursement of costs or expenses incurred in the Chapter 11 Case for the period from the Petition Date to and including the Effective Date under sections 328, 330 or 331 of the Bankruptcy Code.

168.     "*Professional Fee Escrow Accounts*" means the segregated accounts funded from Cash as of the Effective Date in an amount equal to the Professional Fee Escrow Amount as of such date, solely for the purpose of paying all Allowed Professional Fee Claims in accordance with the Plan.

169.     "*Professional Fee Escrow Amount*" means the aggregate Accrued Professional Fees as of the Effective Date, as estimated by the Professionals in accordance with **Article II.B**.

170.     "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 and 3002.

171.     "*Proof of Interest*" means a proof of Interest Filed in the Debtor's Chapter 11 Case.

172.     "*Proponents*" means the TCC, the UCC and the Debtor, together, as joint proponents of the Plan.

173.     "*Released Claims*" means all claims or Causes of Action, including any Estate Causes of Action, against a Released Party that are released under the Plan and the Confirmation Order.

174.     "*Released Estate Cause of Action*" means any Estate Cause of Action against a Released Party that is released under **Article IV.B.9** and **Article IX.C** of the Plan.

175.     "*Released Parties*" means collectively the following, in each case in its capacity as such with each being a "*Released Party*":  (a) the Debtor; (b) Russell Perry, the Debtor's Chief Restructuring Officer; (c) the Committees and their respective members; (d) the Professionals; (e) the GUC Trustee; (f) the PI/WD Trustee; (g) the Settlement Parties; (h) M2 EquityCo LLC; (i) Valitás Intermediate Holdings Inc.; (j) Valitás Health Services, Inc.; (k) M2 Pharmacorr Equity Holdings LLC; (l) Pharmacorr/M2 LLC; (m) Pharmacorr Holdings LLC; (n) Endeavor Distribution LLC; (o) Yes Care Holdings LLC; (p) Sigma RM, LLC; (q) DG Realty Management LLC; (r) Scaracor LLC; (s) Yitzchak Lefkowitz a/k/a Isaac Lefkowitz; (t) Sara Ann Tirschwell; (u) Ayodeji Olawale Ladele; (v) Beverly Michelle Rice; (w) Jeffrey Scott King; (x) Jennifer Lynne Finger; (y) Frank Jeffrey Sholey; (z) FTI Capital Advisors, LLC, and for each Entity listed in (a) through (z), each of their respective current and former officers, directors, managers, employees, contractors, agents, attorneys, and other professional advisors, Insiders, and Affiliates; *provided*, *however*, that a Non-Released Party shall not be a "Released Party."

176.     "*Releasing Parties*" means collectively the following, in each case in its capacity as such with each being a "*Releasing Party*":  (a) the Debtor; (b) the Settlement Parties; and (c) Consenting Claimants.

177.     "*Retained Causes of Action*" means all Causes of Action that are Estate Causes of Action, including (a) those Causes of Action scheduled in the Plan Supplement as "retained;" (b) all defenses to any Claim, including all defenses under section 502 of the Bankruptcy Code; (c) with respect to any Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted;

14 of 61

(d) any other Causes of Action that the Debtor would have had under applicable law if the Chapter 11 Case had not occurred (including any Causes of Action against co-defendants); and (e) any Cause of Action of the Debtor under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise. Retained Causes of Action shall not include the Released Estate Causes of Action to the extent such Causes of Action are released pursuant to the Estate Release. For the avoidance of doubt, the term Retained Causes of Action shall include the Released Estate Causes of Action if the Estate Release does not go into effect due to a Settlement Payment Default or is otherwise voided under **Article IV.B.7**, **Article IV.B.9** or **Article IV.B.12**.

178.     "*Retained GUC Trust Causes of Action*" means, in addition to the Retained Causes of Action transferred to the GUC Trust pursuant to the Plan, (a) all defenses to any GUC Claim or any Indirect GUC Claim, including all defenses under section 502 of the Bankruptcy Code; (c) with respect to any GUC Claim or any Indirect GUC Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted; (d) any other Causes of Action that the Debtor would have had under applicable law if the Chapter 11 Case had not occurred (including any Causes of Action against co-defendants) relating to a GUC Claim or an Indirect GUC Claim; and (e) any Cause of Action of the Debtor under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to a GUC Claim or an Indirect GUC Claim.

179.     "*Retained PI/WD Trust Causes of Action*" means, in addition to the Retained Causes of Action transferred to the PI/WD Trust pursuant to the Plan, (a) all defenses to any PI/WD Claim or any Indirect PI/WD Claim, including all defenses under section 502 of the Bankruptcy Code; (c) with respect to any PI/WD Claim or any Indirect PI/WD Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted; (d) any other Causes of Action that the Debtor would have had under applicable law if the Chapter 11 Case had not occurred (including any Causes of Action against co-defendants) relating to a PI/WD Claim or an Indirect PI/WD Claim; and (e) any Cause of Action of the Debtor under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to a PI/WD Claim or an Indirect PI/WD Claim.

180.     "*Schedules*" means, collectively, the schedule of assets and liabilities, schedule of Executory Contracts and Unexpired Leases and statement of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

181.     "*Secured*" means, with respect to any Claim, the extent to which the Claim is: (a) secured by a Lien on property of a Debtor's Estate as set forth in the Plan, as agreed to by the holder of such Claim and the Debtor, or as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code, but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

182.     "*Settlement Parties*" or "*Settling Parties*" means, collectively, YesCare Corp., its wholly owned subsidiaries (including CHS TX, Inc.); Geneva Consulting, LLC; Perigrove 1018, LLC; Perigrove, LLC; M2 HoldCo, LLC; M2 LoanCo, LLC; and PharmaCorr LLC.

183.     "*Settling Parties Releases*" means those releases given by the Settling Parties to the Estate.

184.     "*Settlement Payment*" is defined in **Article IV.B.1**.

185.     "*Settlement Payment Cure Period*" is defined in **Article IV.B.2**.

186.     "*Settlement Payment Default*" is defined in **Article IV.B.2**.

187.     "*Settlement Payment Default Cure Notice*" is defined in **Article IV.B.2**.

188.    "*Settlement Payment Schedule*" means the payment schedule for the Installment Settlement Payments.

189.    "*Solicitation Procedures Motion*" means the *Joint Motion of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor for Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Form and Manner of Notice to Claim Holders, (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief*, as filed and as may be amended from time and time.

190.    "*Solicitation Procedures Order*" means any order of the Bankruptcy Court establishing the procedures for the solicitation of votes to accept or reject the Plan.

191.    "*Statute of Limitations*" means any statutes of limitations, statutes of repose, or similar rules of law or equity that may preclude a party from commencing, filing, or continuing any Claim or Cause of Action against another party, including the Released Parties.

192.    "*Substantial Consummation*" has the meaning set forth in 11 U.S.C. § 1101(2).

193.    "*Synergi*" means Synergi Partners, Inc.

194.    "*Synergi Order*" means the *Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 365(a) and Fed. R. Bankr. P. 6006 (I) Authorizing the Assumption of a Client Services Agreement, as Modified; and (II) Granting Related Relief* (Docket No. 723).

195.    "*TCC*" means the Official Tort Claimants' Committee appointed in the Chapter 11 Case by the U.S. Trustee, as the same may be reconstituted from time to time.

196.    "*TCC Professional Fee Claim*" means any Professional Fee Claim by a Professional who has been retained by the TCC.

197.    "*TCC Professional Fee Escrow Account*" means the segregated account established for the payment of TCC Professional Fee Claims.

198.    "*Transfer*" has the meaning set forth in section 101(54) of the Bankruptcy Code.  "Transferee" shall have a correlative meaning.

199.    "*Trust*" or "*Trusts*" means either or both of the GUC Trust and the PI/WD Trust, as the context may require.

200.    "*Trust Agreement*" or "*Trust Agreements*" means either or both of the GUC Trust Agreement and the PI/WD Trust Agreement, as applicable.

201.    "*Trust Documents*" means, collectively, (a) the Trust Agreements, (b) the PI/WD Trust Distribution Procedures, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof.

202.    "*Trustee*" or "*Trustees*" means either or both of the GUC Trustee and the PI/WD Trustee, as applicable.

203.    "*UCC*" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee, as the same may be reconstituted from time to time.

204.    "*UCC Professional Fee Claim*" means any Professional Fee Claim by a Professional who has been retained by the UCC.

205.    "*UCC Professional Fee Escrow Account*" means the segregated account established for the payment of UCC Professional Fee Claims.

206.    "*U.S.*" means the United States of America.

207.    "*Unexpired Lease*" means a lease to which the Debtor is a party, including all amendments thereto, that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

208.    "*Uniform Commercial Code*" means the Uniform Commercial Code as adopted by the applicable state.

209.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

210.    "*U.S. Trustee*" means the Office of the United States Trustee.

211.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6).

212.    "*Voting PI/WD Claimants*" means Holders of PI/WD Claims who prior to the Voting Deadline timely filed, or were deemed to have timely filed, a personalized Proof of Claim, or whose PI/WD Claims are scheduled as undisputed, noncontingent, and liquidated in the Schedules.

213.    "*Voting Deadline*" means the date established by the Solicitation Procedures Order by which all Persons entitled to vote on the Plan must vote to accept or reject the Plan.

214.    "*Voting Procedures*" means those certain procedures approved by the Bankruptcy Court for soliciting and tabulating votes to accept or reject the Plan cast by holders of Claims entitled to vote on the Plan.  The Voting Procedures shall be in form and substance reasonably acceptable to the Committees, the Debtor, and the Settling Parties.

215.    "*Wind-Down Officer*" means the person described in **Article IV.F**.

*B.      Rules of Interpretation*

For purposes of the Plan, unless otherwise provided herein:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in the Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise stated, all references in the Plan to Articles are references to Articles of the Plan, as the same may be amended or modified from time to time in accordance with the terms hereof; (6) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Article or clause contained in the Plan; (7) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (9) any effectuating provisions, including those relating to PI/WD Claims,

may be interpreted by the PI/WD Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Person, and such interpretation shall control in all respects to the extent permitted by the PI/WD Trust Agreement, the PI/WD Trust Distribution Procedures and the Plan, as applicable; (10) any effectuating provisions, including those relating to GUC Claims, may be interpreted by the GUC Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Person, and such interpretation shall control in all respects to the extent permitted by the GUC Trust Agreement and the Plan, as applicable; (11) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (12) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (12) any reference to a Person's "subsidiaries" means its direct and indirect subsidiaries.

### C. *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### D. *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan, except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control; *provided , that*, corporate governance matters relating to the Debtor, or the GUC Trust or PI/WD Trust, as applicable, shall be governed by the laws of the state or other jurisdiction of incorporation or organization of such entity, as applicable. For the avoidance of doubt, the substantive law governing any Claim shall be determined by applicable choice of law principles and without regard to the Chapter 11 Case.

### E. *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

### F. *Controlling Document*

In the event of an inconsistency (i) between the Confirmation Order, this Plan, the Plan Supplement or any other instrument or document created or executed pursuant to this Plan, and any Trust Agreement, the Confirmation Order shall control; (ii) between this Plan, the Plan Supplement or any other instrument or document created or executed pursuant to this Plan, and any Trust Agreement, this Plan shall control; (iii) between the Plan Supplement or any other instrument or document created or executed pursuant to this Plan and any Trust Agreement, the Plan Supplement or any other instrument or document created or executed pursuant to this Plan shall control; and (iv) between this Plan and the Disclosure Statement, this Plan shall control.

The provisions of this Plan and the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each and the Trust Documents shall be incorporated by reference into the Confirmation Order; *provided*, that, if there is determined to be any inconsistency between any provisions of this Plan and any provision of the Confirmation Order and such inconsistency cannot be reconciled, the provisions of the Confirmation Order shall govern and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, solely to the extent of such inconsistency.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Claims have not been classified and shall be treated as follows:

A.      *Administrative Claims*

In full and final satisfaction, settlement, release, and discharge of any Allowed Administrative Claim against the Debtor, except to the extent the Debtor (with the consent of the TCC and the UCC) and a Holder of an Allowed Administrative Claim (other than Professional Fee Claims, which are governed by **Article II.B**) against the Debtor agrees to a less favorable treatment of such Administrative Claim, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Administrative Claim shall receive Cash in an amount equal to the Allowed amount of such Administrative Claim.

Except as otherwise provided by a Final Order entered by the Bankruptcy Court, requests for payment of Administrative Claims must be Filed and served on the Debtor, the TCC and the UCC no later than the Administrative Claims Bar Date. Each request for payment of an Administrative Claim must set forth, at a minimum, (a) the name of the Holder of the Administrative Claim, (b) the amount of the Administrative Claim and (c) a detailed basis for the Administrative Claim. A request for payment of an Administrative Claim that has been properly and timely Filed and served shall become an Allowed Administrative Claim unless an objection is filed by the date that is thirty (30) days after such request has been Filed and served. If a timely objection is Filed, the Administrative Claim in question shall become Allowed only to the extent set forth in a Final Order of the Bankruptcy Court. A Governmental Unit shall not be required to file a request for the payment of an expense described in 11 U.S.C. § 503(b)(1)(B) or (C) as a condition of its being an allowed administrative expense.

If an Administrative Claim is Allowed after the Effective Date and there are insufficient funds to pay such Allowed Administrative Claim from the Administrative and Priority Claims Reserve, then such claims will be paid from the net proceeds of Retained Causes of Action asserted against any Person other than the Released Parties (the "Net RCA Proceeds") at such time as such Net RCA Proceeds become available for distribution under the terms and conditions of the Cooperation Agreement. After payment of the remaining amounts owing to holders of Allowed Administrative Claims and Allowed Priority Tax Claims from the Net RCA Proceeds, all remaining Net RCA Proceeds will be distributed to the GUC Trust and the PI/WD Trust under the terms and conditions of the Cooperation Agreement.

Any failure to File a request for payment of an Administrative Claim by the Administrative Claims Bar Date shall result in the Administrative Claim in question being discharged and released as of the Effective Date, and its Holder being forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtor, its Estate, or any other Entity. Any requests for payment of Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be Disallowed automatically without the need for further action by the Debtor, or further order of the Bankruptcy Court.

B.      *Professional Fee Claims*

1.      Final Fee Applications and Payment of Professional Fee Claims

All Professionals or other Persons requesting the final Allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330 and/or 331 for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for Allowance and payment of Professional Fee Claims on counsel to the TCC, the UCC, the DIP Lender, the Debtor and the United States Trustee no later than the first Business Day that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and be subject to approval by the Bankruptcy Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Case. The last date to object to such final fee application shall be the twenty-first

(21st) day after such fee application has been Filed and all final fee applications shall be set for hearing at the same time, as the Bankruptcy Court's calendar permits, after consultation with counsel to the TCC, the UCC, the DIP Lender, and the Debtor, *provided*, *however*, that if an objection is Filed to any final fee application, then the deadline to object to any and all final fee applications shall be extended for all parties in interest for an additional seven (7) days and, for any party whose Professional(s) is subject to an objection Filed within the twenty-one (21) day period above, the deadline for such party to object to any and all final fee applications shall be extended for an additional fourteen (14) days.  Neither Trustee shall have standing to object to any Professional Fee Claims.

2.          Professional Fee Escrow Amount

Estate Professionals shall estimate their Accrued Professional Fees as of the Effective Date and deliver such estimate to the TCC, the UCC, and the Debtor at least five (5) Business Days prior to the anticipated Effective Date. If a Professional does not provide such estimate, the TCC, the UCC, and the Debtor may estimate the unbilled fees and expenses of such Professional.  The total amount so estimated will constitute the Professional Fee Escrow Amount, provided that such estimate will not be considered an admission or limitation with respect to the fees and expenses of such Professional.

3.          Professional Fee Escrow Accounts

On the Effective Date, the Debtor shall fund the Professional Fee Escrow Accounts with Cash in an amount equal to the Professional Fee Escrow Amount plus a reasonable cushion amount determined by the TCC, the UCC, and the Debtor.  The TCC Professional Fee Escrow Account will be funded with Cash sufficient to pay the Professional Fee estimate for the TCC's Professionals, which account shall be held and administered by the PI/WD Trustee.  The UCC Professional Fee Escrow Account will be funded with Cash sufficient to pay the Professional Fee estimate for the UCC's Professionals, which account shall be held and administered by the GUC Trustee.  The Debtor Professional Fee Escrow Account will be funded with Cash sufficient to pay the Professional Fee estimate for the Debtor's Professionals, which account shall be held and administered by the GUC Trustee, solely and exclusively in his capacity as Wind-Down Officer of the Debtor.  The Professional Fee Escrow Accounts shall be held for the sole benefit of the Professionals until all Allowed Professional Fee Claims have been paid in full.  For the avoidance of doubt, the PI/WD Trust Assets and the GUC Trust Assets shall not be used to pay any Professional Fee Claims in the Chapter 11 Case.

Funds held in the Professional Fee Escrow Accounts shall not be considered property of the Debtor's Estate or of the Trusts.  Funds held in the Professional Fee Escrow Accounts shall be administered in accordance with the terms of this Plan, which terms shall be reflected in the Trust Agreements and the exhibits thereto.  Professional Fees owing on account of Allowed Professional Fee Claims shall be paid in Cash from funds held in the applicable Professional Fee Escrow Accounts as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order of the Bankruptcy Court or authorized to be paid under the Interim Compensation Order.  No Liens, Claims, interests, charges, or other Encumbrances or liabilities of any kind shall encumber the Professional Fee Escrow Accounts in any way, and neither Trustee shall have any discretion over whether or when to make payments on account of Allowed Professional Fee Claims other than as set forth in this **Article II.B**.  The GUC Trustee or the PI/WD Trustee, as applicable, shall deposit any additional back-stop funds received from the Settlement Parties pursuant to **Article IV.B.1** hereof into the respective Professional Fee Escrow Accounts.  Thereafter, to the extent that there are insufficient funds in the Professional Fee Escrow Accounts to satisfy all Allowed Professional Fee Claims in full, any such Allowed Professional Fee Claims (or portions thereof that remain unpaid from the Professional Fee Escrow Accounts) shall be paid as an Allowed Administrative Claim in accordance with **Article II.A**.

4.          Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the GUC Trustee and PI/WD Trustee, as applicable, may, in the ordinary course of business and without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pay the reasonable, actual, and documented legal, professional, or other fees and expenses incurred on or after the Effective Date in connection with administering the GUC Trust and the PI/WD Trust out of the GUC Trust Assets and the PI/WD Trust Assets, as applicable, and in accordance with the Plan, GUC Trust Agreement, and PI/WD Trust Agreement, as applicable.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code,

the Interim Compensation Order, or the Ordinary Course Professionals Order in seeking retention or compensation for services rendered to either Trust after such date shall terminate.

**C.      DIP Claims**

DIP Claims shall be fully and forever discharged and released on the Effective Date pursuant to the Estate Party Settlement set forth in **Article IV.B.6** and **Article IX.A**.

Notwithstanding anything in this Plan to the contrary, to the extent that the Court disallows payment of any fees and expenses of Estate Professionals set forth in the Approved Budget (as defined in the DIP Order), and that such order or orders by the Court cause on a final basis the total amount of Allowed Administrative Claims and Professional Fee Claims to be less than the Commitment Amount (as defined in the DIP Order), then (i) if this Plan has been confirmed and gone effective, 90 percent (90%) of the difference between the Commitment Amount and the total amount of Allowed Administrative Claims and Professional Fee Claims shall be promptly returned to the DIP Lender, whether such funds are held in the Professional Fee Escrow Accounts or another account, or (ii) if confirmation of this Plan has been denied, then 100 percent (100%) of the difference between the Commitment Amount and the total amount of Allowed Administrative Claims and Professional Fee Claims shall be promptly returned to the DIP Lender, whether such funds are held in the Professional Fee Escrow Accounts or another account.

**D.      Synergi Administrative Claim**

In full and final satisfaction, settlement, release, and discharge of any Administrative Claim arising under or in respect of the Synergi Order and the agreements referenced therein, Synergi shall be entitled to receive Cash from the ERC Fund equal to the amount of such Administrative Claim pursuant to and in accordance with the Synergi Order. For the avoidance of doubt, nothing in the Plan shall modify the Synergi Order, including the payments terms and conditions set forth therein.

**E.      Priority Tax Claims (Federal and State)**

Except to the extent that a federal or state Governmental Unit Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each federal and state Governmental Unit Holder of such Allowed Priority Tax Claim will receive, at the sole option of the Debtor or the Trustees, as applicable, either: (1) an amount of Cash from the ERC Fund equal to the amount of such Allowed Priority Tax Claim by the later of (a) ninety (90) days after the date on which such Priority Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, or (b) ten (10) days after the date on which the ERC Fund is funded; or (2) regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date. For the avoidance of doubt, federal and state Governmental Unit Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. If a Priority Tax Claim is Allowed after the Effective Date and there are insufficient funds to pay such Allowed Priority Tax Claim from the Administrative and Priority Claims Reserve, then such claims will be paid from the Net RCA Proceeds at such time as such Net RCA Proceeds become available for distribution under the terms and conditions of the Cooperation Agreement. After payment of the remaining amounts owing to holders of Allowed Administrative Claims and Allowed Priority Tax Claims from the Net RCA Proceeds, all remaining Net RCA Proceeds will be distributed to the GUC Trust and the PI/WD Trust under the terms and conditions of the Cooperation Agreement.

**ARTICLE III.**
**CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**

**A.      Classification of Claims and Interests**

For purposes of organization, voting, and all matters related to Confirmation, and except as otherwise provided herein, all Claims (other than Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims) against and Interests in the Debtor are classified as set forth in this **Article III**. In accordance with section

21 of 61

1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims described in **Article II** have not been classified and are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the description of such Class and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest falls within the description of such other Class or Classes. Notwithstanding anything to the contrary contained in the Plan, no distribution shall be made on account of any Claim that is not Allowed for distribution purposes (if applicable) or any Claim that has been satisfied, released, or otherwise settled prior to the Effective Date.

B.        *Requirement to File a Personalized Proof of Claim Form by All Claimants, Including Those Who Are Part of Representative Action*

Any Holder of a Claim must have filed a Proof of Claim on account of his or her personal Claim by the Claims Bar Date even if such Holder may purport to be included in, or represented by, a purported class action, class suit, class Proof of Claim, or similar representative action filed against the Debtor with respect to such Holder's Claim, regardless of whether or not said action was ever certified or authorized by a court of competent jurisdiction. If the Holder of a Claim has not filed a personalized Proof of Claim, the Holder of that Claim shall not be entitled to any distribution from the Trusts.

C.        *Voting Requirements*

Any Holder of a Claim whose Claim is not scheduled or is scheduled as disputed, contingent, or unliquidated must have timely filed, or be deemed to have timely filed, a personalized Proof of Claim prior to the Claims Bar Date, and any Holder of a Claim that failed to do so shall not be entitled to vote on the Plan.

D.        *Opt-Out Deadline*

The Opt-Out Release Form shall be used by all Holders of Claims against the Debtor that wish not to grant, and therefore elect to opt-out of, the Consensual Claimant Release set forth in **Article IX.D** of the Plan. Any Holder of a Claim who wishes and intends to elect to opt out of the Consensual Claimant Release set forth in **Article IX.D** of the Plan must do so prior to the Voting Deadline.

E.        *Summary of Classification*

The following table designates the Classes of Claims against, and Interests in, the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject the Plan.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Convenience Claims | Impaired | Entitled to Vote |
| 4 | Channeled GUC Claims | Impaired | Entitled to Vote |
| 5 | Opt-Out GUC Claims | Impaired | Entitled to Vote |
| 6 | Channeled PI/WD Claims | Impaired | Entitled to Vote |

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 7 | Opt-Out PI/WD Claims | Impaired | Entitled to Vote |
| 8 | Opt-Out Insured PI/WD Claim | Impaired | Entitled to Vote |
| 9 | Channeled Indirect Claims | Impaired | Entitled to Vote |
| 10 | Opt-Out Indirect Claims | Impaired | Entitled to Vote |
| 11 | Interests in the Debtor | Impaired | Not Entitled to Vote (Deemed to Reject) |

*F.*      *Treatment and Voting of Classes of Claims and Interests*

    1.      Class 1 — Other Priority Claims

        (a)      *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash from the Administrative and Priority Claims Reserve on (or as soon as reasonably practicable after) the later of (i) the Effective Date or (ii) thirty (30) days after such Other Priority Claim becomes Allowed, or (iii) such date on which the Holder of such Other Priority Claim and the Debtor or Trustees, as applicable, shall otherwise agree in writing.

        (b)      *Voting*: Class 1 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

    2.      Class 2 — Other Secured Claims

        (a)      *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the sole option of the Debtor or the GUC Trustee, as applicable, either:

            (i)      payment in full in Cash on the later of (w) the Effective Date (or as soon as reasonably practicable thereafter), (x) the date on which such Other Secured Claim becomes Allowed, (y) the date payment on account of such Other Secured Claim is due; or (z) the date on which the Holder of such Allowed Other Secured Claim and the Debtor or the GUC Trustee, as applicable, shall otherwise agree in writing;

            (ii)      the collateral securing such Allowed Other Secured Claim; or

            (iii)      such other treatment that renders such Allowed Other Secured Claim Unimpaired.

        (b)      *Voting*: Class 2 is Unimpaired under the Plan. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

3.      Class 3 — Convenience Claims

(a)     *Treatment*:  On the first Business Day that is thirty (30) days following the Effective Date, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash.

(b)     *Voting*: Class 3 is Impaired under the Plan.  Holders of Convenience Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 — Channeled GUC Claims

(a)     *Treatment*:

(i)     On the Effective Date (or as soon as reasonably practicable thereafter) except to the extent that a Holder of an Allowed Channeled GUC Claim agrees to less favorable treatment, each Holder of an Allowed Channeled GUC Claim shall receive, in full and final satisfaction of such Claim, a beneficial interest in the GUC Trust.  Thereafter each such Holder shall receive Cash distributions from the GUC Trust in accordance with the terms and conditions set forth in the GUC Trust Documents.  Distributions from the GUC Trust to Holders of Allowed Channeled GUC Claims shall be on a Pro Rata basis with all other holders of GUC Trust beneficial interests in accordance with the terms of the GUC Trust Agreement.  Holders of Channeled GUC Claims shall not receive any payment from the GUC Trust unless and until such Claims are resolved in accordance with the GUC Trust Documents.  The GUC Trust Agreement establishes the method by with the Channeled GUC Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid.  Except as provided in the Plan, Holders of Channeled GUC Claims shall be enjoined from prosecuting or filing any Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court.

(ii)    Notwithstanding the above, each Holder of an Allowed Channeled GUC Claim shall have the option on the Ballot to elect for an Expedited GUC Distribution. Any Holder of a GUC Claim who elects for the Expedited GUC Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release.  An election on the Ballot for an Expedited GUC Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot.  An Expedited GUC Distribution shall be paid by the GUC Trustee on the later of (a) the Effective Date or (b) within ten (10) business days after such GUC Claim becomes an Allowed Claim by Final Order, provided, however, that the GUC Trustee shall not be required to pay such Expedited GUC Distribution until the first Business Day on which the GUC Trust has sufficient Cash on hand to make the Expedited GUC Distribution and satisfy the reserve requirements set forth in the GUC Trust Documents.

(b)     *Voting*: Class 4 is Impaired under the Plan.  Holders of Channeled GUC Claims are entitled to vote to accept or reject the Plan.

5.      Class 5 — Opt-Out GUC Claims

(a)     *Treatment*:  On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out GUC Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp.,

CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its GUC Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action. Except for the foregoing, Holders of Opt-Out GUC Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan. Consistent with the foregoing, each Holder of an Opt-Out GUC Claim may elect to pursue recovery on account of its GUC Claim from any of the Released Parties. Holders of Opt-Out GUC Claims shall not receive, and shall have no right to receive, a Distribution from the GUC Trust.

(b)     *Voting*:  Class 5 is impaired under the Plan.  Holders of Opt-Out GUC Claims are entitled to vote to accept or reject the Plan.

6.     Class 6 — Channeled PI/WD Claims

(a)     *Treatment*:

(i)     Holders of Allowed Channeled PI/WD Claims shall be entitled to receive a distribution from the PI/WD Trust from the PI/WD Trust Assets.  As of the Effective Date, the Debtor's liability for all Channeled PI/WD Claims shall be both incurred in full and assumed by the PI/WD Trust without further act, deed, or Court order and shall be administered and paid from the PI/WD Trust as set forth in the PI/WD Trust Documents.  Holders of Channeled PI/WD Claims shall not receive any payment from the PI/WD Trust unless and until such Claims are resolved in accordance with the PI/WD Trust Documents.  The PI/WD Trust Distribution Procedures establish the method by with the Channeled PI/WD Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid.  Except as provided in the Plan, Holders of Channeled PI/WD Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court.

(ii)     Notwithstanding the above, and at all times subject to the requirements in **Article III.B**, each Holder of an Allowed Channeled PI/WD Claim shall have the option on the Ballot to elect for an Expedited PI/WD Claim Distribution.  Any Holder of a Channeled PI/WD Claim who elects for the Expedited PI/WD Claim Distribution shall be deemed to have (a) voted to accept the Plan and (b) consented and agreed to and not opted out of the Consensual Claimant Release.  An election on the Ballot for an Expedited PI/WD Claim Distribution shall be irrevocable, shall be conclusive and controlling, and shall govern over any and all other markings on the Ballot.  An Expedited PI/WD Claim Distribution shall be paid by the PI/WD Trustee within sixty (60) days following the Effective Date, subject to the terms of the PI/WD Trust Distribution Procedures, provided, however, that the PI/WD Trustee shall not be required to pay such Expedited PI/WD Distribution until the first Business Day on which the PI/WD Trust has sufficient Cash on hand to make the Expedited PI/WD Distribution and satisfy the reserve requirements set forth in the PI/WD Trust Documents.

(b)     *Voting*:  Class 6 is Impaired under the Plan.  Holders of Channeled PI/WD Claims are entitled to vote to accept or reject the Plan.

7. Class 7 — Opt-Out PI/WD Claims

(a) *Treatment*: On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out PI/WD Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its PI/WD Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action. Except for the foregoing, Holders of an Opt-Out PI/WD Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Plan pursuant to the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan. Consistent with the foregoing, each Holder of an Opt-Out PI/WD Claim may elect to pursue recovery on account of its PI/WD Claim from any of the Released Parties. Holders of Opt-Out PI/WD Claims shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust.

(b) *Voting*: Class 7 is impaired under the Plan. Holders of Opt-Out PI/WD Claims are entitled to vote to accept or reject the Plan.

8. Class 8 — Opt-Out Insured PI/WD Claim

(a) *Treatment*:

(i) The Holders of Opt-Out Insured PI/WD Claims shall be entitled to seek recovery on account of such Claims from any PI/WD Insurance Company. Such Holders shall be entitled to name as a defendant in any proceeding commenced or continued in the Civil Justice System the Debtor, the PI/WD Trust, and any other person or entity to the extent permitted under applicable law, *provided*, *however*, that such Holder may not name a Released Party as a defendant other than the Debtor. Claims that could have been asserted against the Debtor may be asserted against the PI/WD Trust, which will have the liabilities and defenses of the Debtor, subject to the limitations below on the Claimants' right to recover on any such Opt-Out Insured PI/WD Claim established through litigation. If such proceeding is commenced or continued, the PI/WD Trustee shall provide notice to and seek defense from each PI/WD Insurance Company that the PI/WD Trustee determines may have an obligation to provide coverage in accordance with the terms of each applicable PI/WD Insurance Policy. The PI/WD Trust shall have no obligation to appear and defend any lawsuit commenced against the PI/WD Trust if the applicable PI/WD Insurance Company refuses to cover any and/or all defense costs. The PI/WD Trust shall have no obligation to satisfy any Insurance Policy's deductible or self-insured retention per claim or in the aggregate. Holders of Opt-Out Insured PI/WD Claims shall not be entitled to receive any recovery from the PI/WD Trust or the Debtor on account of such Claim other than a recovery that is funded exclusively by an insurance recovery under a PI/WD Insurance Policy.

(ii) Each Holder of an Opt-Out Insured PI/WD Claim shall automatically be deemed to return to the PI/WD Trust on the ninetieth (90th) day following the Effective Date unless such Holder provides written notice to the PI/WD Trust that such Holder intends to remain an Opt-Out for purposes of pursuing insurance recoveries in the Civil Justice System. This deadline may be extended in accordance with the PI/WD Trust Documents. Holders of Opt-Out Insured PI/WD Claims who elect to remain in the Civil Justice System for the purpose of pursuing insurance recoveries after this deadline may elect to return to the PI/WD Trust in accordance with the PI/WD Trust Documents. Any Holder of an Opt-

Out Insured PI/WD Claim that returns to the PI/WD Trust in accordance with the PI/WD Trust Documents shall be treated as the Holder of Channeled PI/WD Claim under the Plan and the PI/WD Trust Documents.

(b)     *Voting*:  Class 8 is impaired under the Plan.  Holders of Opt-Out Insured PI/WD Claims are entitled to vote to accept or reject the Plan.

9.     Class 9 — Channeled Indirect Claims

(a)     *Treatment*:

(i)     Any Channeled Indirect Claim shall be Disallowed to the extent provided by section 502(e) and shall be subordinated to the extent provided by section 509(c) of the Bankruptcy Code or applicable law.

(ii)     As of the Effective Date, (a) the Debtor's liability for all Allowed Channeled Indirect Claims that are Allowed Indirect PI/WD Claims shall be both incurred in full and assumed by the PI/WD Trust without further act, deed, or Court order and shall be administered and paid from the PI/WD Trust as set forth in the PI/WD Trust Documents, and (b) the Debtor's liability for all Allowed Channeled Indirect Claims that are Allowed Indirect GUC Claims shall be both incurred in full and assumed by the GUC Trust without further act, deed, or Court order and shall be administered and paid from the GUC Trust as set forth in the Plan and the GUC Trust Agreement.

(iii)     Holders of Allowed Channeled Indirect Claims that are Allowed Indirect PI/WD Claims shall not receive any payment from the PI/WD Trust unless and until such Claims are resolved in accordance with the PI/WD Trust Documents.  The PI/WD Trust Distribution Procedures establish the method by with such Claims will be resolved and how such Claims will be submitted, processed, liquidated, and paid. Holders of Allowed Channeled Indirect Claims that are Allowed Indirect GUC Claims shall not receive any payment from the GUC Trust unless and until such Claims are resolved in accordance with the Plan and the GUC Trust Agreement. Except as provided in the Plan, Holders of Channeled Indirect Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court.

(b)     *Voting*:  Class 9 is Impaired under the Plan.  Holders of Channeled Indirect Claims are entitled to vote to accept or reject the Plan.

10.     Class 10 — Opt-Out Indirect Claims

(a)     *Treatment*:  On the Effective Date (or as soon as reasonably practicable thereafter), each Holder of an Opt-Out Indirect Claim shall retain or receive, in full and final satisfaction of such Claim, the claims or theories of recovery or remedies based on the doctrine of successor liability that such Holder held and could have asserted against YesCare Corp., CHS TX, Inc., or any other alleged successor entity immediately prior to the Petition Date as part of or in connection with its Indirect Claim and that became, as of the Petition Date, part of the claims or theories of recovery or remedies that could have been asserted by the Debtor as an Estate Cause of Action.  Except for the foregoing, Holders of an Opt-Out Indirect Claims may not assert any Estate Causes of Action to the extent that (a) such Estate Cause of Action is settled and released under the Plan pursuant to the Estate Release or (b) such Estate Cause of Action is a Retained Estate Cause of Action that is transferred to the Trusts under the Plan.  Consistent with the foregoing, each Holder of an Opt-Out Indirect

Claim may elect to pursue recovery on account of its Indirect Claim from any of the Released Parties. Holders of Opt-Out Indirect Claims shall not receive, and shall have no right to receive, a Distribution from the PI/WD Trust or the GUC Trust.

(b)   *Voting*: Class 10 is impaired under the Plan. Holders of Opt-Out Indirect Claims are entitled to vote to accept or reject the Plan.

11.   Class 11 — Interests in the Debtor

(a)   *Treatment*: On the Effective Date, all Interests in the Debtor shall be cancelled, released, discharged, and extinguished. Holders of Interests in the Debtor shall not receive or retain any property on account of such Interests.

(b)   *Voting*: Class 11 is Impaired under the Plan. Holders of Interests in the Debtor are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

G.   *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

H.   *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such class shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

I.   *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

To the extent any Class is impaired under the Plan and such Class fails to accept this Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Proponents hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. The Proponents reserve the right to modify the Plan in accordance with **Article XI** to the extent, if any, that Plan confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.   *Sources of Consideration for Plan Distributions*

Sources of consideration for Plan distributions shall be Cash in the Debtor's possession prior to the Effective Date, the GUC Trust Assets and the PI/WD Trust Assets.

B.   *The Estate Party Settlement*

The Committees, the Debtor, and the Settlement Parties have reached a global resolution of all issues among them in the Chapter 11 Case. Pursuant to Bankruptcy Rule 9019, the Plan does, and shall, constitute a compromise, settlement, and release of all potential claims by and among the Settlement Parties on the terms set forth below. Entry of the Confirmation Order shall constitute approval of the resolution set forth below, which shall become fully effective upon the Final Payment Date.

1. The Settlement Payment

The Settlement Parties shall pay or cause to be paid to the PI/WD Trust and GUC Trust, as applicable, aggregate Cash in the amount of Fifty Million Dollars ($50,000,000.00) (the "Settlement Payment"), as follows: (i) on or before the Effective Date, the Settlement Parties shall pay or cause to be paid to the Debtor's estate Cash in the amount of Two Million Dollars ($2,000,000.00) (the "Initial Settlement Amount") which shall be contributed to the PI/WD Trust and the GUC Trust on the Effective Date. The remaining Forty-Eight Million Dollars ($48,000,000.00) shall be paid over thirty (30) months with interest at 6.00% per annum on the unpaid balance based on the Settlement Payment Schedule, with each installment payment (each an "Installment Settlement Payment") being due on the fifteenth (15th) day of each month (or, if such day is not a Business Day, the next succeeding Business Day) until all Installment Settlement Payments have been made, with the final installment (the "Final Settlement Payment"), being made no later than thirty (30) months after the Effective Date (or, if such day is not a Business Day, the next succeeding Business Day). Additionally, to the extent Allowed Professional Fee Claims exceed Fourteen Million Five Hundred Thousand Dollars ($14,500,000.00), the Settlement Parties shall pay and transfer to the Professional Fee Escrow Accounts the lesser of (i) such amount as is necessary to satisfy all Professional Fee Claims in full and (ii) One Million Dollars ($1,000,000.00). The payment of Professional Fee Claims is governed by **Article II.B** hereof.

2. Settlement Payment Default

The Settlement Parties' failure to timely pay or cause to be paid the Initial Settlement Amount or any of the Installment Settlement Payments shall constitute a "Settlement Payment Default." A Settlement Payment Default may be declared if the Installment Settlement Payments are not made on or before the applicable payment date or within a "grace period" of five (5) Business Days from such date, *provided, however*, that, in the event the expiration date of the "grace period" occurs on a Friday it will be extended to the following Monday. Upon occurrence of a Settlement Payment Default, the Debtor or either Trustee, shall promptly provide written notice of the Settlement Payment Default (a "Settlement Payment Default Cure Notice") to counsel for the Settlement Parties at the following email addresses: *mhayward@haywardfirm.com, kristian.gluck@nortonrosefulbright.com, julie.harrison@nortonrosefulbright.com*. In addition, contemporaneously with the declaration of a Settlement Payment Default, the Debtor or either Trustee shall file the Settlement Payment Default Cure Notice on the docket for the Chapter 11 Case. The Settlement Parties shall cure the Settlement Payment Default by making the missed Installment Settlement Payment within five (5) Business Days of receipt of the Settlement Payment Default Cure Notice (the "Settlement Payment Cure Period"). If a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived in writing by both the PI/WD Trustee and GUC Trustee, all Plan injunctions, stays, or releases provided in favor of the Released Parties that are in effect under the Plan shall be deemed terminated and void. All Statute of Limitations for all Claims and Causes of Action against the Released Parties held by the Debtor, the Estate, the PI/WD Trust, the GUC Trust, and Holders of Channeled Claims shall be tolled and extended to the first Business Day that is ninety (90) days after the termination of the Channeling Injunction if the Settlement Payment Default is not timely cured or waived in writing by both the PI/WD Trustee and the GUC Trustee. Notice of any waiver by the PI/WD Trustee and the GUC Trustee described in this paragraph must be filed on the docket for the Chapter 11 Case. If the Settlement Payment Default is not timely cured or waived in writing, the Channeling Injunction will be terminated and the PI/WD Trustee and the GUC Trustee shall file a notice on the docket of the Chapter 11 Case and provide notice to beneficiaries of the Trusts that the Estate Party Settlement did not become effective and that such beneficiaries have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties.

3. Allocation of Settlement Payment

The Settlement Payment shall be split between the PI/WD Trust and the GUC Trust on a 50/50 basis. Half of the Initial Settlement Amount shall be paid to the PI/WD Trust, and the other half shall be paid to the GUC Trust. Half of each Installment Settlement Payment (including the Final Settlement Payment) shall be paid to the PI/WD Trust, and the other half shall be paid to the GUC Trust.

4. Use of Settlement Payment

Under no circumstances shall any portion of the funds received pursuant to the Settlement Payment be used to pay Administrative Claims, Professional Fee Claims, Priority Claims, or Secured Claims of any type. Funds

received pursuant to the Settlement Payment shall be distributed to the GUC Trust or PI/WD Trust, as applicable, and used for the cost administration of such Trusts and for making distributions to Trust Beneficiaries on the terms and conditions set forth in the Trust Documents.

5.      Right of Termination Based on Voting Results

No later than the latter to occur of (i) ten (10) days after the Voting Deadline, or ten (10) days prior to the Confirmation Hearing, the Settlement Parties shall have the option to terminate the Estate Party Settlement if more than 5% in number of Voting PI/WD Claimants elect to opt out of the Consensual Claimant Release and who, by doing so, irrevocably elect to pursue their PI/WD Claims in the Civil Justice System with no right to return to or recover from the PI/WD Trust. Holders of PI/WD Claims who elect to pursue their PI/WD Claims in the Civil Justice System for the purpose of pursuing a recovery from one or more PI/WD Insurance Companies and who do not opt out of the Consensual Claimant Release shall not be considered "opt outs" for the purpose of calculating whether the participation percentage has been met. The Settlement Parties may only elect this option to terminate the Estate Party Settlement by providing written notice to the Committees and the Debtor and by filing such notice on the docket in the Chapter 11 Case. If the Settlement Parties do not timely elect to terminate the Estate Party Settlement, the Settlement Parties shall be deemed to have waived the ability to terminate the Estate Party Settlement. If the Settlement Parties terminate the Estate Party Settlement based on this termination right, the Settlement Parties specifically reserve, and shall not be deemed to have waived or released any rights or claims, including with respect to the DIP Loan or any of the Settlement Parties' Proofs of Claim filed in the Chapter 11 Case.

6.      Settlement Parties' Release of Certain Claims

On the Effective Date, the Settling Parties shall release and waive all Claims and Causes of Action against the Debtor and its Estate, including the DIP Lender's Claims under the DIP Order and the DIP Facility, the Proof of Claim filed by Geneva Consulting LLC (Claims Register No. 572 for $315,032.97), and the Proof of Claim filed by M2 LoanCo, LLC (Claims Register No. 589 for $24,032,965), which Claims shall be Disallowed for all purposes and expunged from the Claims Register. The Settling Parties will have no right to seek indemnification from the Trusts and will not assert any claims against the Trusts.

7.      Release by the Consenting Claimants of the Released Parties

**As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that the releases set forth in this Article IV.B.7 shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents. If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling**

Parties upon demand, the releases set forth this Article IV.B.7 shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

8.       Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9

As of the Final Payment Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Channeled GUC Claims), Class 6 (Channeled PI/WD Claims), Class 8 (Opt-Out Insured PI/WD Claims), and Class 9 (Channeled Indirect Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IV.B.8 shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.

9.       Release of Estate Causes of Action Against the Released Parties

As of the Final Payment Date, except for the claims or theories of recover or remedies distributed to or retained by Holders of Opt-Out GUC Claims, Holders of Opt-Out PI/WD Claims, and Holders of Opt-Out Indirect Claims, and except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, and each of their respective successors or assigns, including the Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, the Payment Agreement, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in the Plan shall not be construed to release any Insurance Actions or any post-Effective Date obligations under the Estate Party Settlement or any document, instrument, or agreement executed to implement the Estate Party Settlement.  If, following the Final Payment Date, any

portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IV.B.9 shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts. Any Released Party may enforce the Estate Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose. The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

10. <u>Forbearance from Prosecuting Released Estate Causes of Action</u>

The Trusts shall forbear from asserting or prosecuting any Released Estate Causes of Action between the Effective Date and the Final Payment Date unless a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived by both the PI/WD Trustee and GUC Trustee. While this forbearance period is in effect, and for ninety (90) days following the termination of such forbearance period, the running of any relevant Statute of Limitations shall be tolled as to any Released Estate Causes of Action.

11. <u>Claim Over</u>

It is the intent of the parties to the Estate Party Settlement that: (a) the contributions made by the Settling Parties to the Trusts should be the sole payments the Released Parties shall make to address the Released Claims; (b) a claim by a Consenting Claimant against any non-party arising out of a Released Claim should not result in any additional payment by any Released Party; and (c) the settlement effectuated through the Plan meets the requirements of the Uniform Contribution Among Tortfeasors Act and any similar state or federal law or doctrine that reduces or discharges a Released Party's liability to any other parties. This Plan provides, and the Confirmation Order will specify, that the Estate Party Settlement is a good faith settlement that bars any Cause of Action by a non-Released Party against any Released Party for contribution, for indemnification, or otherwise seeking to recover any amounts paid by or awarded against that non-Released Party and paid or awarded to any Consenting Claimant by way of settlement, judgment, or otherwise on any claim that would be a Released Claim were such non-Released Party a Released Party to the extent that a good-faith settlement has such an effect in accordance with applicable law.

12. <u>Voiding of Releases in Favor of the Released Parties</u>

If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth in Article IV.B.7 and Article IV.B.9 in favor of the Released Parties shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extend to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.

C. *Opt-Out Insured PI/WD Claims*

Each Holder of a PI/WD Claim shall have the right on his or her Ballot to make an election to pursue his or her PI/WD Claims in the Civil Justice System for the purpose of pursuing a recovery from one or more PI/WD Insurance Companies, subject to the right to return to and recover from the PI/WD Trust under and in accordance with the PI/WD Trust Distribution Procedures. To make this election and become the Holder of an Opt-Out Insured PI/WD Claim, such Holder cannot opt out of the Consensual Claimant Release. Such Holder shall be entitled to name as a defendant in any proceeding commenced or resumed in the Civil Justice System the Debtor, the PI/WD Trust, and any other person or entity to the extent permitted under applicable law, *provided*, *however*, that such Holder may not name a Released Party as a defendant other than the Debtor. Claims that could have been asserted against the Debtor may be asserted against the PI/WD Trust, which will have the liabilities and defenses of the Debtor, subject to the limitations below on the Claimants' right to recover on any such Opt-Out Insured PI/WD Claim established through litigation. If such proceeding is commenced or continued, the PI/WD Trustee shall provide notice to and seek defense from each PI/WD Insurance Company that the PI/WD Trustee determines may have an obligation to provide coverage in accordance with the terms of each applicable PI/WD Insurance Policy. The PI/WD Trust shall have no obligation to appear and defend any lawsuit commenced against the PI/WD Trust if the applicable PI/WD Insurance Company

refuses to cover all defense costs. The PI/WD Trust shall have no obligation to satisfy any Insurance Policy's deductible or self-insured retention per claim or in the aggregate. Holders of Opt-Out Insured PI/WD Claims shall not be entitled to receive any recovery from the PI/WD Trust or the Debtor on account of such Claim that is not funded exclusively by an insurance recovery under a PI/WD Insurance Policy. If the Holder of an Opt-Out Insured PI/WD Claim is deemed or elects to return to the PI/WD Trust in accordance with the PI/WD Trust Distribution Procedures, his or her PI/WD Claim shall be become a Channeled PI/WD Claim under the Plan and the PI/WD Trust Distribution Procedures, *provided*, *however*, that such Claim shall remain a Class 8 Claim. Holders of Opt-Out Insured PI/WD Claims may engage in mediation with an PI/WD Insurance Company to resolve their PI/WD Claims. Parties to such mediation may include the PI/WD Trust. If an Opt-Out Insured PI/WD Claim is resolved through such mediation, that parties thereto shall include in any settlement or release executed in connection therewith an acknowledgement by the Holder of the settled Opt-Out Insured PI/WD Claim that such Holder's PI/WD Claim is being resolved by such settlement and that, as a result, such Holder's PI/WD Claim shall not become a Channeled PI/WD Claim under the Plan.

D.      *PI/WD Trust to Resolve All Channeled PI/WD Trust Claims*

The PI/WD Trust shall be established to administer, process, settle, resolve, liquidate, satisfy, and pay all Allowed Channeled PI/WD Trust Claims. All Channeled PI/WD Trust Claims shall be subject to the Channeling Injunction. The PI/WD Trust shall be funded with the PI/WD Trust Assets. Before the Effective Date, no Released Party may object to any PI/WD Claims, and any pending objections to any PI/WD Claims filed by a Released Party as of the date this Plan is filed with the Bankruptcy Court shall be deemed to be withdrawn without prejudice. PI/WD Claims that are not channeled to the PI/WD Trust shall be treated in a manner consistent with **Article III** of the Plan.

E.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

F.      *Post-Effective Date Debtor, GUC Trust, and PI/WD Trust*

1.      Post-Effective Date Debtor and GUC Trust

(a)      Establishment of the GUC Trust

On the Effective Date, the GUC Trust shall be established in accordance with the terms of the GUC Trust Agreement and the Plan. The GUC Trust shall be established to liquidate the GUC Trust Assets and make distributions in accordance with the Plan, Confirmation Order, and GUC Trust Agreement, and in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the GUC Trust. The GUC Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, and thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code. Accordingly, the GUC Trust Beneficiaries shall be treated for U.S. federal income tax purposes (i) as direct recipients of undivided interests in the GUC Trust Assets (other than to the extent the GUC Trust Assets are allocable to Disputed Claims) and as having immediately contributed such assets to the GUC Trust, and (ii) thereafter, as the grantors and deemed owners of the GUC Trust and thus, the direct owners of an undivided interest in the GUC Trust Assets (other than such GUC Trust Assets that are allocable to Disputed Claims).

(b)      Purposes of the GUC Trust

The purposes of the GUC Trust shall be to assume responsibility for Channeled GUC Trust Claims, and, among other things: (1) to hold, preserve, maximize, and administer the GUC Trust Assets, (2) to liquidate the GUC Trust Assets, and (3) to administer, process, settle, resolve, liquidate, satisfy, and pay all Allowed Channeled GUC Trust Claims in a fair, consistent, and equitable manner in accordance with the terms of the GUC Trust Documents

33 of 61

and the Plan. The GUC Trust shall also have responsibility for the Retained Causes of Action (on behalf of itself and its beneficiaries as well as on behalf of the PI/WD Trust and its beneficiaries, subject to the provisions and consent rights of the PI/WD Trust, as set forth in **Article IV.J**, with the net proceeds of such Retained Causes of Action to be split between the PI/WD Trust and the GUC Trust on a 50/50 basis.

        (c)      Assumption of Channeled GUC Trust Claims by the GUC Trust

On the Effective Date or as otherwise provided herein, and without further action of any Person, the GUC Trust shall assume the liabilities, obligations, and responsibilities of the Debtor for all Channeled GUC Trust Claims as set forth in the Plan. Subject to the rights of the PI/WD Trust, as discussed below, the GUC Trust shall have control over the Retained GUC Trust Causes of Action, and the GUC Trust shall thereby be the estate representative pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code with the right to enforce each of the Retained GUC Trust Causes of Action, and the proceeds of the recoveries on any of the Retained GUC Trust Causes of Action shall be deposited in and become the property of the GUC Trust, and the GUC Trust shall have the right to enforce the Plan and any of the other Plan Documents according to their respective terms, including the right to receive the GUC Trust Assets as provided in the Plan.

        (d)      Transfer of the GUC Trust Assets to the GUC Trust

On the Effective Date, pursuant to sections 1123, 1141(b), and 1141(c) of the Bankruptcy Code, all right, title, and interest in and to the GUC Trust Assets shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the GUC Trust free and clear of all Liens, Claims, Encumbrances, interests, and rights of any nature, whether at law or in equity, of any Person or Entity. The GUC Trust shall be the Debtor's Estate representative pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code with respect to any transfers on the Effective Date pertaining to the GUC Trust Assets. To the extent any of the GUC Trust Assets are not transferred to the GUC Trust on the Effective Date pursuant to the Plan, then as soon as such assets accrue or become transferable after the Effective Date, they shall automatically and immediately transfer to the GUC Trust free and clear of all Encumbrances and Claims or other interests of any Person. The GUC Trust shall be the Debtor's Estate representative pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code with respect to any transfers after the Effective Date pertaining to the GUC Trust Assets.

        (e)      GUC Trust as Successor in Interest to the Debtor

On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtor shall be deemed to have resigned and the GUC Trustee shall be appointed as the sole manager, director, and officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtor's managers, directors, and officers. From and after the Effective Date, the GUC Trustee shall be the sole representative of, and shall act for, the Post-Effective Date Debtor. The Post-Effective Date Debtor or the GUC Trustee, as applicable, shall be deemed to be substituted in lieu of the Debtor as the proper party in interest in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Post-Effective Date Debtor or the GUC Trustee to file motions or substitutions of parties or counsel in any such matter.

        (f)      Disposition of Trust Assets

The GUC Trust shall have the ability and authority to dispose administer, invest, and monetize the GUC Trust Assets and use the GUC Trust Assets, including the proceeds thereof, to make distributions to the Holders of Channeled GUC Trust Claims in accordance with the GUC Trust Documents.

        (g)      GUC Trustee

The GUC Trustee shall be the persons identified in the Plan Supplement. Any successor GUC Trustee shall be selected in accordance with the terms of the GUC Trust Agreement. For purposes of performing its duties and fulfilling its obligations under the GUC Trust Agreement and the Plan, the GUC Trustee shall be deemed to be (and

the Confirmation Order shall provide that it is) a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code. On and after the Effective Date, the GUC Trustee and its designees or representatives shall have the exclusive right to object to, Allow, or otherwise resolve any Channeled GUC Trust Claim, subject to the terms hereof and the GUC Trust Documents.

(h)     GUC Trust as Successor to the Debtor and Its Estate

In addition to all powers enumerated in the GUC Trust Agreement, in the Plan, and in the Confirmation Order, from and after the Effective Date, the GUC Trust shall succeed to all the rights and standing of the Debtor and its Estate with respect to the Retained GUC Trust Causes of Action. The GUC Trust will be automatically appointed on the Effective Date as a representative of the Debtor's Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code. The GUC Trust will have the exclusive authority and power to: among other things, (a) administer, object to, and settle Channeled GUC Trust Claims; (b) dispose of GUC Trust Assets, (c) make distributions to Holders of Allowed Channeled GUC Trust Claims in accordance with the Plan and the GUC Trust Agreement, including the GUC Trust Agreement; and (d) carry out the provisions of the Plan relating to the GUC Trust and the Channeled GUC Trust Claims, including commencing, prosecuting, and settling all Retained GUC Trust Causes of Action for the benefit Holders of Channeled GUC Trust Claims. The GUC Trust shall succeed to all the rights and powers of the Debtor and its Estate with respect to all Retained GUC Trust Causes of Action, and the GUC Trust shall be substituted and will replace the Debtor, its Estate, any official committee appointed in the Chapter 11 Case, in all such Retained GUC Trust Causes of Action, whether or not such claims are pending in filed litigation.

(i)     GUC Trust Advisory Committee

There shall be a GUC Trust Advisory Committee (the "GUC TAC") for the GUC Trust. The GUC TAC shall consist of [●] members. The initial members of the GUC TAC shall be selected by the UCC and will be identified in the Plan Supplement. Each of the member of the GUC TAC shall serve in accordance with the terms of the GUC Trust Agreement. Successor GUC TAC members shall be selected pursuant to the terms of the GUC Trust Agreement. The GUC Trustee and any claims administrator appointed by the GUC Trustee shall evaluate all Channeled GUC Trust Claims on an independent basis and shall operate in accordance with the GUC Trust Documents, the Plan and Confirmation Order and in accordance with applicable ethical rules.

(j)     Assignment of Claims and Defenses

Notwithstanding anything herein to the contrary, on the Effective Date, the Debtor shall be deemed to assign any and all Claims and defenses to the GUC Trust that arise from or relate to the Channeled GUC Trust Claims, including any Claims and defenses against co-defendants.

(k)     Investment Guidelines

All monies held in the GUC Trust shall be invested, subject to the investment guidelines enumerated in the GUC Trust Agreement.

(l)     Privileged Information

Any attorney-client privilege, work-product privilege, common-interest communications with Insurance Companies, protection, or privilege granted by joint defense, common interest, and/or other privilege or immunity of the Debtor relating, in whole or in part, to any Channeled GUC Trust Claim shall be irrevocably transferred to and vested in the GUC Trust as of the Effective Date. The transfers or assignment of any privileged information will vest solely in the GUC Trust and not the GUC TAC, any other Person, committee, or subcomponent of the GUC Trust, or any Person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Channeled GUC Trust Claim.

(m) Certain Tax Matters of the GUC Trust

The GUC Trustee shall file tax returns for the GUC Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) and in accordance with the Plan. The GUC Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items is respect of any assets allocable to, or retained on account of, Disputed Claims) will be allocated to each holder of GUC Trust Interests in accordance with their relative ownership of GUC Trust Interests. As soon as possible after the Effective Date, the GUC Trustee shall make a good faith valuation of the GUC Trust Assets, and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The GUC Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the GUC Trust for all taxable periods through the dissolution thereof. Nothing in **Article IV.F** shall be deemed to determine, expand, or contract the jurisdiction of the Bankruptcy Court under section 505 of the Bankruptcy Code. The GUC Trustee (1) may timely elect to treat any GUC Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the GUC Trustee and the holders of GUC Trust Interests) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing. The GUC Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

(n) Institution and Maintenance of Legal and Other Proceedings

As of the Effective Date, the GUC Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the GUC Trust, including the GUC Insurance Actions, Channeled GUC Trust Claims, and the Retained GUC Trust Causes of Action. Without limiting the foregoing, on and after the Effective Date, the GUC Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the name of the Debtor of the Post-Effective Date Debtor, if deemed necessary or appropriate by the GUC Trust.

(o) GUC Trust Discovery

The GUC Trust is authorized pursuant to Bankruptcy Rule 2004 and/or other applicable discovery rules to receive information pursuant to the GUC Data Transfer. The authorization of any discovery request pursuant to this provision shall not be construed to deprive the recipient of such discovery request of any applicable privilege or immunity from discovery. The GUC Trust shall be able to take whatever steps are necessary to enforce such discovery obligations pursuant to Bankruptcy Rule 2004, Civil Rule 45, other court resolution processes, under bankruptcy law, and applicable non-bankruptcy law. Nothing herein shall abridge or affect the rights of the GUC Trust or the GUC Trustee to discovery in any proceeding or litigation brought by the GUC Trust or the GUC Trustee.

(p) GUC Trust Independence

No Released Party (other than the GUC Trustee, the UCC, and their current and former attorneys, professionals, and advisors) shall have any rights or involvement in the GUC Trust, including its management or operation, or in connection with the GUC Trust Documents. Nothing in the Plan creates any rights or obligations that may give rise to a claim or Cause of Action by such Released Party against the GUC Trust or any Holder of a Channeled GUC Trust Claim.

(q) GUC Trustee as Wind-Down Officer of Debtor

On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtor shall be deemed to have resigned and the GUC Trustee shall be appointed as the sole manager, director, and officer of the Post-Effective Date Debtor (the "Wind-Down Officer") and in such capacity shall succeed to the powers of the Debtor's managers, directors, and officers. From and after the Effective Date, the Wind-Down Officer shall be the sole representative of, and shall act for, the Post-Effective Date Debtor. The Post-Effective

Date Debtor or the Wind-Down Officer, as applicable, shall be deemed to be substituted in lieu of the Debtor as the proper party in interest in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Post-Effective Date Debtor or the Wind-Down Officer to file motions or substitutions of parties or counsel in any such matter. In addition, the Wind-Down Officer shall have the power to administer the responsibilities of the Debtor, including, but not limited to (i) effectuating the process to wind down, dissolve and liquidate the Estate and distribute any remaining assets in accordance with the Plan, including taking any steps to dissolve, liquidate, or take other similar action with respect to the Debtor, including by terminating the corporate or organizational existence of the Debtor, (ii) implement, enforce, comply with and effectuate, as applicable, all provisions of the Plan and the obligations under the Plan, including without limitation the administration, protection, monetization of the tangible and intangible assets and rights to assets of the Post-Effective Date Debtor, (iii) prepare and file appropriate tax returns and other reports on behalf of the Debtor and pay taxes or other obligations owed by the Debtor, (iv) enter into and consummate any transactions for the purpose of dissolving the Debtor, (v) take such actions as are necessary or appropriate to close the Debtor's Chapter 11 Case.

    2.    <u>PI/WD Trust</u>

    (a)    Establishment of the PI/WD Trust

On the Effective Date, the PI/WD Trust shall be established in accordance with the Plan Documents. The PI/WD Trust is intended to qualify as a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and, to the extent permitted under applicable law, for state and local income tax purposes. All PI/WD Trust Assets contributed to the PI/WD Trust under the Plan shall be deemed to be contributed by the Debtor and Its Estate.

    (b)    Purposes of the PI/WD Trust

The purposes of the PI/WD Trust shall be to assume responsibility for Channeled PI/WD Trust Claims, maximize the value of the PI/WD Insurance Action Recoveries, pursue the Retained PI/WD Trust Causes of Action, and, among other things: (1) to hold, preserve, maximize, and administer the PI/WD Trust Assets, (2) to liquidate the PI/WD Trust Assets, and (3) to administer, process, settle, resolve, liquidate, satisfy, and pay all Allowed Channeled PI/WD Trust Claims in a fair, consistent, and equitable manner in accordance with the terms of the PI/WD Trust Documents and the Plan. The PI/WD Trust shall also have rights with respect to the Retained Causes of Action, subject to the provisions and consent rights of the PI/WD Trust, as set forth in **Article IV.J**, with the net proceeds of such Retained Causes of Action to be split between the PI/WD Trust and the GUC Trust on a 50/50 basis.

    (c)    Assumption of Channeled PI/WD Trust Claims by the PI/WD Trust

On the Effective Date or as otherwise provided herein, and without further action of any Person, the PI/WD Trust shall assume the liabilities, obligations, and responsibilities of the Debtor for all Channeled PI/WD Trust Claims as set forth in the Plan. The PI/WD Trust shall have control over the Retained PI/WD Trust Causes of Action and the PI/WD Insurance Actions, and the PI/WD Trust shall thereby be the estate representative pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code with the right to enforce each of the Retained PI/WD Trust Causes of Action and the PI/WD Insurance Actions, and the proceeds of the recoveries on any of the Retained PI/WD Trust Causes of Action or the PI/WD Insurance Actions shall be deposited in and become the property of the PI/WD Trust, and the PI/WD Trust shall have the right to enforce the Plan and any of the other Plan Documents according to their respective terms, including the right to receive the PI/WD Trust Assets as provided in the Plan.

    (d)    Transfer of the PI/WD Trust Assets to the PI/WD Trust

On the Effective Date, pursuant to sections 1123, 1141(b), and 1141(c) of the Bankruptcy Code, all right, title, and interest in and to the PI/WD Trust Assets shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the PI/WD Trust free and clear of all Liens, Claims, Encumbrances, interests, and rights of any nature, whether at law or in equity, of any Person or Entity. The PI/WD Trust shall be the Debtor's Estate

representative pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code with respect to any transfers on the Effective Date pertaining to the PI/WD Trust Assets. To the extent any of the PI/WD Trust Assets are not transferred to the PI/WD Trust on the Effective Date pursuant to the Plan, then as soon as such assets accrue or become transferable after the Effective Date, they shall automatically and immediately transfer to the PI/WD Trust free and clear of all Encumbrances and Claims or other interests of any Person. The PI/WD Trust shall be the Debtor's Estate representative pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code with respect to any transfers after the Effective Date pertaining to the PI/WD Trust Assets.

(e)    Disposition of Trust Assets

The PI/WD Trust shall have the ability and authority to administer, invest and monetize the PI/WD Trust Assets and use the PI/WD Trust Assets, including the proceeds thereof, to make distributions to the Holders of Channeled PI/WD Trust Claims in accordance with the PI/WD Trust Documents.

(f)    PI/WD Trustee

The PI/WD Trustee shall be the person identified in the Plan Supplement. Any successor PI/WD Trustee shall be selected in accordance with the terms of the PI/WD Trust Agreement. For purposes of performing their duties and fulfilling their obligations under the PI/WD Trust Agreement and the Plan, the PI/WD Trustee shall be deemed to be (and the Confirmation Order shall provide that it is) a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code. On and after the Effective Date, the PI/WD Trustee and its designees or representatives shall have the exclusive right to object to, Allow, or otherwise resolve any Channeled PI/WD Trust Claim, subject to the terms hereof and the PI/WD Trust Documents. On and after the Effective Date, the Debtor, the GUC Trustee and its designees or representatives shall have no right to object to, Allow, or otherwise resolve any Channeled PI/WD Trust Claim.

(g)    PI/WD Trust as Successor to the Debtor and Its Estate

In addition to all powers enumerated in the PI/WD Trust Agreement, in the Plan, and in the Confirmation Order, from and after the Effective Date, the PI/WD Trust shall succeed to all the rights and standing of the Debtor and its Estate with respect to the Retained PI/WD Trust Causes of Action. The PI/WD Trust will be automatically appointed on the Effective Date as a representative of the Debtor's Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code. The PI/WD Trust will have the exclusive authority and power to: among other things, (a) administer, object to, and settle Channeled PI/WD Trust Claims; (b) dispose of PI/WD Trust Assets, (c) make distributions to Holders of Allowed Channeled PI/WD Trust Claims in accordance with the Plan and the PI/WD Trust Agreement, including the PI/WD Trust Distribution Procedures; and (d) carry out the provisions of the Plan relating to the PI/WD Trust and the Channeled PI/WD Trust Claims, including commencing, prosecuting, and settling all Retained PI/WD Trust Causes of Action for the benefit Holders of Channeled PI/WD Trust Claims. The PI/WD Trust shall succeed to all of the rights and powers of the Debtor and its Estate with respect to all Retained PI/WD Trust Causes of Action, and the PI/WD Trust shall be substituted and will replace the Debtor, its Estate, any official committee appointed in the Chapter 11 Case, in all such Retained PI/WD Trust Causes of Action, whether or not such claims are pending in filed litigation.

(h)    PI/WD Trust Advisory Committee

There shall be a Trust Advisory Committee (the "TAC") for the PI/WD Trust. The TAC shall consist of [●] members. The initial members of the TAC shall be selected by the TCC and will be identified in the Plan Supplement. Each of the member of the TAC shall serve in accordance with the terms of the PI/WD Trust Agreement. Successor TAC members shall be selected pursuant to the terms of the PI/WD Trust Agreement. No TAC member, in his or her capacity as such, shall have any right, or involvement in, the application of the PI/WD Trust Distribution Procedures to any Channeled PI/WD Trust Claim or the Allowance of any Channeled PI/WD Trust Claim under the PI/WD Trust Distribution Procedures. The PI/WD Trustee and any claims administrator appointed pursuant to the PI/WD Trust Documents shall evaluate all Channeled PI/WD Trust Claim on an independent basis and shall operate in accordance with the PI/WD Trust Documents, the Plan and Confirmation Order and in accordance with applicable ethical rules.

(i)     PI/WD Trust Distribution Procedures

On the Effective Date, the PI/WD Trust Distribution Procedures shall become effective, and the PI/WD Trustee shall implement the PI/WD Trust Distribution Procedures in accordance with the terms of the PI/WD Trust Documents to reach fair, reasonable, and equitable settlements between the Holder of each Allowed Channeled PI/WD Trust Claim and the PI/WD Trust. The PI/WD Trust Distribution Procedures shall not be used to determine the liability of any Governmental Unit that may be co-liable with the PI/WD Trust for a Channeled PI/WD Trust Claim. From and after the Effective Date, the PI/WD Trustee shall have the authority to administer, amend, supplement, or modify the PI/WD Trust Distribution Procedures solely in accordance with the terms thereof and the PI/WD Trust Documents and the Plan.

(j)     Assignment of Claims and Defenses

Notwithstanding anything herein to the contrary, on the Effective Date, the Debtor shall be deemed to assign any and all Claims and defenses to the Trust that arise from or relate to the Channeled PI/WD Trust Claims, including any Claims and defenses against co-defendants.

(k)     Investment Guidelines

All monies held in the PI/WD Trust shall be invested, subject to the investment guidelines enumerated in the Trust Agreement.

(l)     Privileged Information

Any attorney-client privilege, work-product privilege, common-interest communications with Insurance Companies, protection, or privilege granted by joint defense, common interest, and/or other privilege or immunity of the Debtor relating, in whole or in part, to any Channeled PI/WD Trust Claim shall be irrevocably transferred to and vested in the PI/WD Trust as of the Effective Date. The transfers or assignment of any privileged information will vest solely in the PI/WD Trust and not the TAC, any other Person, committee, or subcomponent of the PI/WD Trust, or any Person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Channeled PI/WD Trust Claim.

(m)     Certain Tax Matters of the PI/WD Trust

The PI/WD Trust is intended to qualify as a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code. The PI/WD Trustee shall be the "administrator" of the PI/WD Trust as such term is used in Treasury Regulation Section 1.468B-2(k)(3) and shall be responsible for filing all tax returns of the PI/WD Trust. The PI/WD Trust shall be responsible for the payment of any taxes imposed on the PI/WD Trust or the PI/WD Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the PI/WD Trust Agreement. The P/WD Trustee may request an expedited determination of taxes on the PI/WD Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the PI/WD Trust for all taxable periods through the dissolution of the PI/WD Trust.

(n)     Institution and Maintenance of Legal and Other Proceedings

As of the Effective Date, the PI/WD Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the PI/WD Trust, including the PI/WD Insurance Actions, Channeled PI/WD Trust Claims, and the Retained PI/WD Trust Causes of Action. Without limiting the foregoing, on and after the Effective Date, the PI/WD Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the name of the Debtor of the Post-Effective Date Debtor, if deemed necessary or appropriate by the PI/WD Trust. Furthermore, without limiting the foregoing, the PI/WD Trust shall be empowered to maintain, administer, preserve, or pursue the PI/WD Insurance Actions and the PI/WD Insurance Action Recoveries.

(o)    PI/WD Trust Discovery

The PI/WD Trust is authorized pursuant to Bankruptcy Rule 2004 and/or other applicable discovery rules to receive information pursuant to the PI/WD Data Transfer.  The authorization of any discovery request pursuant to this provision shall not be construed to deprive the recipient of such discovery request of any applicable privilege or immunity from discovery.  The PI/WD Trust shall be able to take whatever steps are necessary to enforce such discovery obligations pursuant to Bankruptcy Rule 2004, Civil Rule 45, other court resolution processes, under bankruptcy law, and applicable non-bankruptcy law.  Nothing herein shall abridge or affect the rights of the PI/WD Trust or the PI/WD Trustee to discovery in any proceeding or litigation brought by the PI/WD Trust or the PI/WD Trustee.

(p)    PI/WD Trust Independence

No Released Party (other than the PI/WD Trustee, the TCC, and their current and former attorneys, professionals, and advisors) shall have any rights or involvement in the PI/WD Trust, including its management or operation, or in connection with the PI/WD Trust Documents.  Nothing in the Plan creates any rights or obligations that may give rise to a claim or Cause of Action by such Released Party against the PI/WD Trust or any Holder of a Channeled PI/WD Trust Claim.

## G.    Corporate Action

On or before the Effective Date, as applicable, all actions contemplated under the Plan or in any of the documents contained the Plan Supplement (including any action to be undertaken by the Post-Effective Date Debtor or the Wind-Down Officer, as applicable) shall be deemed authorized and approved, and, to the extent taken by the Debtor prior to the Effective Date, ratified, confirmed and approved without any requirement for further action by Holders of Claims or Interests, the Debtor, or any other Entity in all respects.  All matters provided for in the Plan involving the corporate structure of the Debtor or the Post-Effective Date Debtor, as applicable, and any corporate action required by the Debtor or the Post-Effective Date Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtor or the Post-Effective Date Debtor, as applicable.

Upon the Effective Date or as soon as reasonably practicable thereafter, after making all distributions required to be made under the Plan, the Debtor shall be deemed to have been dissolved and terminated and the Wind-Down Officer shall be responsible for effectuating such dissolution.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Post-Effective Date Debtor or the Wind-Down Officer, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtor or Post-Effective Date Debtor.  The authorizations and approvals contemplated by this **Article IV.E** shall be effective notwithstanding any requirements under non-bankruptcy law.

## H.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Post-Effective Date Debtor, the PI/WD Trustee, or GUC Trustee, as may be applicable, is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the documents contained in the Plan Supplement, in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

## I.    Exemptions from Certain Taxes and Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, no transfers of property under the Plan shall be subject in any way to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, including but not limited to (1) the issuance, distribution, transfer, or

exchange of any debt, equity security, or other interest in either Trust; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan. Each appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### J.    *Preservation of Causes of Action*

Except as otherwise provided in this Plan, an agreement or document entered into in connection with the Plan, or in a Final Order of the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and as set forth more fully in the Disclosure Statement, the Debtor reserves and, as of the Effective Date, assigns to the GUC Trust and the PI/WD Trust  the Estate Causes of Action identified in the Plan Supplement as Retained Causes of Action. On and after the Effective Date, the GUC Trustee (in its own capacity and as agent for the PI/WD Trust), may pursue Retained Causes of Action on behalf of the GUC Trust and the PI/WD Trust in accordance with the Cooperation Agreement. Retained Causes of Action may be commenced, prosecuted, and settled by the GUC Trust, with the prior written consent of the PI/WD Trust, with the net proceeds of such Retained Causes of Action be split between the PI/WD Trust and the GUC Trust on a 50/50 basis. The PI/WD Trustee and the GUC Trustee shall confer in good faith regarding (i) the retention of professionals to represent the GUC Trust (in its own capacity and as agent for the PI/WD Trust) with respect to the Retained Causes of Action on behalf of the Trusts, and (ii) all matters relating to the administration of the Retained Causes of Action; *provided*, *however*, notwithstanding the foregoing, the GUC Trust shall be required to obtain the consent of the PI/WD Trust for any material matter, including the filing, prosecution, enforcement, abandonment, settlement, compromise, release, withdrawal or litigation to judgment of the Retained Causes of Action, which could affect the PI/WD Trust.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Estate Cause of Action against it as any indication that the GUC Trustee or the PI/WD Trustee, as appropriate, will not pursue all available Estate Causes of Action against it. Unless any Estate Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the GUC Trustee and PI/WD Trustee expressly reserve all Estate Causes of Action for later adjudication, and, therefore no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Estate, and (ii) all matters relating to the administration of the Retained Causes of Action; *provided*, *however*, notwithstanding the foregoing, the GUC Trust shall be required to obtain the consent of the PI/WD Trust for any material matter, including the filing, prosecution, enforcement, abandonment, settlement, compromise, release, withdrawal or litigation to judgment of the Retained Causes of Action which could affect the PI/WD Trust.

The Debtor, the GUC Trustee, or the PI/WD Trustee, as applicable, reserves such Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. Subject to the foregoing consent rights of the PI/WD Trust, the GUC Trust shall retain and shall have, including through its authorized agents or representatives, the right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

### K.    *Dissolution of Committees and Cessation of Fee and Expense Payments*

On the Effective Date, the Committees will dissolve, and the members of the Committees and the Committees' Professionals will cease to have any role arising from or relating to the Chapter 11 Case; *provided*, that the Committees shall have post-Effective Date standing to object to Administrative Claims and Professional Fee Claims and shall be entitled to file a Professional Fee Claim for services related thereto and otherwise provided before

the Effective Date, subject to rights of any party in interest to object thereto; *provided* further, that any disputes involving Professional Fees have been resolved by a Final Order and all deadlines specified in **Article II.B** have passed or expired. For the avoidance of any doubt, the Committees will not dissolve on the Effective Date, and will continue in existence until the resolution of final fee applications in the manner, and according to the schedule, set forth in **Article II.B**. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or the Committees' Professionals to represent either the GUC Trustee or PI/WD Trustee or to be compensated or reimbursed per the Plan and the GUC Trust Agreement or PI/WD Trust Agreement in connection with such representation.

## <u>ARTICLE V.</u>
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption or Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless an Executory Contract or Unexpired Lease: (1) was previously assumed or rejected by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a pending motion to assume or assume and assign filed on or before the Effective Date; or (4) is identified on the Assumed Executory Contract and Unexpired Lease List. Entry of the Confirmation Order shall constitute a Bankruptcy Court order pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions, assumptions and assignments, or rejections described above as of the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be the subject of a Proof of Claim Filed with the Claims Agent and served on the Post-Effective Date Debtor, the GUC Trustee and the PI/WD Trustee no later than thirty (30) days after the later of (i) the Effective Date or (ii) the date of entry of a Bankruptcy Court order approving such rejection. Such Proof of Claim may be objected to in accordance with the provisions of **Article VIII** and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not the subject of a timely Filed Proof of Claim shall be Disallowed for all purposes in this Chapter 11 Case, discharged, and forever barred.

C.      *Cure of Defaults and Objections to Cure and Assumption*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

The Debtor shall provide notices of proposed cure amounts to counterparties to Executory Contracts and Unexpired Leases as part of the Plan Supplement. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, assumption and assignment, or related cure amount must be Filed, served, and actually received by counsel to the Debtor, a proposed assignee, and the Committees no later than the Confirmation Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assignment, or cure amount will be deemed to have assented to such assumption, assignment, or cure amount.

Assumption, or assumption and assignment, of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed for all purposes in this Chapter 11 Case, discharged, forever barred, and expunged without further notice to or action, order, or approval of the Bankruptcy Court.**

D.      *Insurance Policies*

Notwithstanding anything to the contrary herein, each of the PI/WD Insurance Policies, the GUC Insurance Policies, and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtor prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtor; *provided*, *however*, that to the extent any such Insurance Policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and assign the same to the PI/WD Trust if a PI/WD Trust Asset, or to the GUC Trust if a GUC Trust Asset. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any PI/WD Insurance Policy or GUC Insurance Policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any PI/WD Insurance Policy or GUC Insurance Policy shall be indefeasible.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Except as otherwise provided in a Final Order, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease on Schedule G of the Debtor's Schedules, nor anything contained in the Plan, or the Plan Supplement, shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Post-Effective Date Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, or the Trustees, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease to assume or reject it, including by rejecting such contract or lease effective as of the Confirmation Date.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Delivery of Distributions in General

Except as otherwise provided in the Plan or the applicable Trust Agreement, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Effective Date by the Trustees or other third parties, as applicable: (a) to the party designated to receive payment on any Proof of Claim or Proof of Interest; or (b) at the addresses set forth in any written notices of address changes delivered to the applicable Trustee after the Effective Date. Neither the Post-Effective Date Debtor nor either of the Trustees shall incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

2.        <u>Minimum; De Minimis Distributions</u>

No Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim unless provided otherwise in one of the Trust Agreements, as applicable.

3.        <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the GUC Trustee or the PI/WD Trustee, as applicable, has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the later of (a) the Effective Date and (b) the date of the distribution. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the GUC Trust or the PI/WD Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court, for distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

Neither the GUC Trustee nor the PI/WD Trustee nor their respective agents and attorneys are under a duty to take any action to either (a) attempt to locate any Holder, or (b) obtain an executed Internal Revenue Service Form W-9 from any Holder; provided that in their sole discretion, the GUC Trustee or the PI/WD Trustee, as applicable may periodically publish notice of unclaimed distributions.

If, at the time either of the Trusts terminates there remains unclaimed property in such Trust, such property shall be donated by the applicable Trustee to the Anthony H.N. Schnelling Endowment Fund maintained by the American Bankruptcy Institute, to assist in the provision of resources for research and education, provided that such fund is a tax-exempt entity in good standing under applicable laws.

B.       *Manner of Payment*

At the option of the applicable Trustee, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

C.       *Compliance Matters*

In connection with the Plan and all distributions hereunder, to the extent applicable, the Trustees are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan or pursuant to the GUC Trust Agreement and the PI/WD Trust Agreement shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Trustees shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Trustees reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

D.      *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

E.      *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, the Post-Effective Date Debtor and the Trustees may, pursuant to the Bankruptcy Code, applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that such Post-Effective Date Debtor or Trustee, as applicable, may hold against the Holder of such Allowed Claim. In no event shall any Claim Holder be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Post-Effective Date Debtor or either Trustee (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to implement such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

<u>**ARTICLE VII.**</u>
**RESERVES ADMINISTERED BY THE GUC TRUSTEE**

A.      *Establishment of Reserve Accounts*

The GUC Trustee shall either establish or take assignment of each of the Distribution Reserve Accounts, which, notwithstanding anything to the contrary contained in this Plan, may be effectuated by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the GUC Trustee.  In the event that the Debtor has established one or more of the Distribution Reserve Accounts prior to the Effective Date, such Distribution Reserve Accounts shall be transferred to the GUC Trust on the Effective Date and administered by the GUC Trustee under the terms of the Plan.

B.      *Administrative and Priority Claims Reserve*

On or before the Effective Date, the Debtor shall establish the Administrative and Priority Claims Reserve. The Administrative and Priority Claims Reserve shall be used by the GUC Trustee to pay Allowed Administrative and Priority Claims.  If all or any portion of an Administrative or Priority Claim shall become a Disallowed Claim, then the amount on deposit in the Administrative and Priority Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in such Reserve, shall remain in the Administrative and Priority Claims Reserve to the extent that the GUC Trustee determines necessary to ensure that the Cash remaining in the Administrative and Priority Claims Reserve is sufficient to ensure that all Allowed Administrative and Priority Claims will be paid in accordance with the Plan.

C.      *Other Secured Claims Reserve*

On the Effective Date if appropriate, the Debtor shall establish the Other Secured Claims Reserve by depositing Cash proceeds from the sale of assets securing the Other Secured Claims, if any.  The Other Secured Claims Reserve shall be used by the GUC Trustee to pay Allowed Other Secured Claims to the extent not satisfied by the return of the assets securing the Allowed Other Secured Claim.  If all or any portion of an Other Secured Claim shall become a Disallowed Claim, then the amount on deposit in the Other Secured Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Other Secured Claims Reserve, shall remain in the Other Secured Claims Reserve or be transferred out of the Other Secured Claims Reserve to the extent that the GUC Trustee determines necessary to ensure that the Cash remaining in the Other Secured Claims Reserve is sufficient to ensure that all Allowed Other Secured Claims will be paid in accordance with the Plan.

D.      *Debtor's Lack of Interest in Distribution Reserve Accounts*

The Debtor shall not have any reversionary or other interest in or with respect to any of the Distribution Reserve Accounts.

### ARTICLE VIII.
### PROCEDURES FOR RESOLVING CERTAIN CONTINGENT,
### UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

A.      *Applicability*

All Disputed Secured Claims, Priority Tax Claims, Other Priority Claims, and Convenience Claims, against the Debtor shall be subject to the provisions of this **Article VIII**.  All Administrative Claims shall be determined and, if Allowed, paid in accordance with **Article II**.  None of the terms or provision of this **Article VIII** shall apply to Channeled GUC Trust Claims, which shall be exclusively processed, liquidated, Allowed, and paid by the GUC Trustee in accordance with the GUC Trust Documents and the Plan.  None of the terms or provision of this **Article VIII** shall apply to Channeled PI/WD Trust Claims, which shall be exclusively processed, liquidated, Allowed, and paid by the PI/WD Trustee in accordance with the PI/WD Trust Documents and the Plan.

B.      *Allowance of Disputed Claims and Interests*

After the Effective Date, the GUC Trustee shall have and retain any and all rights and defenses the Debtor had with respect to any Secured Claims, Priority Tax Claims, Other Priority Claims, Convenience Claims, or Interests immediately prior to the Effective Date.  Except as expressly provided in the Plan or in any Final Order of the Bankruptcy Court entered prior to the Effective Date (including the Confirmation Order and the DIP Order), no Secured Claim, Priority Tax Claim, Other Priority Claim, or Convenience Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan, the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case Allowing such Claim.  All Interests, Secured Claims, Priority Tax Claims, Other Priority Claims, and Convenience Claims that have been Allowed or otherwise disposed of prior to the Effective Date pursuant to a Final Order of the Court pursuant to Bankruptcy Rule 9019 or otherwise, if any, shall remain binding on all parties.

C.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date the GUC Trustee shall have, with respect to Other Secured Claims, Priority Tax Claims, Other Priority Claims, Convenience Claims, and Interests, the sole authority to:  (1) file, withdraw, or litigate to judgment objections to such Claims or Interests; (2) settle or compromise any such Disputed Claims or Interests without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and direct the Claims Agent to adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the GUC Trustee shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Other Secured Claims, Priority Tax Claims, Other Priority Claims, Convenience Claims, and Interests.

D.      *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtor or the GUC Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Secured Claims, Priority Tax Claims, Other Priority Claims, and Convenience Claims or Interests that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any such Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  If the Bankruptcy

Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the GUC Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

E.      *Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the GUC Trustee without the GUC Trustee having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes Allowed.

G.      *Disallowance of Claims*

Any Claim held by an Entity from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of any such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Trustees.

**EXCEPT AS PROVIDED HEREIN OR IN AN ORDER OF THE BANKRUPTCY COURT, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE SHALL BE AUTOMATICALLY DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL BY, FROM OR OF THE BANKRUPTCY COURT, THE DEBTOR OR THE GUC TRUSTEE. HOLDERS OF SUCH CLAIMS SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS.**

H.      *Claim Amendment Deadline*

**ANY AMENDMENTS TO ANY CLAIM TIMELY FILED BY THE CLAIMS BAR DATE MUST BE MADE WITHIN THIRTY (30) DAYS FOLLOWING THE EFFECTIVE DATE. ANY AMENDMENTS FILED MORE THAN THIRTY (30) DAYS AFTER THE EFFECTIVE DATE SHALL BE DEEMED INEFFECTIVE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH AMENDED CLAIMS.**

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the GUC Trustee shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled as of the Effective Date under the terms of the GUC Trust Documents, without any interest to be paid on account of such Claim or Interest.

*J.*      *No Interest*

Unless otherwise specifically provided for by the Plan or the Confirmation Order, or unless otherwise required by applicable bankruptcy law, no post-petition interest shall accrue or be paid on any Claim or Interest and no Holder of any Claim or Interest shall be entitled to interest accruing on or after the Petition Date.

## ARTICLE IX.
## SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS

*A.*      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  The treatment provided for Channeled PI/WD Trust Claims under the Plan and the PI/WD Trust Documents incorporates and reflects a proposed settlement framework of such Claims against the Debtor.  In consideration for the distributions and other benefits provided under the Plan and the PI/WD Trust Documents, as of the Effective Date, the provisions of the Plan and the PI/WD Trust Documents, shall constitute a good-faith settlement for Channeled PI/WD Trust Claims relating to the contractual, legal, equitable and subordination rights that Holders of Channeled PI/WD Trust Claims may have with respect to such Claims under the Plan or any distribution to be made on account of such Claims.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the settlement framework for all Channeled PI/WD Trust Claims, as well as a finding by the Bankruptcy Court that such settlement framework, to the extent followed by and used by the PI/WD Trust, will result in Allowed Claim amounts that are fair, reasonable, and equitable under the circumstances of this Chapter 11 Case and for the limited purpose of determining the Debtor's liability and obligation to pay such Allowed Channeled PI/WD Trust Claim, *provided*, *however*, that such finding shall not determine in any respect the liability of a Governmental Unit for such Claim, which liability shall be determined through litigation and/or settlement separate and apart from the Plan and the Chapter 11 Case in all respects.  On the Effective Date, the Settling Parties shall release and waive all Claims and Causes of Action against the Debtor and its Estate, including the DIP Lender's Claims under the DIP Order and the DIP Facility, the Proof of Claim filed by Geneva Consulting LLC (Claims Register No. 572 for $315,032.97), and the Proof of Claim filed by M2 LoanCo, LLC (Claims Register No. 589 for $24,032,965), which Claims shall be Disallowed for all purposes and expunged from the Claims Register.  The Settling Parties will have no right to seek indemnification from the Trusts and will not assert any claims against the Trusts.

*B.*      ***Release of Liens***

**On the Effective Date, all mortgages, deeds of trust, Liens (including the DIP Liens), pledges, or other security interests against any property of the Estate shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens (including the DIP Liens), pledges, or other security interests shall revert automatically to the Debtor and its successors and assigns, including the Trusts.  Any Holder of a Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Debtor or the Trustees to evidence the release of such Lien (including the DIP Lien), including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens (including the DIP Liens).**

*C.*      *Estate Release*

As of the Final Payment Date, except for the claims or theories of recover or remedies distributed to or retained by Holders of Opt-Out GUC Claims, Holders of Opt-Out PI/WD Claims, and Holders of Opt-Out Indirect Claims, and except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, and each of their respective successors or assigns, including the Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, the Payment Agreement, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in the Plan shall not be construed to release any Insurance Actions or any post-Effective Date obligations under the Estate Party Settlement or any document, instrument, or agreement executed to implement the Estate Party Settlement.  If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.C shall be void.  If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts.  Any Released Party may enforce the Estate Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose.  The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

*D.*      *Consensual Claimant Release*

As of the Final Payment Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the actions of the Released Parties to facilitate the Estate Party Settlement, as an integral component of the Plan, to the maximum extent permitted under applicable law, all Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; *provided*, *however*, that the releases set forth in this Article IX.D shall not, and shall not be construed to:  (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in

accordance with the Plan and the Trust Documents. If, following the Final Payment Date, any portion of the Settlement Payment is clawed back from the Trusts and not promptly replaced by any of the other Settling Parties upon demand, the releases set forth this Article IX.D shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts. Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose. The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

E.      *Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9*

As of the Final Payment Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Channeled GUC Claims), Class 6 (Channeled PI/WD Claims), Class 8 (Opt-Out Insured PI/WD Claims), and Class 9 (Channeled Indirect Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IX.E shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.

F.      *Exculpation*

As of the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest, for any claim or cause of action arising from the Petition Date through the Effective Date, arising from, relating to, or connected with the administration of the Chapter 11 Case, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

G.      *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Post-Effective Date Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

*H.*      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order, including the Channeling Injunction, shall remain in full force and effect in accordance with their terms.

*I.*      *Channeling Injunction*

    1.    **Purpose**

As of the Effective Date, to facilitate the liquidation of Channeled Claims by the Trusts and the preserve and promote the settlement framework contemplated by and provided for in the Plan, including the Estate Party Settlement, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under the Bankruptcy Code, the Bankruptcy Court shall issue the channeling injunction set forth in this **Article IX.I** (the "**Channeling Injunction**").

    2.    **Protections Afforded to Released Parties**

Subject to the terms of **Article IX.I.5**, and while the Channeling Injunction is in full force and effect as to any Channeled Claim, (a) the sole recourse of any Holder of a Channeled PI/WD Trust Claim that is eligible for compensation under the PI/WD Trust Distribution Procedures on account of such Channeled PI/WD Trust Claim shall be to and against the PI/WD Trust pursuant to the PI/WD Trust Documents, and such Holder shall have no right to assert such Channeled PI/WD Trust Claim or any Claim against the Debtor against any Released Party, and (b) the sole recourse of any Holder of a Channeled GUC Trust Claim that is eligible for compensation under the Plan and the GUC Trust Agreement on account of such Channeled GUC Trust Claim shall be to and against the GUC Trust, and such Holder shall have no right to assert such Channeled GUC Trust Claim or any Claim against the Debtor against any Released Party. Accordingly, on or after the Effective Date, and subject to the terms of **Article IX.I.5**, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including:

    (a)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Released Party, or any property or interest in property of any Released Party;

    (b)    enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Released Party, or any property or interest in property of any Released Party;

    (c)    creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against any Released Party, or any property or interest in property of any Released Party;

    (d)    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Released Party, or any property or interest in property of any Released Party; or

(e)      **taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or any Plan Document or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Trusts, except in conformity and compliance with the Plan and any Plan Document with respect to any such Channeled Claim.**

3.      **Reservations**

Notwithstanding anything to the contrary in this **Article IX.I**, this Channeling Injunction shall not enjoin:

(a)      **the rights of Holders of Channeled PI/WD Trust Claims to assert such Claims against the PI/WD Trust in accordance with the PI/WD Trust Distribution Procedures;**

(b)      **the rights of Holders of Channeled GUC Trust Claims to assert such Claims against the GUC Trust in accordance with the Plan and the GUC Trust Agreement;**

(c)      **the rights of Holders of Channeled Claims to assert such Claims against any Released Party if the Channeling Injunction is terminated under Article IX.I.5;**

(d)      **the Trusts from enforcing their rights under the Plan and the Confirmation Order;**

(e)      **the rights of the Trusts to prosecute any action against an Insurance Company based on or arising from a PI/WD Insurance Policy or a GUC Insurance Policy;**

(f)      **the rights of the Trusts to prosecute any Retained Estate Causes of Action; and**

(g)      **the rights of Holders of Channeled Claims to seek recovery from any Person, Entity, or Governmental Unit that is not a Released Party on account of their Channeled Claims or any other claim or Cause of Action.**

4.      **Enforcement**

Any Released Party may enforce the Channeling Injunction before the Bankruptcy Court, which shall retain jurisdiction for such purpose. The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

5.      **Termination of Channeling Injunction**

The Channeling Injunction and all protections afforded to the Released Parties set forth in this **Article IX.I** shall terminate automatically (or not take effect) as to the Holder of any Channeled Claims if a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived by both the PI/WD Trustee and GUC Trustee in accord with **Article IV.B.2**, or if the Estate Release or the Consensual Claimant Release become void under **Article IV.B.7**, **Article IV.B.9** or **Article IV.B.12**.

6.      **Tolling of Statute of Limitations**

While the Channeling Injunction is in effect as to any Channeled Claim, and for ninety (90) days following the termination of the Channeling Injunction under **Article IX.I.5**, the running of any relevant Statute of Limitations shall be tolled as to any Channeled Claim. Upon the termination of the Channeling Injunction, the PI/WD Trustee and the GUC Trustee shall file a notice on the docket of the Chapter 11 Case and provide notice to beneficiaries of the Trusts that the Estate Party Settlement did not become effective and that such beneficiaries have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties.

*J.*      ***Injunction against Interference with the Plan***

**Upon entry of the Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan. The negotiation, settlement, and resolution of any Claims and Interest under the Plan shall not operate to excuse any Party from its obligations under any contracts, Insurance Policies, or other agreements, notwithstanding any terms of such contracts, Insurance Policies or agreements or provisions of non-bankruptcy law.**

*K.*      ***Injunction against Interference with Opt-Out Rights***

**As of the Effective Date, neither YesCare Corp., CHS TX, Inc. nor any other alleged successor entity may assert in any litigation involving an Opt-Out GUC Claim, an Opt-Out PI/WD Claim, or an Opt-Out Indirect Claim in the Civil Justice System that such Claims, to the extent asserted against YesCare Corp., CHS TX, Inc., or any other successor based on the doctrine of successor liability are barred, released, discharged, or impaired by the Confirmation Order, the Plan, or the Estate Release. The right to assert such Claims based on the doctrine of successor liability has been received or retained by the Holders of such Claims under <u>Article III.D</u>, and the Holders of such Claims shall have a Claim against Debtor solely to the extent necessary to preserve and enforce such right. Subject to the foregoing, YesCare Corp.'s, CHS TX, Inc.'s, or any other alleged successor entity's claims, rights, and defenses to any action brought by the Holder of an Opt-Out GUC Claim, an Opt-Out PI/WD Claim, or an Opt-Out Indirect Claim in the Civil Justice System are expressly preserved under the Plan, including the rights of YesCare Corp., CHS TX, Inc., or any other alleged successor entity to contest liability for Opt-Out GUC Claims, Opt-Out PI/WD Claims, or Opt-Out Indirect Claims and to argue that they are not liable as successors to the Debtor based on the facts of the underlying action and/or the requirements for imposing successor liability under applicable law.**

*L.*      *Insurance Provision*

Nothing in the Plan, the Plan Documents, the Confirmation Order, any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan, any order or opinion entered on appeal from the Confirmation Order, or any valuation of Claims (either individually or in the aggregate) in the Chapter 11 Case shall, with respect to any Insurance Company (including a PI/WD Insurance Company or a GUC Insurance Company): (i) constitute any adjudication, judgment, trial, hearing on the merits, finding, conclusion, other determination establishing the coverage obligation of any such Insurance Company for any Claim; or (ii) limit the right of any such Insurance Company to assert any Insurer Coverage Defense; *provided*, *however*, that with, respect to (i) and (ii), (y) the transfer of rights to the PI/WD Trust pursuant to the PI/WD Insurance Assignment and the transfer of rights to the GUC Trust pursuant to the GUC Insurance Assignment shall be valid and enforceable, and (z) the discharge or release of the Debtor or any Released Party from any Claims or Causes of Action under the Plan shall not affect the liability of any such Insurance Company. The establishment of any claim in litigation against the PI/WD Trust in its capacity as the Debtor's representative shall be deemed the establishment of a claim against the Debtor under any available Insurance Policy.

*M.*      *Claim Over*

The Estate Party Settlement is a good faith settlement that bars any Cause of Action by a non-Released Party against any Released Party for contribution, for indemnification, or otherwise seeking to recover any amounts paid by or awarded against that non-Released Party and paid or awarded to any Consenting Claimant by way of settlement, judgment, or otherwise on any claim that would be a Released Claim were such non-Released Party a Released Party to the extent that a good-faith settlement has such an effect in accordance with applicable law.

*N.*      *Retention of Liability*

Nothing in the Plan, the Plan Documents, the Confirmation Order, any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan, or any order or opinion entered on appeal from the Confirmation Order, shall constitute any adjudication, judgment, trial, hearing on the merits, finding, conclusion, or other determination establishing that any non-Released Party shall not be deemed to be (i) liable with the Debtor by reason of any theory of law or equity or (ii) liable (or continue to be liable) for their respective liabilities to any holder of a

Claim by reason of any theory of law or equity. Neither the Plan nor the Plan Documents shall in anyway reduce, limit, discharge or release any non-Released Party, including any Governmental Unit that may be co-liable with the Debtor on account of any Claim (including a PI/WD Claim), or any Insurance Company.

**ARTICLE X.**
**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE**

*A.*      *Conditions Precedent to the Confirmation of the Plan*

Confirmation of the Plan shall not occur unless each of the following conditions precedent has been satisfied or waived in accordance with **Article X.C**:

1. The Bankruptcy Court shall have entered the Disclosure Statement Order, in form and substance reasonably acceptable to the Debtor, the Committees, and the Settling Parties; and

2. The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order and any other order in conjunction therewith, in form and substance acceptable to the Committees, the Debtor and the Settling Parties. These findings and determinations shall, among other things, provide that:

   (a) the Plan and the Plan Documents comply with all applicable provisions of the Bankruptcy Code, including sections 1129 and 1123 of the Bankruptcy Code;

   (b) the Channeling Injunction is to be implemented in connection with the Trusts and shall be in full force and effect on the Effective Date;

   (c) upon the Effective Date, each of the Trusts shall assume the liabilities of the Debtor with respect to the Channeled Claims channeled to such Trust and have authority to administer, process, settle, resolve, liquidate, satisfy, and pay all such Channeled Claims;

   (d) the PI/Trust shall be funded with the PI/Trust Assets, which shall be used to resolve and pay Channeled PI/WD Trust Claims;

   (e) the GUC Trust shall be funded with the GUC Assets, which shall be used to resolve and pay Channeled GUC Trust Claims;

   (f) the GUC Data Transfer has been delivered to the GUC Trust and the PI/WD Data Transfer has been delivered to the PI/WD Trust;

   (g) the GUC Insurance Assignment is authorized and permissible as provided in the Plan and under section 1123(a)(5) of the Bankruptcy Code, notwithstanding any terms of any GUC Insurance Policies or provisions of applicable law that are argued to prohibit the delegation, assignment, or other transfer of such rights, and the GUC Trust is a proper party to assert the liability of the Debtor to trigger such insurance rights; and

   (h) the PI/WD Insurance Assignment is authorized and permissible as provided in the Plan and under section 1123(a)(5) of the Bankruptcy Code, notwithstanding any terms of any PI/WD Insurance Policies or provisions of applicable law that are argued to prohibit the delegation, assignment, or other transfer of such rights, and the PI/WD Trust is a proper party to assert the liability of the Debtor to trigger such insurance rights.

*B.      Conditions Precedent to the Effective Date*

Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date shall occur on the first Business Day on which each of the following conditions precedent has been satisfied or waived pursuant to **Article X.C**:

1.      the Bankruptcy Court shall have entered the Confirmation Order and it shall be a Final Order and not subject to appeal;

2.      the Settlement Parties shall have funded the Initial Settlement Amount;

3.      the GUC Trust shall be established and funded with the GUC Trust Assets, and the GUC Trustee shall have been appointed in accordance with the provisions of the Plan and the terms of the GUC Trust Agreement;

4.      the PI/WD Trust shall be established and funded with the GUC Trust Assets, and the PI/WD Trustee and the PI/WD Trust Advisory Committee shall have been appointed in accordance with the provisions of the Plan and the terms of the PI/WD Trust Agreement;

5.      the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

6.      substantially final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall have been filed;

7.      the Administrative and Priority Claims Reserve shall have been established and fully funded;

8.      the Professional Fee Escrow Accounts shall have been established and fully funded so as to permit distributions on account of Allowed Professional Fee Claims in accordance with **Article II.B**; and

9.      the Other Secured Claims Reserve shall have been established and fully funded.

*C.      Waiver of Conditions Precedent*

The Proponents, together by joint agreement, and with respect to the condition precedent that the Confirmation Order be a Final Order not subject to appeal, together with the Settling Parties, may agree to waive any of the conditions to set forth in **Article X.A** and **Article X.B** at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

*D.      Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**ARTICLE XI.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

*A.      Modification of Plan*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1125 and 1125 of the Bankruptcy Code, the Proponents may jointly propose in writing to alter, amend, or modify materially the Plan prior to or after Confirmation.  Holders of Claims and Interests that have accepted the Plan shall be deemed to have accepted the Plan as altered, amended, or modified; *provided, however*, that any Holders of Claims and Interests who

were deemed to accept the Plan because such Claims or Interests were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modifications, such Claims and Interests continue to be Unimpaired. For purposes of this **Article XI** only, after the Effective Date, the Trustees shall be deemed a Proponent entitled to seek amendment of the Plan under section 1127 of the Bankruptcy Code.

B.      *Revocation or Withdrawal of Plan*

The Proponents reserve the right to jointly revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Proponents jointly revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

A.      *Jurisdiction*

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code for, among other things, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Channeled GUC Trust Claims, Secured Claims, Priority Tax Claims, Other Priority Claims, Convenience Claims, and Interests, including the resolution of any request for payment of any such Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of such Claims or Interests, except as otherwise expressly provided in the Plan;

2.      hear and determine all matters relating to Professional Fee Claims;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Channeled GUC Trust Claims, Secured Claims, Priority Tax Claims, Other Priority Claims, Convenience Claims, and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to such distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, interpret, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case and (b) the Plan, the Confirmation Order, the Trust Agreements, and all settlements (including the Estate Party Settlement), contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      adjudicate, decide, or resolve any and all matters related to the Plan (including the Estate Party Settlement);

9.      issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation, implementation or enforcement of the Plan, including all settlements (including the Estate Party Settlement), releases, exculpations and injunctions provided for under the Plan;

10.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, implementation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under all settlements (including the Estate Party Settlement), agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order;

11.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) with respect to the releases, injunctions, and other provisions contained in **Article IX**, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan (including the Estate Party Settlement), the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

12.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order, including the Confirmation Order;

14.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

15.     hear and determine all matters relating to the settlement and release provisions contained in **Article IV** and the releases, injunctions, and exculpations contained in **Article IX**;

16.     enforce all orders previously entered by the Bankruptcy Court;

17.     hear any other matter not inconsistent with the Bankruptcy Code; and

18.     enter an order or Final Decree concluding or closing the Chapter 11 Case.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

*A.      Additional Documents*

On or before the Effective Date, the Proponents may jointly file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor, the GUC Trustee, or the PI/WD Trustee, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*B.        Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a), including fees and expenses payable to the U.S. Trustee, will be paid by the applicable Trustee for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

*C.        Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Proponents with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of either of the Proponents with respect to Holders of Claims or Interests prior to the Effective Date.

*D.        Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, affiliated investment funds or investment vehicles, managed accounts or funds, investment managers, advisors, and sub-advisors with discretionary authority, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

*E.        Service of Documents*

All notices, requests, and demands relating to the Plan shall be in writing to be effective and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

**If to the TCC:**

Brown Rudnick LLP
Attention:  Eric R. Goodman and Gerard T. Cicero
Seven Times Square
New York, NY  10036
E-mail:     egoodman@brownrudnick.com; gcicero@brownrudnick.com

and

Berry Riddell LLC
Attention:  Michael W. Zimmerman
6750 E. Camelback Road, Suite #100
Scottsdale, AZ  85251
E-mail:     mz@berryriddell.com

**If to the UCC:**

David Barton, Chairperson for Official Committee
of Unsecured Creditors of Tehum Care Services, Inc.
190 E. Bannock Street
Boise, ID 83712
Email:     bartond@slhs.org

with copies to:

Stinson LLP
Attention:  Nicholas Zluticky and Zachary Hemenway
1201 Walnut, Suite 2900
Kansas City, MO 64106
E-mail:    nicholas.zluticky@stinson.com; zachary.hemenway@stinson.com

**If to the Debtor:**

Tehum Care Services, Inc.
Attention: Russell Perry, Chief Restructuring Officer
2021 McKinney Avenue, Suite 340
Dallas, TX 75201
E-mail:    russell.perry@ankura.com

with copies to:

Gray Reed
Attention:  Jason S. Brookner and Aaron M. Kaufman
1300 Post Oak Boulevard, Suite 2000
Houston, TX 77056
E-mail:    jbrookner@grayreed.com; akaufman@grayreed.com

**If to the Settling Parties:**

Norton Rose Fulbright LLP
Attention:  Kristian Gluck and Julie Harrison
2200 Ross Avenue, Suite 3600
Dallas, TX  75201
Email:    kristian.gluck@nortonrosefulbright.com; julie.harrison@nortonrosefulbright.com

Hayward PLLC
Attention:  Melissa S. Hayward
10501 N. Central Expy., Suite 106
Dallas, TX  75231
Email:    MHayward@HaywardFirm.com

**If to the PI/WD Trustee, to:**

[Address to be provided in the Plan Supplement]

**If to the GUC Trustee, to:**

[Address to be provided in the Plan Supplement]

After the Effective Date, the Trustees shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Trustees are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

F.    *Entire Agreement*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.  *Plan Supplement Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The Plan Supplement is available upon written request to Debtor's counsel or Committee counsel at the addresses above, by downloading such exhibits and documents for free from the Claims Agent's website at https://veritaglobal.net/tehum, or from the Bankruptcy Court's website for a fee at https://ecf.txsb.uscourts.gov/.  The documents contained in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

H.  *Non-Severability*

If, prior to Plan confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable; *provided*, that at the request of the Debtor and the Committees, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted; *provided*, that any such alteration or interpretation shall be acceptable to the Debtor and the Committees.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (3) non-severable and mutually dependent.

I.  *Good Faith*

Upon entry of the Confirmation Order and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, the Committees, the Exculpated Parties, and the Released Parties will be deemed to have solicited votes on the Plan, or otherwise participated in the Plan process, in good faith and in compliance with the Bankruptcy Code, and, therefore, no such parties, individuals, or the Trustees will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or participation in the Plan process.

J.  *Waiver or Estoppel*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor, the Committees, or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

K.  *No Attorney's Fees*

Except for the fees of Professionals, no attorneys' fees shall be paid by the Debtor or the Trustees with respect to any Claim or Interest unless otherwise specified in the Plan or by a Final Order of the Bankruptcy Court.

L.  *Closing of Chapter 11 Case*

The Trustees shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

[*Remainder of page left intentionally* blank.]

Dated: October 2, 2024
Houston, TX

**Tort Claimants' Committee**

By: _/s/ Paris Morgan and Nathan Alvarez_
Name: Paris Morgan and Nathan Alvarez
Title: Co-Chairs

- and -

**Official Committee of Unsecured Creditors**

By: _/s/ David Barton_
Name: David Barton
Title: Chair

- and -

**Tehum Care Services, Inc.**

By: _/s/ Russell Perry_
Name: Russell Perry
Title: Chief Restructuring Officer

**Exhibit C to Confirmation Order**

Form of Notice of Entry of Confirmation Order and Occurrence of Effective Date

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>TEHUM CARE SERVICES, INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-90086 (CML) |

**NOTICE OF ENTRY OF (I) CONFIRMATION ORDER,
(II) OCCURRENCE OF EFFECTIVE DATE, (III) ADMINISTRATIVE
CLAIMS BAR DATE, AND (IV) OTHER CLAIMS DEADLINES**

**PLEASE READ THIS NOTICE CAREFULLY AS IT CONTAINS BAR DATE AND
OTHER INFORMATION THAT MAY AFFECT YOUR RIGHTS TO RECEIVE
DISTRIBUTIONS UNDER THE PLAN**

On March 3, 2025, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered the *Order Confirming the First Modified Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. [****]] (the "Confirmation Order").[2]

Each of the conditions precedent to the occurrence of the Effective Date, as set forth in Article X of the Plan, has been satisfied or waived in accordance therewith, and the Plan became effective and was substantially consummated on [DATE] (the "Effective Date"). For the purposes of calculating all filing and other deadlines in the Plan and Confirmation Order determined by reference to the Effective Date, such time periods are deemed to have commenced on [DATE].

In accordance with Articles II.A of the Plan and paragraphs 112-113 of the Confirmation Order, unless otherwise expressly set forth in the Plan, all requests for payment of Administrative Claims (other than Professional Fee Claims, DIP Facility Claims, claims arising under 503(b)(1)(D) of the Bankruptcy Code, Priority Tax Claims, and Statutory Fees) must be filed and served on the Debtor, the TCC and the UCC no later than [DATE] (the "Administrative Claims Bar Date"). Unless otherwise expressly set forth in the Plan, each request for payment of an Administrative Claim must set forth, at a minimum, (a) the name of the Holder of the Administrative Claim, (b) the amount of the Administrative Claim and (c) a detailed basis for the Administrative Claim.

---

[1]   The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given them in the Confirmation Order or the *First Modified Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [D.I. [****]] (the "Plan"), as applicable.

**UNLESS OTHERWISE ORDERED BY THE COURT, OR AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN, HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, PROPERLY FILE AND SERVE A REQUEST FOR PAYMENT OF ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL RESULT IN THE ADMINISTRATIVE CLAIM IN QUESTION BEING DISCHARGED AND RELEASED AS OF THE EFFECTIVE DATE, AND ITS HOLDER BEING FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIM AGAINST THE DEBTOR, ITS ESTATE, OR ANY OTHER ENTITY. ANY REQUESTS FOR PAYMENT OF ADMINISTRATIVE CLAIMS THAT ARE NOT PROPERLY FILED AND SERVED BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL NOT APPEAR ON THE CLAIMS REGISTER AND SHALL BE DISALLOWED AUTOMATICALLY WITHOUT THE NEED FOR FURTHER ACTION BY THE DEBTOR, OR FURTHER ORDER OF THE BANKRUPTCY COURT.**

In accordance with Article II.B of the Plan and paragraphs 114-116 of the Confirmation Order, All Professionals or other Persons requesting the final Allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330 and/or 331 for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for Allowance and payment of Professional Fee Claims on counsel to the TCC, the UCC, the DIP Lender, the Debtor and the United States Trustee no later than the [DATE].  Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and be subject to approval by the Bankruptcy Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Case.  The last date to object to such final fee application shall be the twenty-first (21st) day after such fee application has been Filed and all final fee applications shall be set for hearing at the same time, as the Bankruptcy Court's calendar permits, after consultation with counsel to the TCC, the UCC, the DIP Lender, and the Debtor, *provided*, *however*, that if an objection is Filed to any final fee application, then the deadline to object to any and all final fee applications shall be extended for all parties in interest for an additional seven (7) days and, for any party whose Professional(s) is subject to an objection Filed within the twenty-one (21) day period above, the deadline for such party to object to any and all final fee applications shall be extended for an additional fourteen (14) days.

In accordance with Article V of the Plan and paragraph 117 of the Confirmation Order, unless otherwise provided by a Bankruptcy Court order, all Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be the subject of a Proof of Claim Filed with the Claims Agent and served on the Post-Effective Date Debtor no later than thirty (30) days after the later of (i) the Effective Date or (ii) the date of entry of a Bankruptcy Court order approving such rejection.  Such Proof of Claim may be objected to in accordance with the provisions of Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**ANY CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT IS NOT THE SUBJECT OF A TIMELY FILED PROOF OF CLAIM SHALL BE DISALLOWED FOR ALL PURPOSES IN THIS CHAPTER 11 CASE, DISCHARGED, AND FOREVER BARRED.**

The Plan (including the Plan Supplement) and the Confirmation Order, as well as other documents filed in these Chapter 11 Cases, may be obtained (a) for a nominal fee from the Bankruptcy Court's electronic docket for the Debtor's Chapter 11 Case at https://ecf.txsb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center www.pacer.psc.uscourts.gov), or (b) free of charge by accessing the Debtor's case website maintained by the Solicitation Agent, https://veritaglobal.net/tehum.

Respectfully submitted this [] day of March, 2025.

*Draft*

David J. Molton (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Meghan McCafferty (*pro hac vice*)
Amir Shachmurove (*pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
egoodman@brownrudnick.com
cmoxley@brownrudnick.com
gcicero@brownrudnick.com
mmccafferty@brownrudnick.com
ashachmurove@brownrudnick.com

- and –

*Draft*

Michael W. Zimmerman
**BERRY RIDDELL LLC**
6750 E. Camelback Road, Suite #100
Scottsdale, AZ 85251
Telephone: (480) 385-2727
Email: mz@berryriddell.com

3

*Counsel to the Tort Claimants' Committee*

*Draft*

Nicholas Zluticky (SD TX Bar No. 3846893)
Zachary Hemenway (SD TX Bar No. 3856801)
**STINSON LLP**
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone:      (816) 842-8600
Facsimile:      (816) 691-3495
Email: nicholas.zluticky@stinson.com
          zachary.hemenway@stinson.com

*Counsel to the Official Committee of
Unsecured Creditors*

*Draft*

Jason S. Brookner (TX Bar No. 24033684)
Micheal W. Bishop (TX Bar No. 02354860)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
Amber M. Carson (TX Bar No. 24075610)
**GRAY REED LLP**
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:      (713) 986-7127
Facsimile:      (713) 986-5966
Email: jbrookner@grayreed.com
          mbishop@grayreed.com
          akaufman@grayreed.com
          lwebb@grayreed.com
          acarson@grayreed.com

*Counsel to the Debtor and Debtor in
Possession*

## Certificate of Service

The undersigned hereby certifies that, on the [] day of [March] 2025, he caused a true and correct copy of the foregoing document to be served on all parties who have subscribed for electronic notice via the Court's CM-ECF Notification System.

*Draft*

4

Eric R. Goodman